## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Robert Zajac, MD,

               Plaintiff,

vs.

Maria K. Statton, Kathryn D. Lombardo, Hugh P. Renier, Cheryl L. Bailey, Christopher Burkle, Pamela Gigi Pamela Gigi, Shaunequa B. James, Jennifer Y. Kendall Thomas, Patricia J. Lindholm, John M. (Jake) Manahan, Allen G. Rasmussen, Kimberly W. Spaulding, Stuart T. Williams, in their respective official capacity as members of the Minnesota Board of Medical Practice.

               Defendants.

Case No.:

**VERIFIED COMPLAINT**

COMES NOW the Plaintiff, Robert J. Zajac M.D. by his undersigned attorneys and complains against the defendants, states, and alleges as follows:

### PARTIES

1.    Plaintiff Robert J. Zajac (**"Zajac"**) is a physician practicing medicine in the state of Minnesota under license No. 44,403 and has his principal place of business at 6452 City W Pkwy, Eden Prairie, MN 55344.

2.    Defendants Maria K. Statton, M.D. Ph.D (**"Statton"**); Kathryn D. Lombardo, M.D. Ph.D. (**"Lombardo"**); Hugh P. Renier M.D, FAAFP (**"Renier"**); Cheryl L. Bailey M.D (**"Bailey"**); Christopher Burkle M.D, J.D. FCLM (**"Burkle"**); Pamela Gigi Chawla M.D, M.H.A. (**"Gigi"**); Shaunequa B. James MSW, LGSW (**"James"**);  Jennifer Y. Kendall Thomas D.O., FAOCPMR (**"Kendall Thomas"**); Patricia J. Lindholm M.D., FAAFP (**"Lindholm"**);

1

John M. "Jake" Manahan, JD (**"Manahan"**);  Allen G. Rasmussen M.A. (**"Rasmussen"**); Kimberly W. Spaulding M.D., MPH (**"Spaulding"**); Stuart T. Williams J.D. (**"Williams"**)are individual members of the Minnesota Board of Practice in Medicine and collectively as (**"Defendants"**).

3.      The defendants are sued herein in their official capacity by virtue of the fact that the Plaintiff is seeking preliminary and permanent injunctive relief against each one of the defendants under Fed. Rule Civ. Proc. 65 and 42 USC Sec. 1983 and declaratory relief pursuant to 28 USC Sec. 2201 et.seq. in the form and substance set forth below.

## JURISDICTION AND VENUE

4.      Subject matter jurisdiction is founded under 28 U.S.C. §§1331 and 1343 because this matter arises out of the Constitution and laws of the United States the First Amendment and the Right of Free Speech and the due process right to be free from bad faith prosecution safeguarded by the Fourteenth Amendment of the US Constitution.

5.      The Court has authority under 42 U.S.C. §1983 and the doctrine of *Ex Parte Young,* 209 U.S. 123 (1908) to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.      Venue lies in this district under 28 U.S.C. §1391(b)(1)(2) because the a civil action may "be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; and (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ."

## RELIEF SOUGHT

7.      The Plaintiff is seeking a preliminary injunction pursuant to Fed. Rule Civ. Proc. 65 preliminarily enjoining the defendants, their agents servants and assigns from maintaining or continuing to maintain a bad faith disciplinary prosecution in order to stifle his exercise of this

First Amendment right to free speech. Specifically, the Plaintiff contends that the defendants are using the Minnesota license disciplinary process to muzzle and silence Plaintiff's personal opinions expressed in public forums about the risks and benefits associate with vaccines and advising his patient's parents of the risks of vaccine injuries as mandated by Minnesota statutes discussed below.

8.      The Plaintiff is seeking a permanent injunction pursuant to and  42 USC § 1983 against the defendants, enjoining the bad faith prosecution, on the grounds that the Plaintiff has a due process right to be free of bad faith prosecution and on that the prosecution is maintained to stifle the exercise of Plaintiff's First Amendment rights and in the further grounds that the Plaintiff has a constitutionally protected right under the First Amendment of the US Constitution to freely express in public forum his personal opinions about vaccines.

9.      The Plaintiff is seeking a declaratory judgment against the defendants pursuant to 28 USC § 2201 et.seq. as follows: (i)  declaring defendants' actions in maintaining a bad faith prosecution and seeking to muzzle and silence free speech and expression of personal opinions regarding vaccine safety and vaccine injury accountability  as illegal, unconstitutional and in violation of Plaintiff's exercise of his  First Amendment rights and beyond the scope of defendants' powers and subject matter jurisdiction;  (ii) declaring defendants' actions in maintaining a bad faith prosecution and seeking to muzzle and silence free speech and expression of personal opinions regarding vaccine safety and vaccine injury accountability as violative of Plaintiff's constitutional due process rights to be free from bad faith prosecution and as further being violative of Plaintiff's constitutionally protected Fourteenth Amendment right to be free from bad faith prosecutions; (iii) declaring defendants' actions as an impermissible attempt at illegal regulation via ad hoc

3

adjudication which is ipso fa to null and void as a matter of law for contradicting and violating the statutory provisions of Minn. Stat § 121A.15 subd. 3a as discussed below.

## RELEVANT FACTUAL BACKGROUND

**(i)    In general.**

10.    On or about January 5, 2018 the Plaintiff received a letter from the Minnesota Board of Medical Practice (hereinafter "Board") (Ex. 1) stating verbatim in relevant part as follows:

"The Board has received a report regarding your practice of medicine. The report alleged that you are practicing medicine beneath the standard of care and giving patients/parents advice against getting routine immunizations for children without the patients having contraindications to receiving the immunizations. The report added that other providers have complained about you supporting families' decisions to withhold immunizations to their children. The report further alleged that you have posted YouTube videos criticizing immunizations and promoting conspiracy theories/falsehoods in a way that instills fear in families and could in turn lead to actual physical harm of patients. The Board is required by law to make inquiries into all complaints, which it receives".

11.    The YouTube videos referenced in the Board letter can be found at https://www.youtube.com/watch?v=P_Y0XbtLZKQ;

https://www.youtube.com/watch?v=5SDdFf3zQ5M

12.    By letter and email dated February 9, 2018 Dr. Zajac responded to the Board inquiry (Ex. 2).

13.    In short Dr. Zajac stated that the summary provided in the Board letter provided no particular allegations supporting accusations of practicing "below the standard of care" and he could not answer the accusation in the form propounded due to lack of information and requested that the Board "elucidate" what they meant by that accusations. (Ex. 2.)

14.    With respect to the accusation that Dr. Zajac gives patients/parents [advice] against getting routine immunization for children without having contraindications to receiving

immunizations Dr. Zajac denied those allegations and stated that he could not respond due to lack of particularity regarding the specific identity of the patients referenced by the complainant. That information was needed for the purpose of accessing the particular patients' medical records. None was forthcoming from the defendants.

15.    Dr. Zajac then pointed to the Minn. Stat. § 121A.15 subd. 3 which speaks to medically issued vaccine exemptions and not to "advice" allegedly imparted by a physician to his patients.

16.    No Minnesota statutes or regulations muzzles a physician or healthcare practitioner from openly talking about vaccine injuries, the vaccine industry, and/or deleterious effects of vaccines to the public, patients, or anyone else.

17.    On or about November 1, 2018 the plaintiff received another letter from the Board (Ex. 3) dated October 24, 2018. The letter stated in relevant part as follows:

"The Board has received a report regarding your practice of medicine. The report alleged that you are not following the standard of care and evidence-based medicine by continuing to advertise yourself as anti-vaccine and by stating that vaccines lead to autism in children. The report also alleged that you are posting dangerous anti-vaccine videos, online. The report added that you are treating adults in your clinic, which only employs two pediatricians, a nurse practitioner, and physician assistant. The Board is required by law to make inquiries into all complaints it receives."

18.    By letter dated November 12, 2018 (Ex. 4), the plaintiff responded to the allegations summarized in the Board's October 24, 2018 which were almost identical in nature as the prior allegations of the letter of January 5, 2018.

19.    In sum the Board's concerns can only be summarized as censoring free speech and accusing Dr. Zajac of "false advertisement" when in fact no such advertisement took place. Dr. Zajac contended that the allegations of the complaint were aimed at censoring free speech protected by the First Amendment. (Ex. 4).

5

20.     In both letter responses the Plaintiff invoked his First Amendment free speech right with respect to the Board's summarized allegations.

21.     No other letters of alleged complaints have been received by Dr. Zajac from the Board at any time.

22.     On or about July 12, 2019 the Plaintiff received a Notice of Conference which summoned the Plaintiff to appear before a Complaint Review Committee (hereinafter "CRC") to discuss the issues listed in the Notice. The date of the noted appearance was August 12, 2019. (Ex. 5).

23.     The specific issues which the CRC requested to discuss are set forth in the Notice of Conference and the Court is directed thereto for a full and true accounting thereof.  (Ex 5).

24.     The issues of the CRC Notice of Conference are discussed below.

**(ii)     <u>Summary of allegations of the Notice of Conference:</u>**

25.     As a general observation and proposition, the issues in the Notice of Conference (Ex. 5) were focused by enlarge on Plaintiff's expressions of his personal opinions regarding vaccine risks and injuries on an online interview on YouTube, (see paragraph 8 above for URL).

26.     To justify their actions the defendants morphed those statements of opinion  made by the Plaintiff in a public forum interview into their own version of "patient advice" regarding vaccines and infused their own views and two cents into what the Plaintiff should be saying about vaccines under the guise of a "prevailing standard of medical care".

27.     However, defendants' own position on what a physician should or should not say about vaccine safety contradicts the specific disclosure statutory provisions of the Minnesota Vaccine Standard statute Minn. Stat. § 121A.15 subdivision 3a discussed below.

28.     Defendants' personal preferences regarding their own version of what a physician should or should not say about vaccines and their attempt at coercing the Plaintiff to submit to their will through the use of the state disciplinary process  amount to de facto unconstitutional censure of Plaintiff's content specific opinions and free speech protected by the First Amendment.

29.     Paragraphs 2 and 2(a) through 2(d) summarize the content of Exhibit "1" hereto which is the complaint letter of January 15, 2018, which apparently summarizes the sum and substance of the December 26, 2017 complaint.

30.     Paragraphs 2 and 2(a) through 2(d) state as follows:

"On December 26, 2017, the Board received a complaint alleging that Respondent was practicing below the minimum standard of care and  unethically. Specifically, the complaint alleged the following:

   a.      Respondent has advised parents against giving routine vaccinations to their

   children who were his patients.

   b.      Respondent is actively encouraging patients not to vaccinate their children

   which is reckless and places the community at risk for harm.

   c.      Respondent has supported families' decisions to withhold vaccinations.

   d.      Respondent is featured in an online video criticizing vaccinations,

   promoting falsehoods, and instilling fear that could lead to actual physical  harm".

31.     On their face, none of the allegations stated in paragraphs 2(a) through 2(d) are sufficient to invoke the Board's investigative powers.

32.     Specifically, Minnesota parents do not need vaccine exemptions, advice from doctors or notes written by physicians to claim vaccine exemptions.

33.     Minn. Stat. § 121A.15, subdivision 3(d) under the heading dubbed "*Exemptions from immunizations"* provides verbatim as follows:

(d)     "If a notarized statement signed by the minor child's parent or guardian or by the emancipated person is submitted to the administrator or other person having general control and supervision of the school or child care facility stating that the person has not been immunized as prescribed in subdivision 1 because of the conscientiously held beliefs of the parent or guardian of the minor child or of the emancipated person, the immunizations specified in the statement shall not be required. This statement must also be forwarded to the commissioner of the Department of Health'.

34.     Similarly, the Minnesota Department of Health publicizes on its own website at URL https://www.health.state.mn.us/people/immunize/basics/exemption.html the following language:


**EXEMPTIONS:**

1.     **Medical Exemption**
If an immunization is medically contraindicated for a child, or if there is laboratory confirmation that a child is already immune to certain diseases  against which immunization is normally required, the student may submit a statement to this effect, signed by a health care provider, in order to be considered exempt from the contraindicated or unnecessary immunization.


2.     **Non-Medical Exemption**
If a child's parent or guardian, or the child (in the case of an emancipated minor), wishes to be exempt, based on their beliefs, from one or more immunization requirements, the parent or child may submit a statement to this effect, signed by the submitting person and notarized.

- (LINK) Get your own non-medical form exemption notarized

A list of places in Minnesota where exemption forms can be notarized.

- (LINK) Minnesota, section 121A.15 Health Standards Immunizations; School Children Exemptions from immunizations is under subdivision 3.

35.     Aside the fact that the allegations of paragraphs 2(a) through 2(c) are false, as known by the defendants through Plaintiff's statements made to the CRC during the August 12, 2019 investigative meeting, which was the subject of Exhibit 5, even if the allegation in the same

paragraphs were true, they are insufficient as a matter of law to invoke the Board's investigative subject matter jurisdiction.

36.     Neither one of the statements made in paragraphs 2(a) through 2(c) amount to the practice of medicine as defined in Minn. Stat. Ann. § 147.081 Subdivision 3; nor do any of the allegations of paragraphs 2(a) through 2(c) constitute medical misconduct as defined in **Minnesota Stat. § 147.091**.

37.     Specifically, Minn. Stat. Ann. § 147.081, subd. 3 does not define the medical imparting of either pro or contra advice on vaccines by a physician to any individual or making statements of opinion during a publicly broadcasted interview regarding any medical subject matter as the "practice of medicine".

38.     Moreover, the Plaintiff is obligated by Minnesota Statutes to disclose in writing specific adverse effects to vaccines before vaccinations are administered. Minn. Stat. Ann. § 121A.15, subd. 3a(b)(4) by handing out federal vaccine information sheets maintained and updated by the CDC that list known adverse reactions, health risks and in some instances deaths associated with specific immunizations to be provided. See Ex. 9 hereto.

39.     The Plaintiff is also required by Minn. Stat. Ann. §121A.15, subd. 3a(b)(2) to advise the parents before the administration of any vaccinations that they are entitled to opt out of the mandatory vaccine requirements by seeking either a medical exemption under the provisions of Minn. Stat. Ann. §121A.15 Subdivision 3(c) or by providing the school district a personal belief notarized exemption Minn. Stat. Ann. § 121A.15 Subdivision 3(d).

40.     Defendants' contentions in the Notice of Conference at paragraphs 2(a) through 2(c), that the Plaintiff is not allowed to talk in public or to his patients' parents about vaccine risks and the opt out provisions of the exemptions statute Minn. Stat. Ann. § 121A.15, subd. 3(c) and

Minn. Stat. Ann.  § 121A.15, subd. 3(d) violates the statutory disclosure mandates of Minn. Stat. Ann. § 121A.15, subd. 3a(b)(2) and subd. 3a(b)(4).

41.    Moreover, as discussed below, the Board's powers and subject matter jurisdiction as specified by the legislature in the empowering statute Min. Stat 147.001, subd. 2 does not include content specific free speech regulation such as statements made by the Plaintiff during a publicly internet posted interview.

42.    Nor does any subdivision or provision of the disciplinary statute **Minn. Stat. §
147.091** define the imparting of advice regarding either risks, benefits or any other information pertaining to vaccine safety as medical misconduct. Nor could it. To read into any provision of Minn. Stat. § 147.091 defendants' purported spin prohibiting the imparting of advice and/or discussion  and disclosures regarding the known deleterious effects and  risks of vaccines a mandated by Minn. Stat. Ann. § 121A.15, subd. 3a(b)(2) and subd. 3a(b)(4) would be an impermissible conflicting statutory interpretation by the administrative officials  which obliterates the disclosure mandates of Minn. Stat. Ann. § 121A.15, subd. 3a(b)(2) and subd. 3a(b)(4). Such spin and interpretation of **Minn. Stat. § 147.091** is afforded no deference by the courts.

43.    The allegations in paragraph 2(d) stating that "Respondent is featured in an online video criticizing vaccinations, promoting falsehoods, and instilling fear that could lead to actual physical harm" aims directly at stifling pure free speech, expression of opinion and free discussion on vaccines and at wrongfully invoking the Board's jurisdiction to muzzle such free speech.

44.    Appearing in online interviews and expressing opinions about the risks and injuries caused by vaccines is neither the practice of medicine under Minn. Stat. Ann. §

147.081, subd. 3 nor is it professional misconduct under any subdivision or provision of the disciplinary statute **Minnesota Stat. § 147.091.**

45.     For the foregoing reasons, the complaint of December 26, 2017 should have been summarily dismissed by the defendants for lack of subject matter jurisdiction.

46.     Minn. Stat. § 147.001 Subd 2 provides verbatim as follows:

"The primary responsibility and obligation of the Board of Medical Practice is to protect the public. In the interest of public health, safety, and welfare, and to protect the public from the unprofessional, improper, incompetent, and unlawful ***practice of medicine***, it is necessary to provide laws and regulations to govern the granting and subsequent use of the license to practice medicine".

47.     **Clearly the plain language of** Minn. Stat. § 147.001, subd 2 charges the Board with the enactment of regulations in order to protect the public from the unprofessional, improper, incompetent, and unlawful ***practice of medicine***.

48.     Minn. Stat. § 147.001 Subdivision 2 does not provide the Board with subject matter jurisdiction and powers to muzzle free speech and discussion regarding vaccines pros and cons in a public forum. Nor does Minn. Stat. § 147.001 Subdivision 2 empower the defendants to obliterate statutes enacted by the legislature.

49.     Minn. Stat. § 147.001 Subdivision 2 does not empower the defendants to rewrite the mandatory disclosure and provisions imposed upon the Plaintiff by Minn. Stat. Ann. § 121A.15, subd. 3a(b)(4) which mandate the written disclosure and discussion of adverse effects of vaccines before they are administered.

50.     Minn. Stat. § 147.001, subd. 2 also does not empower the Board to rewrite the mandatory disclosure requirements imposed upon the Plaintiff by Minn. Stat. Ann. § 121A.15, subd. 3a(b)(2) which mandate that the Plaintiff advise in writing and discuss with his patients the statutory opt out options of the vaccine exemption provisions of Minn. Stat. Ann. § 121A.15, subd. 3(c) and Minn. Stat. Ann. § 121A.15, subd. 3(d).

51.     Paragraphs 3 and 3(a) though 3(c) Ex 5 summarize Plaintiff's response of February 9, 2018 (Ex. 2).

52.     Paragraphs 4 and 4(a) through 4(d) summarize the Board's letter of October 24, 2018 (Ex 3) and state verbatim as follows:

4.     "On October 15, 2018, the Board received a complaint alleging that Respondent was practicing below the minimum standard of care and against evidence-based medicine. Specifically, the complaint alleged the following:

a.     Respondent advertises as an anti-vaccine physician.

b.     A website post was cited with the complaint. The post is titled: *Former "Vaccine Bully" Board-Certified Pediatrician Now Claims Unvaccinated Children Are Healthiest.* In the post, Respondent implies that vaccines cause sudden infant death syndrome and autism

c.     Respondent is perpetrating dangerous information online, such as stating that "one out of 100 were being hospitalized from vaccine injuries."

d.     Respondent shows a movie, titled *Vaxxed,* in his clinic which has an anti-vaccine stance".

53.     The allegation in paragraph 4(a) may potentially invoke the investigative powers of the Board to the extent that the Board does regulate physician advertisement. During the investigative conference of August 12, 2019, the Plaintiff unequivocally stated that he is not advertising as an anti-vaccine doctor. In the formal accusatory statement Ex6  the defendants did not bring charges for false advertising under Minn. Stat Sec. 147.091(e), as more particularly set forth below. Therefore, this matter is not an issue at this juncture.

54.     Even defendants' statements in paragraph 8(c) of the Notice of Conference (Ex 5) state that "The website for Respondent's practice states he offers "options (without judgment and with support) for alternative vaccine schedules", by  defendants' own recitations and admissions, offering "options (without judgment and with support) for alternative vaccine schedules". The foregoing statement in paragraph "8"  is not the same

as advertising as an "anti-vaccine" doctor. That is just a spin-off of defendants' own statements made in paragraph 4(a) of the Notice of Conference (Ex. 5).

55.     The recitations of paragraph 4(b) on their face are insufficient as a matter of law to invoke the Board's investigative powers. The online posting by a third party titled *Former "Vaccine Bully" Board-Certified Pediatrician Now Claims Unvaccinated Children Are Healthiest",* which statement is attributed to the Plaintiff by a third party, neither amounts to the practice of medicine defined by Minn. Stat. Ann. § 147.081, subd. 3 nor is it professional misconduct under any subdivision or provision of the disciplinary statute Minnesota Stat. Sec. 147.091. Statements made by third parties are

56.     Even if the Plaintiff did make such statements in online interviews, they constitute pure speech and expression of opinion which are protected by the First Amendment of the United States Constitution. Such statements are not subject to the Board's and defendants' muzzling attempts through the wrongful application of the license disciplinary process while depriving the Plaintiff of constitutional rights under the color of Minnesota Law.

57.     The statements made in paragraphs 4(c) that "Respondent is perpetrating dangerous information online, such as stating that "one out of 100 were being hospitalized from vaccine injuries." and 4(d) that "Respondent shows a movie, titled *Vaxxed,* in his clinic which has an anti- vaccine stance" facially do not invoke the investigative powers of the Board.

58.     Neither one of the foregoing statements amount to either the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3 or to professional misconduct as defined by any subdivision or provision of the disciplinary statute Minnesota Stat. § 147.091.

59.     The Board only has the powers given to it by the legislature to regulate the *practice of medicine* as set forth in Minn. Stat. § 147.001 subd. 2, and not the powers to regulate free speech and expressions of pure opinions and statements made during online interviews. Consequently, such statements as alleged in paragraphs 4(c) and 4(d) of the Notice of Conference – (Ex. 5) are protected by the First Amendment and the Board's investigative powers should have never been invoked.

60.     Similarly even if the allegations regarding the showing of the documentary "Vaxxed" in Plaintiff's office to patients was true, which the Plaintiff denied during the August 12, 2019 investigative interview, the showing of a movie does not amount to either **the practice of medicine, as defined by** Minn. Stat. Ann. § 147.081, subd. 3 or to professional misconduct as defined by any subdivision or provision of the disciplinary statute **Minnesota Stat. § 147.091**. It amounts to protected speech which is beyond the investigative or regulatory powers of the Board.

61.     For clarification purposes "Vaxxed" is a documentary movie which was aired in April 2016 and produced by Director Andrew Wakefield and producer Polly Tommey. It openly discusses the dangers and injuries posed by vaccines in the U.S. Throughout the allegations of formal charges, the defendants seem to fault the Plaintiff for giving an online interview in which he expressed his personal opinions and views to "Vaxxed producer Polly Tommey".  (Ex. 6)

62.     Defendants' allegations made against the  Plaintiff made in the context of the Minnesota disciplinary and investigative process to the effect that the latter is showing a documentary movie which discloses vaccine side effects and injuries an amounts to impermissible and unconstitutional governmental stifling of content specific free speech protected by the First Amendment of the U. S. Constitution.

63.     The Board does not have subject matter jurisdiction or powers to outlaw the showing of documentaries by any physician licensee just because its content specific speech is aimed at the deleterious effects of vaccines.

64.     In short, the complaint of October 15, 2018 should have been dismissed by the Board without further action

65.     Paragraph 5 and 5(a) through 5(d) of the Notice of Conference - Ex. 5 - summarizes Plaintiff's responsive letter of November 12, 2018. (Ex. 4).

66.     Paragraphs 6 and 6(a) through (c) summarizes a complaint received by the Board on November 20, 2018, of which plaintiff was given no notice to respond.

67.     The allegations of paragraphs 6 and 6(a) through 6(c) do not state grounds for discipline under the medical disciplinary provisions of Minnesota Stat. § 147.091.

68.     Neither do the allegations state any acts or omissions attributed to the Plaintiff which constitute the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3.

69.     Specifically, paragraphs 6 and 6(a) through 6(c) set forth as follows:

"On November 20, 2018, the Board received a complaint alleging that Respondent was promoting the anti-vaccine movement. Specifically, the complaint alleged the following:

a.     Respondent's promotion of the anti-vaccine movement was dangerous and unacceptable.

b.     The complaint noted a measles outbreak because people were "promoting garbage."

c.     The complaint included an image with a quotation attributed to Respondent including "unvaccinated kids are the healthiest."

70.     None of the allegations in paragraphs 6 and 6(a) through 6(c) rise to conduct which fits the definition of medical practice as set forth in Minn. Stat. Ann. § 147.081, subd.3.

15

71.    Even if the allegations of the complaint being investigated were true, none of the statutory provisions defining the practice of medicine of Minn. Stat. Ann. § 147.081, subd. 3 include a prohibition against "the promotion of the anti-vaccine movement" which alleged activity seems to be subjectively offensive, dangerous, and unacceptable to the complainant as alleged in paragraph 6(a).  Nor do the same allegations violate any provisions of the disciplinary statute Minn. Stat. § 147.091.

72.    A non-descript and non-specific "measles outbreak" which according to complainant's subjective and less than eloquent understanding happened  because people were "promoting garbage" does not state an act of the "practice of medicine" as defined by Minn. Stat. Ann. § 147.081, subd. 3 nor a violation of any known provisions of the disciplinary statute Minn. Stat. §147.091.

73.    Finally, complainant's inclusion of "an image with a quotation  attributed  to Respondent including "unvaccinated kids are the healthiest" similarly does not amount to an act which falls within the definition of the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3.  Rather these allegations are aimed at silencing and muzzling First Amendment constitutionally protected expressions of opinion in public forums.

74.    Minn. Stat. § 147.001 subd 2 provides verbatim as follows:

"The primary responsibility and obligation of the Board of Medical Practice is to protect the public. In the interest of public health, safety, and welfare, and to protect the public from the unprofessional, improper, incompetent, and unlawful *practice of medicine*, it is necessary to provide laws and regulations to govern the granting and subsequent use of the license to practice medicine."

75.    Clearly the plain meaning of Minn. Stat. § 147.001 subd. 2 charges the Board with the enactment of regulations in order to protect the public from the unprofessional, improper, incompetent, and unlawful *practice of medicine*.

76.     The statute does not provide the Board with subject matter jurisdiction and powers to muzzle free speech and discussion regarding vaccines pros and cons in a public forum.

77.     Because the Complaint of November 20, 2018 did not state any acts or omissions in the practice of medicine, the Board's inquiry into the same and the use of the statutory disciplinary provisions to summon the Plaintiff for the reason of staging a bad faith prosecution is an act which is in excess of the powers and subject matter jurisdiction of the Board.

78.     Similarly, none of the allegations of the complaint of November 20, 2018, as stated in the Notice of Conference at paragraph 6, 6(a) through 6(c), amount to a disciplinary violation of any of the grounds stated in Minnesota Stat. 9 147.091.

79.     None of the provisions of Minnesota Stat. §147.091 bar a physician to associate himself/herself with ant-vaccine movements. Such Freedom of Association is guaranteed by the First Amendment.

80.     None of the provisions of Minnesota Stat. §147.091 allow the Board to blame, and/or investigate and/or discipline the Plaintiff for an alleged a non-descript outbreak of measles allegedly caused by non-descript individuals "promoting garbage." Neither the measles outbreak nor the "promotion of garbage" is specifically attributed to the Plaintiff in the alleged complaint.

81.     Finally, the inclusion of an image with a quotation  attributed  to Petitioner including "unvaccinated kids are the healthiest" does not amount to a violation of any of the provisions of Minnesota Stat. § 147.091 for the following reasons: (1) none of the provisions of Minnesota Stat. § 147.091 apply to bar free speech in a public forum and the expression of pure opinion without attributing the same to specific patients of the Plaintiff; (2) an image with quotations allegedly attributed to the Plaintiff constitutes neither medical misconduct

defined by any of the provisions of Minnesota Stat. § 147.091nor the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3.

82.     For the foregoing reasons, the complaint of November 20, 2018 itself should have been dismissed on its face for lack of subject matter jurisdiction as it neither stated any act or omission in the practice of medicine nor any medical misconduct.

83.     Paragraph "7" and 7(a) through 7(c) of the Notice of Conference (Ex. "5") state verbatim as follows:

> "On January 9, 2019, the Board received a complaint alleging that Respondent was hosting an event spreading medical misinformation about vaccines. Specifically, the complaint alleged the following:
>
> (a)     Respondent, the producer of the *Vaxxed* documentary movie, and a chiropractor were pairing up to bring awareness to the vaccine issue.
>
> (b)     A pediatrician spreading misinformation without good scientific evidence may cause health implications. Children could die as a direct result of the type of misinformation.
>
> (c) An online invitation, titled Vaccination Awareness Event, included Respondent's photograph and a short biographical statement. The invitation included a location, ticket prices, and a date in September 2019".

84.     The Plaintiff never received a communication from the Board and the defendants regarding the January 9, 2019 complaint, and was therefore not allowed the opportunity to respond to the allegations of this complaint.

85.     Like the allegations in paragraphs 6 and 6(a) through 6(c) these allegations are insufficient as a matter of law to invoke the investigative powers of the Board. The allegations do not amount either to a statement of any act of the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3 as cited above. Nor do the allegations amount to any medical professional misconduct defined under Minnesota Stat. § 147.091.

86.     The allegations of the complaint received by the Board  take direct aim at pure protected free speech and expression of opinion which is neither regulated nor falls under the regulatory subject matter jurisdiction of the board.

87.     Specifically, on its face the statement made in paragraph 7(a) is insufficient as a matter of law to state an act which amounts to the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3 simply because none of the definitions of the said statute defines "pairing up with a chiropractor to bring awareness to vaccine issue" as the practice of medicine regulated by the defendants.

88.     Finally, the allegations in paragraph 7(c) are equally insufficient as a matter of law to invoke the jurisdiction and investigative powers of the Board. Neither "online invitation, titled Vaccination Awareness Event", which allegedly  included Respondent's photograph and a short biographical statement nor the invitation's inclusion of a location, ticket prices, and a date in September 2019 amount to either the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3 or to any medical misconduct defined by Minn. Stat. § 147.091.

89.     The allegations in paragraphs 6, 6(a) through 6(c) and 7 and 7(a) through 7(c) of (Ex. 5)  are aimed purely at getting the defendants to use the disciplinary process to muzzle and stifle Plaintiff's pure expressions of opinion and association and which are constitutionally protected by the First Amendment of the US Constitution.

90.     For all of the foregoing reasons the complaint January 9, 2019 should have been summarily dismissed without any further action.

91.     Instead of overreaching and attempting to infringe on free speech protected by the First amendment of the US Constitution and instead of investigating allegations  which neither amount to the practice of medicine nor to any professional misconduct as defined by Minnesota Statutes, the defendants opened a formal investigation. (Ex. 5 paragraph 8).

92.     The findings of their investigation are summarized in Ex. 5 paragraph 8 as

follows:

8.     "Based on the allegations, the Board initiated an investigation into

Respondent's conduct. The investigation revealed the following:

a.     The *Former "Vaccine Bully" Board-certified Pediatrician Now Claims Unvaccinated Children Are Healthiest* post included Respondent's photo at the top and quotations from an accompanying video. In the video, Respondent was interviewed about vaccination practices.

b.     In the video, Respondent stated that he does not consider vaccines safe and he notifies patients of this belief during the informed consent process. Respondent also asserts that there is no accountability for vaccine injuries and there are no studies comparing vaccinated and unvaccinated children.

c.     Respondent encourages patients to delay or avoid routine vaccinations. The website for Respondent's practice states he offers "options (without judgment and with support) for alternative vaccine schedules."

93.     None of the foregoing findings of the investigation fall under the regulatory subject

matter jurisdiction and powers of the Board as set forth in Minn. Stat. Sec. 147.01, subd.2.

94.     Specifically, the alleged investigation findings in paragraphs 8(a) and 8(b) make no

secret of the fact that the Board is not seeking to regulate and act against the plaintiff for his practice

of substandard medicine as defined under Minn. Stat. § 147.01, subd. 2 and the disciplinary statute

Minn. State § 147.091 --  rather that the defendants are seeking to use the disciplinary process to

deprive the Plaintiff of his First Amendment right to openly discuss his opinions in online recorded

interviews which were subsequently reposted online as well.

95.     In paragraph 8(c) the defendants include contradictory statements which make no

sense.   First, they state that "Respondent encourages patients to delay or avoid routine

vaccinations." Then they state that "The website for Respondent's practice states he offers

"options (without judgment and with support) for alternative vaccine schedules.".

96.     The defendants' acknowledgement that Plaintiff's website offers alternative vaccine schedules totally negates the first statement that he encourages his patients to delay or avoid routine vaccinations.

97.     Moreover, as set forth above, the investigative findings stand in stark contradiction to both: (a)  the vaccine statutory disclosure mandates of Minn. Stat. § 121A.15, subd. 3a(b)(4) and Minn. Stat. § 121A.15, subd. 3a(b)(2) and (b) they further stand in stark contradiction of the freedom of choice to opt out of the vaccine program altogether provided to Minnesota parents under the vaccine exemptions provisions of Minn. Stat. § 121A.15, subd. 3(d).

98.     What the defendants are after is the muzzling of the Plaintiff altogether in an attempt of silencing him from his discussions of vaccine risks and injuries.

**(iii)     The administrative prosecution sought to be maintained by the defendants is aimed at intimidating, and preventing the Plaintiff from exercising his <u>First Amendment rights to free speech and free association.</u>**

99.     Subsequent to the August 12, 2019 investigative conference, on or about June 10, 2020 the defendants served and filed with the Office of Administrative Hearings (hereinafter "OAH") a Notice and Order of Prehearing Conference. (Ex 6).

100.     The OAH issued a First Prehearing order (Ex 7). The Plaintiff served discovery upon the defendants.

101.     Even a cursory review of the "Allegations" proposed to be the subject matter to the prosecution lead to the inescapable conclusion that the proposed prosecution was commenced and is maintained for no other reason than to silence the plaintiff from publicly talking about the risks and injuries of vaccines in general  and from exercising his First Amendment right to freely express his personal opinions regarding the vaccine industry, its risks and his understanding of the vaccine

laws applicable to the same. In addition, the net intended effect of the present prosecution is to harass and intimidate and dissuade the Plaintiff from discharging his mandatory disclosure duties under Minn. Stat. 121A.15, subd. 3a(b)(4) by disclosing the adverse reactions of vaccines and by further disclosing the statutory options which the parents of unvaccinated children have to opt out of the vaccination programs as provided in Minn. Stat. § 121A.15,  subd. 3(d).

102.    Rather than alleging that violations of the Minnesota disciplinary statute  Minn. Stat. § 147.091 exist, the allegations of the accusatory instrument (Ex. 6) focus on statements made by the Plaintiff during public interviews and public speeches while defendants spin off such statements and morph them  into advice allegedly given to Plaintiff's patients  despite admissions by the defendants that it is not the case.

103.    The defendants contend, that unless the Plaintiff states to the public, in internet interviews and publications, as well to his patients' parents, **that vaccines are unequivocally safe**, they will use the allegations in Exhibit 6, page 3, paragraphs 2(a) through 2(k) and in particular paragraph 2(d) in the Minnesota disciplinary process to take official disciplinary action against his license.

104.    Specifically, the defendants contend in general, that Plaintiff's statements made during an internet interview with the producers of the Vaxxed movie and posted on the internet during which interview he is expressing his personal opinions regarding vaccine safety, vaccine laws and in general the health risks presented by vaccines to children are subject to their disciplinary jurisdiction under Minn. Stat. § 147.091, subd. 1(g); Minn. Stat. § 147.091, subd. 1(k) and Minn. Stat. § 147.091, subd. 1(v). As a matter of law, they are not.

105.    As discussed below, the disciplinary action is nothing more and nothing less than an unconstitutional and illegal state governmental attempt at intimidating the plaintiff into

abandoning his First Amendment right to talk freely about the risks and benefits presented by vaccine to children and to substitute their own script for what the Plaintiff should or should not say to the public.  The disciplinary action is also an unconstitutional attempt by the defendants regulations of free speech through ad hoc adjudication which regulatory attempt is in direct contradiction and conflict of the mandates of the legislature provided in Minn. Stat. § 121A.15 regarding the administration, exemption and disclosures pertaining to vaccines. Regulations which conflict with statutory provisions are void as a matter of law.

106.    Defendants also propose to muzzle the Plaintiff from talking about the  legal limiting of vaccine manufacturers' liability for vaccine injuries (paragraphs 2(j) and 2(k) Ex 6), by placing their own spin on the existing law and by flagrantly disregarding the provisions of 42 USC § 300aa-22 which unequivocally do limit manufacturers' liability for vaccine injuries even in state tort actions.

107.    All of the foregoing issues and the allegations of the accusatory instrument (Ex. 6) will be discussed seriatim below.

108.    However, before addressing the formal allegations part of Ex. 6, it is important to understand that neither federal law nor Minnesota law regard vaccines as unequivocally safe.

109.    To the contrary, Congress and the secretary of US Health and Human Services dedicated a whole body of statutes and regulations dedicated to vaccine injuries.

110.    The National Childhood Vaccine Injury Act  (NCVIA) which is codified in 42 USC §§ 300aa-1 through 42 USC  300aa-34 recognizes that vaccines cause injuries, provides specific vaccine tables identifying the specific vaccines and injuries which they cause (42 USC Sec. 300aa-14) and charges the Secretary of the DHSS with the task of updating the vaccine

table periodically with more information related to vaccines and the injuries which they cause (42 USC § 300aa-14(c)).

111.     The regulations of the Secretary of the DHSS codified in 42 CFR § 100 and in particular 42 CFR  100.3 provide specific updated vaccine tables with respective specific known injuries, symptomatology and timing of the symptoms which table is used to determine eligibility for recovery of damages for injuries caused by vaccines under the Vaccine Injury Compensation Program (VICP).

112.     The US Health Resources and Services Administration (HRSA) a subagency of the U.S. DHHS reports that the number of petitions for vaccine injuries filed with the U.S. Court of Claims in 2018 was 1,238; in 2019  was 1,282 and in 2020 through September 1 was 1,037.

113.     As already discussed above, the Minnesota legislature equally acknowledges the fact that vaccines are not unequivocally safe by having enacted the vaccine disclosure provisions of Minn. Stat. § 121A.15, subd. 3a(b) directed at healthcare practitioner such as the Plaintiff and mandating the disclosure of adverse reactions and risks which vaccines pose. The Minnesota legislature further acknowledged that vaccines are not "unequivocally safe" by enacting the provisions of Minn. Stat. § 121A.15, subd. 3a(c) through § 121A.15, subd. 3a(g) by mandating that the Commissioner of the Department engage in affirmative acts which render the administration of vaccines safe including the use of Vaccine Adverse Reporting System and encouraging vaccine providers to disclose vaccine injuries and adverse reports during multiple physician visits.

114.     The foregoing statutory provisions will be discussed below.

**(iv)** **As a matter of law, the U.S. Congress recognized that vaccines**
**cause injuries on a large scale and has moved to establish a**
**no fault system for compensation of children who have been**
**<u>injured by vaccines.</u>**

115.    Defendants' contentions that vaccines are generally safe and they do not pose

health risks and cause injuries and that the Plaintiff must state so unequivocally to the public as a

whole and to his patients is not only a factual fallacy but also amounts to an erroneous statement

of applicable law and to a violation of the express statutory disclosure provisions of Minn. Stat §

121A.15, subd. 3a(b).

116.    The U.S. Health Resources and Services Administration (HRSA) states the

following on its web site at https://www.hrsa.gov/vaccine-compensation/about/index.html :

> "The National Childhood Vaccine Injury Act of 1986, as amended, created the
> National Vaccine Injury Compensation Program (VICP), a no-fault alternative to the
> traditional tort system. It provides compensation to people found to be injured by  certain
> vaccines. Even in cases in which such a finding is not made, petitioners may receive
> compensation through a settlement. The VICP was established after lawsuits against
> vaccine manufacturers and healthcare providers threatened to cause vaccine
> shortages and reduce vaccination rates. The Program began accepting petitions (also
> called claims) in 1988".

117.    The National Childhood Vaccine Injury Act (NCVIA) is codified in 42 USC §§

300aa-1 through 300aa-34.

118.    Significantly, the Vaccine Injury Compensation Program established in 42 USC §

300aa-10 is administered by the Secretary of the Department of Health and Human Services under

which compensation may be paid for a vaccine-related injury or death.

119.    To obtain compensation for vaccine injuries, under the VICP a claimant must file

a petition in the form and content mandated by 42 USC § 300aa-11 in the U.S. Court of federal

Claims which shall have jurisdiction over such claims - 42 USC § 300aa-12.

120.    Congress went further to detail the specific vaccines, vaccine injuries and the time period in which the first symptom or manifestation of onset or of the significant aggravation of such injuries, disabilities, illnesses, conditions, and deaths is to occur after vaccine administration for purposes of receiving compensation under the Program. See 42 USC § 300aa-14 (Ex. 7).

121.    In order to keep up with the everchanging vaccine market and vaccine injuries, Congress tasked the Secretary of the DHHS to provide updated vaccine tables reflecting information pertaining to specific vaccines and injuries which it causes. See 42 USC § 300aa-14(c).

122.    The Secretary's vaccine injuries updated table and regulation including vaccine injuries up to date is maintained and kept under 42 CFR § 100.3. The most recent version of that regulation and of the vaccine table is annexed hereto as (Ex 8).

123.    As it can be seen from Ex. 8, the vaccine injuries known to the Secretary have expanded rather than contracted since the initial tables contained in 42 USC § 300aa-14.

124.    Moreover, in 42 USC § 300aa-27 Congress tasked the secretary of the DHHS with the mandate to promote the development of childhood vaccines that result in fewer and less serious adverse reactions than those vaccines on the market and promote the refinement of such vaccines.

125.    While in 42 USC § 300aa-21(1)  Congress provided the claimants with a right of election to either accept the award  made by the U.S. Court of Claims under the VICP to bring a state court claims action in tort.

126.    However, notwithstanding the creation of this election, Congress also enacted 42 USC § 300aa-22, titled  "standards of responsibility" in which Congress immunized and limited the liability of vaccine manufactures sued in state court tort actions as follows: (i) 42 USC § 300aa-

22(b)(1) – manufacturers shall have no liability if the vaccine side effects are unavoidable, where the  vaccine was properly prepared and was accompanied by proper directions and warnings in accordance with 42 USC § 300aa-22(b)(2); (ii) under 42 USC § 300aa-22(c) – "No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part [effective Oct. 1, 1988] solely due to the manufacturer's failure to provide direct warnings to the injured party (or the injured party's legal representative) of the potential dangers resulting from the administration of the vaccine manufactured by the manufacturer."

127.    According to HRSA, the Vaccine Injury Compensation Trust Fund provides funding for the National Vaccine Injury Compensation Program to compensate vaccine-related injury or death petitions for covered vaccines administered on or after October 1, 1988. Funded by a $.75 excise tax on vaccines recommended by the Centers for Disease Control and Prevention for routine administration to children, the excise tax is imposed on each dose (i.e., disease that is prevented) of a vaccine. Trivalent influenza vaccine for example, is taxed $.75 because it prevents one disease; measles-mumps-rubella vaccine, which prevents three diseases, is taxed $2.25.The Department of Treasury collects the excise taxes and manages the Fund's investments and produces Vaccine Injury Trust Fund Monthly reports.

128.    The US Department of Justice who are the attorneys representing the DHHS in claims made under the VICP explains the process and its success in protecting the vaccine industry against the high costs of state court litigation as follows:

> "The VICP is designed to encourage vaccination by providing a streamlined system for compensation in rare instances where an injury results from vaccination.  Over the past 30 years, the VICP has succeeded in providing a less adversarial, less expensive, and less time-consuming system of recovery than the traditional tort system that governs medical malpractice, personal injury, and product liability cases.  More than 6,000 people have been paid in excess of $3.9 billion (combined) since the Program's 1988 inception.

Individuals who believe they have been injured by a covered vaccine can file a claim against the Secretary of the Department of Health and Human Services (HHS) in the U.S. Court of Federal Claims seeking compensation from the Vaccine Trust Fund. Civil Division, Torts   Branch attorneys in the Office of Vaccine Litigation defend HHS against claims filed under the VICP and ensure that fair compensation is awarded in every case meeting the eligibility criteria.

Vaccines covered under the Program include those that protect against diphtheria, tetanus, pertussis (whooping cough), measles, mumps, rubella (German measles), polio, hepatitis A, hepatitis B, varicella (chickenpox), Hemophilus influenzae type b, rotavirus, pneumococcal conjugate, trivalent influenza (seasonal flu), meningococcal conjugate and human papillomavirus.

***A significant, positive result of the Program is that costly litigation against  drug manufacturers and health care professionals who administer vaccines has virtually ceased. Although an individual who is dissatisfied with the Court's final judgment has the option to file a lawsuit in State or Federal court, very        few lawsuits have been filed since the Program began. The supply of vaccines in the U.S. has stabilized, and the development of new vaccines has markedly increased".***

https://www.justice.gov/civil/vicp

129.    Undoubtedly, for the foregoing reasons, neither Congress nor the Secretary of the U.S. DHHS deem vaccines unequivocally safe.  In fact, the vaccine tables of 42 CFR § 100.3 are periodically updated to add additional known injuries and health risks which specific vaccines pose to individuals.

130.    All government agencies in charge of commenting on the effect of the VICP procedures as well as  the provisions of 42 USC § 300aa-22 specifically state that the net intended effect of the existing federal vaccine compensation laws is to limit civil liability to vaccine manufacturers and ensure that an adequate supply of vaccines is  manufactured without fears of civil liability.

131.    In short, as a matter of law neither Congress nor the U.S. DHSS deem vaccines "unequivocally safe". Rather they both codify, regulate, and specifically list the names of the vaccines, the specific respective vaccine injuries which they cause, and the timing and symptoms related to the same. Congress and the DHHS codify specific injuries which are compensable under the VICP.

132.    In exchange for a reduction in liability by virtue of the federal laws, vaccine manufacturers pay a small sum of excise tax to form the Vaccine Compensation Trust Fund.

133.    The Centers for Disease Control publishes "recommended vaccination schedules".

134.    No federal or Minnesota state regulation or statutes make the CDC vaccination schedules mandatory.

(v)    **Minnesota law affirmatively mandates disclosure of vaccine related risks and injuries as well as the disclosure of the availability of <u>vaccine exemptions</u>.**

135.    In exhaustively researching Minnesota statutes and regulations regarding vaccination mandates and vaccination standards, one can only find the provisions of Minn. Stat. § 121A.15.

136.    That statute does not state that vaccines are unequivocally safe. Moreover, Minn. Stat. § 121A.15 does not state that the CDC recommended vaccine schedules have to be followed by Minnesota physicians with respect to all or any pediatric patient and that failure to follow such vaccination schedules subjects a physician to professional discipline.

137.    Minn. Stat. § 121A.15 also does not state that all doctors in Minnesota must follow the vaccine schedules mentioned in Minn. Stat. §121A.15, subd. 1 and 2. What the statute does provide is that school attending children must present an immunization card before they are allowed to attend school or provide exemptions under Minn. Stat. § 121A.15, subd. 3 before they are allowed to enter any school.

138.    Far from stating that vaccines are safe, Minn. Stat. § 121A.15, subd. 3 specifically provides in relevant part for exemptions form the immunization schedule as follows:

"(c) If a statement, signed by a physician, is submitted to the administrator or other person having general control and supervision of the school or childcare facility stating that an immunization is contraindicated for medical reasons or that laboratory confirmation of the presence of adequate immunity exists, the immunization specified in the statement need not be required.

(d) If a notarized statement signed by the minor child's parent or guardian or by the emancipated person is submitted to the administrator or other person having general control and supervision of the school or child care facility stating that the person has not been immunized as prescribed in subdivision 1 because of the      conscientiously held beliefs of the parent or guardian of the minor child or of the emancipated person, the immunizations specified in the statement shall not be required. This statement must also be forwarded to the commissioner of the Department of Health".

139.    The most telling part of the statute that indicates that the Minnesota legislature does not believe that vaccines are "unequivocally safe" is the enactment of the disclosure part of the statute in Subdivision 3a(b) which state as follows:

"(b) Before immunizing a person, an immunization provider must provide the person, or the person's parent or guardian if the person is under 18 years of age and not emancipated, with the following information in writing:

(1) a list of the immunizations required for enrollment in a school or childcare facility;

**(2) a description of the exemptions from immunizations permitted under subdivision 3, paragraphs (c) and (d);**

(3) a list of additional immunizations currently recommended by the commissioner; and

**(4) in accordance with federal law, a copy of the vaccine information sheet from the federal Department of Health and Human Services that lists possible adverse reactions to the immunization to be provided".**

140.    Further telling of the legislature's understanding of the health risk posed by vaccines, the Minnesota legislature tasked of the commissioner of the department of Health with the mandate that: (i)  "The commissioner will continue the educational campaign to providers and hospitals on vaccine safety including, but not limited to, information on the vaccine adverse events reporting system (VAERS), the federal vaccine information statements (VIS), and medical precautions and contraindications to immunizations. Minn. Stat. § 121A.15, subd. 3a(c); "(ii) The commissioner will encourage providers to provide the vaccine information statements at multiple

visits and in anticipation of subsequent immunizations Minn. Stat. § 121A.15, subd. 3a(d); (iii)

The commissioner will encourage providers to use existing screening for immunization

precautions and contraindication materials and make proper use of the vaccine adverse events

reporting system (VAERS) - Minn. Stat. § 121A.15, subd. 3a(e). (iv) In consultation with groups

and people identified in subdivision 12, paragraph (a), clause (1), the commissioner will continue

to develop and make available patient education materials on immunizations including, but not

limited to, contraindications and precautions regarding vaccines - Minn. Stat. § 121A.15, subd.

3a(f); (v)    The commissioner will encourage health care providers to use thimerosal-

free **vaccines** when available".

141.    In consulting the statutory materials mandated under the disclosure portion of

Minn. Stat. §121A.15, subd. 3a(b)(4),  namely the vaccine information statements updated by the

CDC – the (the CDC is a sub agency of the U.S. DHSS mentioned in the foregoing statute), one

can see that the baseline statutory recommended vaccines are far from "unequivocally safe" and

present serious health and injury risks as published by the CDC itself in its own releases.  (Ex.9).

142.    The following is a list of the serious vaccine injuries disclosed by the CDC to be

associated with vaccines Exhibit 9:

"(1) DAtp – Diphtheria Tetanus, Pertussis "long-term seizures, coma, lowered consciousness, or
permanent brain damage may happen after DTaP vaccination. " In some cases, your child's health
care provider may decide to postpone DTaP vaccination to a future visit; (2) Tetanus – Diphtheria
-  Pain, redness, or swelling where the shot was given, mild fever, headache, feeling tired, and
nausea, vomiting, diarrhea, or stomachache sometimes happen after Td vaccine.  People
sometimes faint after medical procedures, including vaccination. Tell your provider if you feel
dizzy or have vision changes or ringing in the ears. As with any medicine, there is a very remote
chance of a vaccine causing a severe allergic reaction, other serious injury, or death; (3) DTaP,
Hib, hepatitis B2, polio, and pneumococcal conjugate vaccines: More serious reactions, such as
seizures, non-stop crying for 3 hours or more, or high fever (over 105°F) after DTaP vaccination
happen much less often. The vaccine is followed by swelling of the entire arm or leg, especially in
older children when they receive their fourth or fifth dose; long-term seizures, coma, lowered
consciousness, or permanent brain damage may happen after DTaP vaccination.; (4) MMR
(Mumps Measles and Rubella) - seizures (often associated with fever), temporary pain and

stiffness in the joints (mostly in teenage or adult women), pneumonia, swelling of the brain and/or spinal cord covering, or temporary low platelet count which can cause unusual bleeding or bruising. In people with serious immune system problems, this vaccine may cause an infection which may be life-threatening. People with serious immune system problems should not get MMR vaccine. (5) Hepatitis B - soreness where the shot is given, or fever can happen after hepatitis B vaccine. severe allergic reaction (hives, swelling of the face and throat, difficulty breathing, a fast heartbeat, dizziness, or weakness); (6) influenza vaccine increased risk of Guillain-Barré Syndrome (GBS) after inactivated influenza vaccine (the flu shot). Young children who get the flu shot along with pneumococcal vaccine (PCV13), and/or DTaP vaccine at the same time might be slightly more likely to have a seizure caused by fever". ( Ex. 9).

143.    There are no regulations of the Board of Medical Practice and no Minnesota statutes which state that vaccines are unequivocally safe or which impose a duty upon any physician to state to the public and to patients that vaccines are unequivocally safe and which mandate that a physician violate the mandatory disclosure requirements of Minn. Stat. § 121A.15, subd. 3a(b)(4).

144.    Far from deeming the vaccines unequivocally safe, and far from mandating that a physician makes such affirmative representations, the Minnesota legislature enacted Minn. Stat. § 121A.15 which gives parents the choice to opt out of the vaccine requirements of the statute (Minn. Stat. § 121A.15, subd. 3(d)).

145.    The legislature also enacted the disclosure mandates of Minn. Stat. § 121A.15, subd. 3a(b)(1) through 3a(b)(4) which mandate that before vaccinating a patient, a physician must not only advise the patients of the health and injury risks of the vaccines by providing the patients with  the vaccine information sheet from the federal Department of Health and Human Services that lists possible adverse reactions to the immunization to be provided - Minn. Stat. § 121A.15, subd. 3a(4), but that the physician also advises the parents that they have an option to exempt their child from vaccination pursuant to either Minn. Stat. § 121A.15, subd. 3(c) and Minn. Stat. § 121A.15, subd. 3(d).

146.    In short, should a physician do anything less than what Minn. Stat. §121A.15, subd. 3a  requires them to do and should they fail to disclose the health risks and injury risks posed by

vaccines and the statutory unequivocal disclosure provisions, a physician such as the Plaintiff would be in violation of the mandates of the disclosure requirements of Minn. Stat. §121A.15, subd. 3a.

147.    In turn, such violation is an unequivocal violation of the Minnesota disciplinary statute Minn. Stat § 147.091(f). That is what the defendants are seeking to achieve with the present bad faith prosecution.

**(vi)    The allegations of Exhibit 6 take aim at Plaintiff's First Amendment rights of free speech and seek to maintain Plaintiff's disciplinary bad faith prosecution predicated on Plaintiff's compliance with the disclosure mandates of <u>Minn. Stat. § 121A.15, subd. 3a(b).</u>**

148.    In order to determine the extent and nature of the bad faith prosecution, the Court is now directed to the allegations of Exhibit 6 – which must be examined in the context of the foregoing statutory schemes.

149.    Paragraph 2(a) (Ex. 6) contains general allegations regarding Plaintiff's identity and a statement of purpose placed on his website.

150.    None of the allegations in paragraph 2(a) state an act or omission amounting to the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3.

151.    Nor do any of the allegations in paragraph 2(a) state any acts or omissions which amount to a violation of any of the statutes based on which the defendants propose to seek disciplinary sanctions against the Plaintiff, namely: (i) Minn. Stat § 147.091, subd.1(g)(2018); (ii) Minn. Stat. §147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v).

152.    In paragraph 2(b) of the allegations Exhibit 6, page 3 the defendants state as follows:

"a.    A significant number of Respondent's pediatric patients are not immunized pursuant to the Center for Disease Control and Prevention ("CDC")'s recommended

schedule. During Respondent's August 12, 2019 investigative conference with the Board's Complaint Review Committee, Respondent estimated that, at their two-month visit, only 30% of his pediatric patients receive vaccinations pursuant to the CDC's recommended schedule; 50% receive some of the recommended vaccines; and 20% receive none of the vaccines".

153.    This paragraph, even if true does not rise to either the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3 or to any violation of (i) Minn. Stat § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v). The foregoing are the specific statutory provisions which the defendants contend that the Plaintiff violated.

154.    Neither of the provisions of the statutes which the defendants contend the Plaintiff violated, nor any of the provisions of Minn. Stat. § 121A.15 impose any volume percentage requirements or mandates on physicians with respect to vaccinations administered to a patient population before or at the two months visit as alleged in paragraph 2(b) (Ex. 6 p. 3).

155.    In addition, the decision as to whether to vaccinate or not to vaccinate at all is not that of the physician but that of the parents who can simply exempt the children from vaccinations requirement of Minn. Stat. § 121A.15 by providing a notarized exemption statement under Minn. Stat. § 121A.15, subd. 3(d). Moreover, the decision of whether to follow the CDC vaccine suggested vaccination guidelines or not at any given time rests with the discretion of the physician on a case by case basis. (See repeated statements in the vaccine safety data sheets of the CDC Ex 9).

156.    Paragraph 2(c) of the allegations Ex 6 p. 3 states verbatim as follows:

"c.    In contrast to Respondent's practice, the 2017 National Immunization Survey-Child ("2017 NIS survey") indicated that only 1.3% of two-year-old children in the United States had not received any of the CDC-recommended immunizations.    *See*    https://www.cdc.gov/mmwr/volumes/68/wr/mm684le2.htm. According to the 2017 NIS survey, by 24 months, more than 90% of children in the United States had received the CDC- recommended doses of polio; MMR (measles mumps, and rubella), HepB (hepatitis B), and varicella vaccines".

157.    For starters, Paragraph 2(c) which purports to recite NIS survey numbers

standing in and onto itself does not amount either to the practice of medicine as defined by Minn.

Stat. Ann. § 147.081, subd. 3 or to any violation of (i) Minn. Stat § 147.091, subd. 1(g)(2018);

(ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v). Nor does

paragraph 2(c) state any violation of the Minnesota Vaccine standard statute Minn. Stat. §

121A.15.

158.    Second, the comparison between the NIS survey numbers pertaining to two-year-

old and 24 months children in the survey and the percentage numbers recited in paragraph 2(b)

which the defendants attributed to Plaintiff's practice mixes apples and oranges. A two months

old baby as mentioned in paragraph 2(b) is not a two year or a 24 months old child as mentioned

in the recitation of the NIS surveys in paragraph 2(c).

159.    Moreover, there is no provision anywhere in Minnesota Law or in the statutes

which the defendants contend that the petitioner violated, to wit: (i) Minn. Stat § 147.091, subd.

1(g)(2018);  (ii) Minn. Stat § 147.091,m subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd.

1(v) or in the  Minnesota vaccine standard statute Minn. Stat. § 121A.15 that mandates that the

plaintiff or any other licensee has to adhere to the finding of NIS surveys regarding any issue let

alone children of age which is irrelevant to the recitations of paragraph 2(b).

160.    In paragraph 2(d) the defendants state as follows:

"d     The community standard of acceptable and prevailing medical practice is to

counsel that vaccines are safe. Respondent has failed to meet this standard of care".

161.    To the extent that the foregoing statement amounts to an attempt by the Board

to regulate the "community standard" applicable to vaccine disclosure by adjudication, such

regulation is in direct conflict with the statutory disclosure provisions of Minn. Stat. §

121A.15, subd. 3a(b).

162. Specifically, **Minn. Stat.** § 121A.15, subd. 3a(b)(4) provides that, "Before

immunizing a person, an immunization provider must provide the person, or the person's parent

or guardian if the person is under 18 years of age and not emancipated, with the following

information in writing: (4) in accordance with federal law, a copy of the vaccine information sheet

from the federal Department of Health and Human Services **that lists possible adverse reactions**

**to the immunization to be provided** and **Minn. Stat.** § 121A.15, subd. 3a(b)(2) provides that a

physician must before administering any vaccines a description in writing of the exemptions from

immunizations permitted under subdivision 3, paragraphs (c) and (d).

163. Moreover 42 USC § 300aa-12 and 42 CFR § 100.3 are the vaccine tables which

disclose significant injuries, time frames and symptoms associated with compensable vaccine

injuries.

164. Any attempted regulation by the Board through adjudication which mandates that

the physician conceal the statutory vaccine injuries determined to exist by both the U.S. Congress

and by the Secretary of the US DHHS (Ex. 8) and the information mandated by the disclosure

provisions of **Minn. Stat.** § 121A.15, subd. 3a(b)(4) and **Minn. Stat.** § 121A.15, subd. 3a(b)(2)

regarding the availability of vaccine exemptions is void as a matter of law because such attempted

regulatory activity conflicts with specific statutory enactments.

165. As set forth above neither federal statutes nor the Minnesota statutory schemes

deem vaccines as "unequivocally safe". Nor do they mandate that a physician depart from

unequivocal statutory provisions of **Minn. Stat.** § 121A.15, subd. 3a(b)(4) and **Minn. Stat.** §

121A.15, subd. 3a(b)(2)  and counsel that vaccines are safe when in fact as a matter of law they were found not to be.

166.    In short paragraph 2(d) Ex 6 as a matter of law does not state any grounds for discipline under (i) Minn. Stat § 147.091, subd. 1(g)(2018);  (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v)  simply because by requesting the Plaintiff to follow the allegations of this paragraph, the Board would force the plaintiff to violate the findings of 42 USC § 300aa-14, 42 CFR § 100.3 and the disclosure mandates of Minn. Stat. § 121A.15, subd. 3a(b)(4) and Minn. Stat. § 121A.15, subd. 3a(b)(2).  The defendants' stand in paragraph 2(d) also stands in stark contrast to the statutory provisions of Minn. Stat. § 121A.15, subd. 3a(c) through Minn. Stat. § 121A.15, subd. 3a(g) directing the commissioner of the Minn. Dept of Health to enact and follow vaccine safety procedure.

167.    Paragraph 2(e) Ex. 6 p. 3 states verbatim as follows:

e.      According to the CDC, less than one in every one-million children who receive the MMR vaccine suffer severe adverse reactions.
*See*  http://www.cdc.gov/nip/publications/VIS/vis-mmr.pdf.  But when patients' parents  ask Respondent about the safety of vaccines, Respondent does not cite safety statistics or tell patients that the following health institutions endorse vaccine safety: Minnesota Department of Health; Minnesota Chapter of the American Academy of Pediatrics; National Academy of Medicine; and the National Institute of Allergic and Infectious Diseases. Nor does Respondent tell patients' parents that the American Board of Pediatrics, from which he holds a certification that he references on the clinic website, recognizes, and encourages timely vaccination as a quality improvement effort for maintaining certification.

168.    None of the statements contained in paragraph 2(e) amount to any violation of either (i) Minn. Stat § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v).

169.    Specifically, defendants' recitation of the CDC purported findings stating  that less than one in every one million children who receive the MMR vaccine suffer severe adverse reactions  in and onto itself does not amount to any violation of the foregoing statutes.

170.    Moreover, the only mandatory disclosure requirements regarding vaccine safety are those mandated by the Vaccine Standard statute Minn. Stat. § 121A.15, subd. 3a(b)(1) through **Minn. Stat.** § 121A.15, subd. 3a(b)(4).

171.    There are no mandatory disclosure requirements either codified in statutes, regulated by regulation or disclosed in any of the  Board published missives in Minnesota which impose an affirmative duty on the Plaintiff to: (i) disclose  "safety statistics" or (ii) tell patients that health institution identified by the Board as Minnesota Department of Health; Minnesota Chapter of the American Academy of Pediatrics; National Academy of Medicine; and the National Institute of Allergic and Infectious Diseases endorse vaccine safety; (iii) tell patients' parents that the American Board of Pediatrics, from which Plaintiff holds a certification and which he references on the clinic website, recognizes and encourages timely vaccination as a quality improvement effort for maintaining  certification" a stated in paragraph 2(d).

172.    Paragraph 2(f) states as follows:

"f.    When patients' parents ask about the safety of vaccines, Respondent counsels them by expressing his personal wish for: (l) double-blind placebo controlled vaccine studies; (2) studies comparing the health of vaccinated vs unvaccinated children; and (3) removal of "immunity protection" for vaccine manufacturers. During his August 12, 2019 conference with the Committee, however, Respondent acknowledged the unethical nature of such studies. During the conference, Respondent also stated that he tells patients' parents that he cannot say vaccines are unequivocally safe and tells them there are risks, just as there are risks associated with driving to the clinic or drinking unpasteurized milk".

173.    None of the allegations in paragraph 2(f) amount to any violation of either (i) Minn. Stat § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v) because the expression of one's personal opinions and wishes to patients inquiring about vaccine safety amounts to free speech protected by the First Amendment of the US Constitution and not to the practice of medicine as defined by as defined in Minn. Stat. Ann. § 147.081, subd. 3 regulated by the Board.

174. Moreover, the Plaintiff's telling patients' parents "that he cannot say vaccines are unequivocally safe and tells them there are risks, just as there are risks associated with driving to the clinic or drinking unpasteurized milk" as alleged in paragraph 2(f), as a matter of law is not a violation of either (i) Minn. Stat § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v). The Plaintiff is mandated by disclosure provisions of Minn. Stat. § 121A.15, subd. 3a(b)(4) to disclose the known adverse effects of the vaccinations prescribed and by and Minn. Stat. § 121A.15, subd. 3a(b)(2) to advise parents about the availability of personal and medical exemptions.

175. Moreover, assuming arguendo that the Plaintiff tells his patients' parents that "he cannot say vaccines are unequivocally safe and tells them there are risks, just as there are risks associated with driving to the clinic or drinking unpasteurized milk", such disclosure is also in line with the vaccine injury tables of 42 USC § 300aa-14, 42 CFR § 100.3 and with the standard vaccine disclosure of the CDC made in the vaccine profile updates Exhibit 9 hereto. There is no violation of either (i) Minn. Stat § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v) by such statements but rather there is compliance with the disclosure mandates of Minnesota law, Minn. Stat. § 121A.15, subd. 3a(b)(4).

176. Paragraph 2(g) Exhibit 6 states as follows:

"Respondent's clinic website previously provided a link to CDC research on the safety and efficacy of vaccines but also disparaged that research as follows: "This information is a compilation of the science behind vaccines, but unfortunately does not completely address some of the parent (or professional!) concerns regarding vaccines."

177. Assuming arguendo for the purposes of this action the foregoing statements were true, the foregoing allegations do not amount to either (i) Minn. Stat § 147.091, subd.1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v).

178.    Pointing the patients to a link "to CDC  research on the safety and efficacy of vaccines" and stating and admitting that "this information is a compilation of the science behind vaccines",  is admittedly not a violation of any statutory provision listed above. The defendants themselves cite to those studies in paragraph 2(e) of Ex 6 as being their measuring yardstick for vaccine safety.

179.    The use of the word "disparaged that research" in paragraph 2(g) by the defendants is disingenuous at best given the mandatory disclosure requirements of the deleterious side effects of vaccines mandated by Minn. Stat. § 121A.15, subd. 3a(b)(4).

180.    Moreover, a pure expression of opinion that the CDC studies and the compilation of the science behind it "unfortunately does not completely address some of the parent (or professional!) concerns regarding vaccines" is neither a "disparaging" remark nor a violation of either (i) Minn. Stat § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v).

181.    It is an expression of personal opinion which constitutes free speech under the First Amendment of the U.S. Constitution and it further amounts to a proper disclosure of the risks and side effects of vaccines subject to the mandatory statutory disclosure provisions of Minn. Stat. § 121A.15, subd. 3a(b)(4).

182.    Paragraph 2(h) Exhibit 6, Page 4 states that "While Respondent told the Committee that he recommends the CDC vaccination schedule, Respondent's clinic website has advertised the clinic as a "non-judgment clinic," that supports alternative vaccine schedules:  We are here to help the patients make an informed decision regarding choices for their family - including options (without judgment and with support) for alternative vaccine schedules".

183. None of the statements set forth in paragraph 2(h) amounts to either the practice of medicine as defined in in Minn. Stat. Ann. § 147.081, subd. 3; nor do any of the allegations of paragraph 2(h) constitute medical misconduct as defined in either (i) Minn. Stat § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v).

184. Specifically, according to defendants' own version of what the standard of care should be as stated in paragraph 2(c) of Ex 6, referral and recommendations of the CDC vaccination schedules is the gold standard.

185. Offering "help to the parents of patients to make an informed decision regarding choices for their family" is not only an act which does not violate any of the provisions of Minn. Stat. § 147.091 cited by the defendants, but it is a mandatory statutory disclosure provision of Minn. Stat. § 121A.15, subd. 3a(b) in general.

186. The Plaintiff spoke to the CRC during the August 12, 2019 investigative meeting about patients' parents who come to him and who already made the decision before they to invoke the personal exemption of Minn. Stat. § 121A.15, subd. 3(d) before they consulted with the Plaintiff and independent of his input. The Plaintiff does not have the decision-making power to vaccinate, the parents do. Consequently, a decision to invoke the personal exemption of Minn. Stat. § 121A.15, subd. 3(d) made by parents before they come to see the plaintiff does not amount to any violation of either (i) Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v) by the Plaintiff, simply because the Plaintiff has no input into those initial decisions to begin with.

187. The Plaintiff also spoke on August 12, 2019 investigative meeting with the CRC of explaining to the parents who opted to invoke the personal exemption against vaccination under Minn. Stat. § 121A.15, subd. 3(d) and convincing them to at least accept a modified CDC

vaccine schedule which spaces out the vaccines in time so as to minimize risks of adverse effects and vaccine injuries. The decision to space out in time recommended CDC vaccinations even according to the CDC vaccine safety data sheets rests with the sole discretion and judgment of the physician. (Ex. 9).

188.    The offering of a modified vaccine schedule and a waiting time between vaccine is not a violation of either (i) Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v).

189.    The CDC itself acknowledges in the vaccine profile updates (Ex 9) that the physician may choose to wait in between vaccine and administer vaccines at a later date rather than follow the CDC vaccination schedules. There is no Minnesota state or federal mandatory regulatory or statutory provision which mandates that the CDC recommended vaccine schedule be followed to a tee. There is also no prohibition against a physician using his own judgment to offer modified vaccine schedules to individuals who chose the personal exemption against vaccination under Minn. Stat. § 121A.15, subd. 3(d) for core beliefs of vaccine injury or religious beliefs.

190.    Paragraph 2(i) Exhibit 6, Page 4 states as follows:

"During his August 12, 2019 conference with the Committee, Respondent stated that, when patients' parents question the safety of vaccines, he uses statements made during an August 25, 2017 interview with Polly Tommey, of the Vaxxed YouTube, as his "starting point" for counseling them on the risks of vaccines. In the August 2017 interview, Respondent referred to himself as a former vaccine bully and further stated:

"The vaccinated kids are the sickest; the partially vaccinated kids are not as sick; and the unvaccinated kids are the healthiest."

"Medical doctors don't have a lot of training in vaccines."

"You'll become immortal if you vaccinate and if you don't, all the babies in the world will die and that's what the CDC wants us to believe."

"Instead of a one in a million reaction, we are seeing kids you know, one in a hundred being hospitalized

The vaccine industry "is the only industry in our country where you have no option for litigation if somebody's hurt."

191.     None of the allegations set forth in paragraph 2(i) amount to either the practice of medicine as defined by Minnesota statutes or to any violation of either (i) Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v).

192.     Specifically, none of the statements of pure opinion allegedly made by the Plaintiff during an internet media interview with August 25, 2017 interview with "Polly Tommey, of the Vaxxed on YouTube" amount to the practice of medicine.   The same statements listed in paragraph 2(i) amount to pure expressions of Plaintiff's personal opinion which is protected by the First Amendment. Such expressions of pure opinion are not subject to the regulatory powers of the Board. Statements made during an internet media interview do not amount to the practice of medicine as defined by as defined in in Minn. Stat. Ann. § 147.081, subd. 3.

193.     Similarly, none of the statements of pure opinion allegedly made by the Plaintiff during an internet media interview with August 25, 2017 interview with Polly Tommey, of the Vaxxed YouTube amount to a violation of either (i) Minn. Stat § 147.091, subd. 1(g); (ii) Minn. Stat § 147.091, subd. 1(k) and/or (iii) Minn. Stat § 147.091, subd. 1(v).

194.     Contrary the defendant's personal beliefs, the Board is not empowered to regulate what a physician licensee says or does not say during a media interview during which he is expressing his own opinions. The Board only has the powers given to it by the legislature to regulate the *practice of medicine* as set forth in Minn. Stat. § 147.001 subd. 2, and not the powers to regulate free speech and expressions of pure opinions and statements made during online

interviews. Attempts at ad hoc adjudication of content specific speech which regulatory attempts violate the disclosure provisions of Minn. Stat. § 121A.15, subd. 3a(b) are actions taken by the state officials in excess of their powers and jurisdiction and they fail the strict scrutiny test. In this case there simply cannot be any compelling interest of the state agency to act as a legislating body and re write the disclosure and exemption provisions of Minn. Stat. § 121A.15 according to their personal beliefs regarding vaccine safety or according to anything else which contradicts the provisions of the Minnesota vaccine standard statute.

195.    Turning to the next allegations made in paragraph 2(i) that "During his August 12, 2019 conference with the Committee, Respondent stated that, when patients' parents question the safety of vaccines, he uses statements made during an August 25, 2017 interview with Polly Tommey, of the Vaxxed YouTube,     as his "starting point". The Plaintiff never made such statements.

196.    In addition, the Plaintiff made many statements in the online interview of August 12, 2019 which have nothing to do with the statements selected by the Board from the interview to selectively attribute to Plaintiff's discussions with his patients.

197.    Moreover, even if the Plaintiff did share his personal opinions and views expressed on his online interview with his patients, the Board cannot regulate expressions of personal opinion and free speech because it has not been given the powers to do so by the legislature in Minn. Stat. § 147.001, subd. 2 and because any statute giving the Board the powers to muzzle First Amendment content specific speech would be facially unconstitutional. Content specific speech regulations are facially unconstitutional and are subjected to the strict scrutiny standard of judicial review.

198.    If the Board proposes to muzzle content specific speech critical of vaccine safety and vaccine industry through the use of the provisions of either (i) Minn. Stat. § 147.091, subd.

1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v),

such attempts by the Board are facially unconstitutional and the statutes used by the Board as the

vehicle for content specific speech muzzling are unconstitutional as applied.

199.   Paragraph 2(j) states that: "Respondent has deviated from the accepted standard

of care by counseling that there is no accountability for vaccine injuries when patients' parents

inquire about vaccine safety. During the August 25, 2017 Vaxxed YouTube interview and

during Respondent's August 12, 2019 conference with the Committee, Respondent stated that

the laws in place protect the vaccine industry and that vaccine manufacturers are immune

from lawsuits.".

200.   None of the statements in paragraph 2(j) amount to either the practice of

medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3 nor do they amount to of either (i)

Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat.

§ 147.091, subd. 1(v).

201.   Statements made by the Plaintiff during a media interview which express

Plaintiff's personal opinions and beliefs regarding the vaccine laws and their effect on lack

of accountability of vaccine manufacturers are not within the regulatory subject matter

jurisdiction as defined by the empowering statute Minn. Stat. § 147.001, subd 2. The Board

can only regulate medical conduct and the practice of medicine and not expressions of opinion

and free speech. There is no medical standard of care applicable to the expression of Plaintiff's

opinions of his understanding of the effect of the vaccine laws as applicable to manufacturer

accountability.

202.   Moreover, the Board's attempt at prohibiting content specific speech which is

critical of vaccine safety and discloses vaccine risks is unconstitutional on its face  and cannot

survive the strict scrutiny standard because there is no compelling state interest in curbing free

speech which addresses vaccine risks and injuries since then disclosure of such risks and deleterious effects are mandatory under the statutory provisions of Minn. Stat. § 121A.15, subd. 3a(b)(4).

203.     Specifically, to the extent that the Board once again is using the provisions of (i) Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v) to seek to muzzle content specific speech which is critical of the vaccine industry and of vaccine safety, such attempts are unconstitutional and illegal.

204.     Moreover, Plaintiff's expression of his understanding and opinion regarding the effects which the current law has in the limitation of liability for vaccine manufacturers does not constitute either the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3, and no medical standard of care applies to it.

205.     Even if the statements made in paragraphs 2(j) and 2(k) were to be taken as true, the allegations of paragraph 2(j) still did not amount to a violation of either (i) Minn. Stat. §147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v).

206.     Making statements during the August 25, 2017 Vaxxed YouTube interview and to the CRC during the August 12, 2019 investigative conference that "there is no accountability for vaccine injuries" is not one and the same as defendants' unfounded contention that Plaintiff made the same statement to patients during his counseling on vaccine safety as stated in paragraph 2(j).

207.     Moreover, defendants' allegations of paragraph 2(j) are predicated upon their own incomplete spin and partial recitation of the applicable vaccine compensation laws in paragraph 2(k). While the defendants are correct in their recitation of the law that 42 USC § 300aa-21(a) does enable a vaccine injury victim to elect whether to accept the award of the

U.S. Court of Claims made under the provisions on the National Childhood Vaccine Injury

Act and the Vaccine Injury Compensation Program or to proceed by in state under state tort

laws, the defendants purposely omit the immunity and limit of liability imposed by 42 USC

§ 300aa-22.

208.    The later statutory provisions have the net effect of  obliterating any bona fide

attempt at successfully maintaining a state tort action by exempting the manufacturers from

any liability for vaccine injuries or death associated with the administration of a vaccine after

the effective date Oct. 1, 1988 if:  (i) in accordance with the provisions of 42 USC§ 300aa-

22(b)(1) the injury or death resulted from side effects that were unavoidable even though the

vaccine was properly prepared and was accompanied by proper directions and warnings and (ii)

proper directions and warnings were given in accordance with the provisions of 42 USC §

300aa-22(b)(2) or if (iii) in accordance with the provisions of 42 USC § 300aa-22 - no vaccine

manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or

death associated with the administration of a vaccine after the effective date of this part solely

due to the manufacturer's failure to provide direct warnings to the injured party (or the injured

party's legal representative) of the potential dangers resulting from the administration of the

vaccine manufactured by the manufacturer.

209.    Thus, the Plaintiff is correct in asserting that there is no direct vaccine

accountability borne directly by the manufacturers. The claims for vaccine injuries have to be made

first through the procedural channels of the VICP and the NCVIA and such claims are against the

Vaccine Injury Trust Fund and not against the pocketbooks of respective vaccine manufacturers.

The provisions of 42 USC Sec. §§ 300aa-22 act as a de facto immunity and limitation. Of

liability against state tort claims even though such state tort claims are theoretically not barred

under federal law. See 42 USC §§ 300aa-22(e).

210.   The allegations made in paragraph 2(k) Ex 6 are recitations of defendants' understanding of the statutory provisions of the National Vaccine Injury Compensation program codified in 42 USC Sec. §§ 300aa-10 through §§ 300aa-22 and do not constitute grounds for discipline under either (i) Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v).

**(vii)   Factual conclusion**

211.   For the foregoing reasons none of the allegations set forth in paragraphs 2(a) through 2(k) state any grounds for discipline under either (i) Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v). The allegations clearly state the defendants' intent to prosecute the plaintiff for expressing his personal opinions regarding vaccine safety and vaccine industry during a public interview on internet media YouTube.

212.   Not only that Plaintiff's expressions of free opinion in public media does not amount to the practice of medicine as defined by Minn. Stat. Ann. § 147.081, subd. 3, but the defendants are impermissibly attempting to prohibit, and muzzle content specific First Amendment protected speech which is critical of vaccine safety and the vaccine industry through the impermissible and unconstitutional use of state disciplinary statutory provisions of (i) Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v).

213.   Most astoundingly the defendants propose to make use of the disciplinary statutes and to substitute their own script stating that "the standard of care is to advise that vaccines are safe" while obliterating in their entirety the disclosure mandates imposed upon the plaintiff by of Minn. Stat. § 121A.15, subd. 3a(b) regarding vaccine risks and side effects, as well as the personal exemption provisions of Minn. Stat. § 121A.15, subd. 3(d).

214.    Neither the Board nor anyone else other than the Minnesota legislature has the powers to amend or write the provisions of Minn. Stat. § 121A.15 regarding vaccine administration and vaccine safety disclosures.

215.    The Board's use of the administrative license disciplinary process in order to stifle Plaintiff's exercise of his First Amendment rights amounts to textbook bad faith prosecution which is subject to injunctive relief irrespective of defendants' likelihood of success in their administrative proceedings.

## COUNT I

### TEMPORARY INJUNCTION
### PURSUANT TO FED. R. CIV. PROC. 65 OF
### BAD FAITH PROSECUTION

216.    Plaintiff repeats reiterates and realleges each and every allegation set forth above, paragraphs 1 through 215, with the same force and effect as if the same was set forth at length herein.

217.    Fed. R. Civ Proc. 65 vests this Court with subject matter jurisdiction to issue a preliminary injunction pending the hearing and determination on the merits of this action preliminarily enjoining the bad faith prosecution and the proceedings commenced on June 10, 2020 (Ex. 6) and now pending before the Minnesota Office of Administrative Hearings.

218.    While initially the bad faith prosecution exception to the *Younger* abstention doctrine was recognized in the context of criminal prosecutions, the U.S. Supreme Court applies *Younger* abstention bad faith prosecution exceptions principles to both criminal and administrative prosecutions.

219. Federal Circuits throughout the country apply the bad faith prosecution concept to license disciplinary proceedings and administrative enforcement proceedings.

220. The Eighth Circuit Court of Appeals does not foreclose the application of bad faith prosecution concepts to administrative enforcement actions.

221. In addition, the bad faith prosecution exception to the *Younger* abstention applies to civil enforcement proceedings which are akin to criminal proceedings. In the Eighth Circuit, administrative license disciplinary proceedings are considered quasi-criminal proceedings in nature which implicate due process. District Courts of Minnesota recognized the application of the bad faith exception to such proceedings.

222. Prosecutions are brought in bad faith when they are designed to prevent or punish and harass an individual from exercising his constitutionally protected rights.

223. Bad faith and harassing prosecutions encompass those prosecutions that are initiated to retaliate for or discourage the exercise of constitutional rights.

224. If a showing is made that the prosecution was brought to retaliate for or to discourage the exercise of a constitutional right, an injunction will be warranted regardless of whether the state could be successful on the merits.

225. In the present case, the Plaintiff has shown in this pleading with pain staking detail, that the allegations based upon which the present administrative prosecution is maintained, either do not amount to a violation of any provisions of Minnesota disciplinary statute Section 147.091; that the proposed basis for the prosecution violates the statutory provisions of the Minnesota vaccine standard statute Section 121A.15 and that the defendants themselves stated in no uncertain terms that the aim of the prosecution is to muzzle and silence Plaintiff's personal opinions and expressions of free speech made during interviews in public forums and expressed to parents of

his pediatric patients with respect to vaccine safety issues, vaccine injuries and vaccine manufacturer unaccountability for vaccine injuries.

226.    Consequently, the Plaintiff has shown that the bad faith prosecution has no legitimate purpose as a matter of law and that the same is aimed at stifling the exercise of his First Amendment right of free speech.

227.    A showing of bad faith or harassment aimed at discouraging the exercise of constitutionally protected rights is equivalent to a showing of irreparable injury under *Younger*, and irreparable injury independent of the bad faith prosecution need not be established.

228.    As a matter of law, the Plaintiff has a constitutionally protected due process right to be free from bad faith and harassment prosecutions.  Because constitutionally protected due process applies to license administrative proceedings and because the Plaintiff has a constitutional due process right to be free of bad faith prosecutions, the concept of bad faith prosecution apples to administrative license disciplinary proceedings.

229.    Moreover, the right to be free from bad faith prosecutions has been held to apply to professional license disciplinary prosecutions.   The administrative process in license disciplinary proceedings has been held to be inadequate as a matter of law to address bad faith prosecutions.

230.    In the present case, the defendants commenced a license disciplinary action for the purposes of harassing the Plaintiff for the further purposes of preventing the Plaintiff from exercising his Constitutionally protected First Amendment free speech rights and his First Amendment right to freedom of association with producers of the movie Vaxxed, which is critical of vaccine safety and the vaccine industry.

231.    Allegations that the disciplinary proceedings are held in bad faith for the purposes of stifling the exercise of constitutional right are sufficient to state a claim for injunctive relief of bad faith prosecution.

232.    In a bad faith prosecution case the balance of equities weighs heavily in favor of the Plaintiff and militate in favor of the grant of a temporary injunction. The bad faith prosecution itself is the immediate injury, which must be enjoined, and which causes immediate irreparable harm to the Plaintiff.  On the other hand, the defendants do not have any legal or legitimate interest to maintain a bad faith prosecution.

233.    Federal courts have held that the commencement and the existence of the bad faith prosecution itself amounts to immediate irreparable harm because the Plaintiff has a due process right to be free from bad faith prosecutions.

234.    Under federal law it is recognized that although disciplinary proceedings are capable of deciding constitutional challenges to specific procedures, recourse in those proceedings is not a sufficient avenue to remedy the constitutional injury done by bad faith proceedings themselves. The right under federal law is to be free of bad faith charges and proceedings, not to endure them until their speciousness is eventually recognized.

235.    One of the exceptions to the *Younger* abstention doctrine is the existence of state bad faith prosecution which federal courts have to enjoin. Because in this case the bad faith prosecution itself is at the core of this litigation, the *Younger* abstention doctrine does not apply.

236.    In addition, because the Plaintiff is not required to endure the administrative bad faith prosecution until its speciousness is recognized, paradigms of administrative exhaustion do not apply.

237.    The issuance of a preliminary injunction enjoining the bad faith prosecution is in the public interest because upholding constitutional rights is in the public interest.

238.    For all of the foregoing reasons, the Plaintiff requests that his application for a preliminary injunction under Fed. R. Civ. Proc. 65 staying the state disciplinary administrative proceedings, now in progress, because the same amount to bad faith prosecution.

## COUNT II

### PERMANENT INJUNCTION PURSUANT
### TO 42 USC SEC. 1983 ENJOINING THE CONTINUED AND FUTURE
### VIOLATION OF PLAINITF'S CONSTITUTIONALLY PROTECTED RIGHTS.

239.    Plaintiff repeats reiterates and realleges each and every allegation set forth above, paragraphs 216 through 238, with the same force and effect as if the same was set forth at length herein.

240.    The Plaintiff is seeking the issuance of a permanent injunction pursuant to 42 USC § 1983 permanently enjoining the defendants, their gents, servants and assigns from continuing to violate Plaintiff's exercise of his First Amendment protected right to free speech as set forth above in this complaint by maintaining the bad faith prosecution aimed at muzzling and silencing Plaintiff's expression of his opinions regarding vaccine safety and vaccine injury accountability.

241.    The Plaintiff is seeking the issuance of a permanent injunction pursuant to 42 USC § 1983 permanently enjoining the defendants, their gents, servants and assigns from continuing to violate Plaintiff's constitutionally protected due process right protected by the Fourteenth Amendment to be free from bad faith prosecutions.

242.    In this case the Plaintiff alleges that the defendants are proceeding under the color of Minnesota law invoking the provisions of the Minnesota disciplinary statute Minn.

Stat. § 147.091 for the purposes of harassing the Plaintiff for expressing his opinions regarding vaccine safety and vaccine injury accountability to the producer of the movie Vaxxed, during an interview posted in an open forum.

243.    The Plaintiff further contends that the defendants are proceeding under the color of Minnesota law invoking the provisions of the Minnesota disciplinary statute Minn. Stat. § 147.091 for the purposes of stifling his First Amendment rights to express his personal opinions regarding vaccine injuries, vaccine safety and vaccine injury accountability.

244.    The Plaintiff further contends that while acting under the color of the Minnesota disciplinary statute Minn. Stat. § 147.091 the defendants are maintaining and continued to maintain a bad faith prosecution which in and onto itself amounts to a violation of Plaintiff's due process rights safeguarded by the Fourteenth Amendment of the U.S. Constitution.

245.    Actions for injunctions pursuant to 42 USC § 1983 are permitted against individual state officials in order to enjoin prospective violation of constitutional rights.

246.    In this case this action is brought against individual defendants, state officials, and members of the Minnesota Board of Medical Practice for the purposes of seeking an injunction pursuant to 42 USC § 1983 enjoining them from prospectively violating Plaintiff's First and Fourteenth amendment rights as set forth in this complaint by maintaining the bad faith prosecution described herein.

247.    For all of the foregoing reasons, plaintiff's request for the issuance of permanent injunction under 42 USC § 1983 permanently enjoining the defendants, their agents servants and assigns from maintaining the bad faith prosecution commenced with the OAH filings on June 10, 2020 (Ex 6), should be granted in its entirety.

## COUNT III

## DECLARATORY JUDGMENT
## PURSUANT TO 28 USC Sec. 2201 ET.SEQ.

248.     Plaintiff repeats reiterates and realleges each and every allegation set forth above,

paragraphs 239 through 247, with the same force and effect as if the same was set forth at length

herein.

249.     The Plaintiff is seeking a declaratory judgment against the defendants pursuant to

28 USC § 2201, et.seq. as follows: (i)  declaring defendants' actions in maintaining a bad faith

prosecution and seeking to muzzle and silence free speech and expression of personal opinions

regarding vaccine safety and vaccine injury accountability as illegal, unconstitutional, violative of

the First Amendment and acts beyond the scope of defendants' powers and subject matter

jurisdiction;  (ii) declaring defendants' actions in maintaining a bad faith prosecution and seeking

to muzzle and silence free speech and expression of personal opinions regarding vaccine safety

and vaccine injury accountability as violative of Plaintiff's constitutional due process rights to be

free from bad faith prosecution  safeguarded by the Fourteenth Amendment.

250.     Under 28 USC § 2201 any court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought. Any such declaration

shall have the force and effect of a final judgment or decree and shall be reviewable as such.

251.     The Declaratory Judgment Act's requirement of an actual controversy is no more

than a recognition that the Constitution limits the exercise of judicial power to cases and

controversies in the constitutional sense.

252.    Under this standard, there must be a concrete case touching the legal relations of parties having adverse legal interests, and susceptible of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged. The distinction is between a case appropriate for judicial determination on the one hand, and a difference or dispute of a hypothetical or abstract character on the other.

253.    Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

254.    In a declaratory judgment action courts ask in determining whether an actual controversy exists what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff.

255.    The concepts of "adverse legal rights" and "legal risk," used to describe the standard for jurisdiction requires that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it.   Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction.

256.    In the present case a justiciable controversy exists. The defendants commenced and are maintaining a bad faith prosecution for the purposes of stifling Plaintiff's exercise of his Frist Amendment right to free speech and free expression of his opinions expressed in public forums regarding vaccine safety and vaccine injury accountability.

257.    Moreover, by maintaining such bad faith prosecution the defendants are seeking to prevent the Plaintiff from compliance with the disclosure requirements of Minn. Stat. § 121A.15,

subd. 3a(b)(4) regarding vaccine injuries and adverse reactions and with the disclosure mandates of Minn. Stat. § 121A.15, subd. 3a(b)(2) regarding the availability of statutory vaccination exemptions provided by Minn. Stat. § 121A.15, subd. 3(c) and Minn. Stat. § 121A.15, subd. 3(d).

258.    The defendants are attempting to rewrite Minn. Stat. § 121A.15 through  an impermissible attempt at regulation through ad hoc adjudication mandating that the Plaintiff represent to his patients and to the public as a whole in interviews given on the internet and posted in public forums that vaccines are safe.

259.    This attempt at impermissible regulatory action which contravenes the plain language of Minn. Stat. § 121A.15, subd. 3a(b) is null and void as a matter of law.

260.    The administrative officials have no powers or subject matter jurisdiction to rewrite the disclosure mandates of Minn. Stat. § 121A.15, subd. 3a(b) simply because the exercise of legislative powers is reserved to the elected officials in the state legislature and it cannot be delegated to administrative officials.

261.    Moreover, the defendants as a matter of law, cannot make use of the state medical license disciplinary process to coerce the Plaintiff into expressing the subjective views of the administrative officials on vaccine issues during his exercise of his right to free speech and freedom of expression of Plaintiff's own opinions expressed during a journalistic  interview, posted in an internet public forum. The defendants simply cannot regulate free speech and expressions of differences of opinion on the issues of vaccine safety and statutorily created vaccine exemptions available to Plaintiff's patient's parents.

262.    Similarly, the defendants as a matter of law cannot make use of the state medical license disciplinary process to coerce the Plaintiff into violating the mandatory disclosure provisions of Minn. Stat. § 121A.15, subd. 3a(b)(4) which state that the existence vaccine injuries

and vaccine adverse reactions must be disclosed in writing to all parents before vaccinations are administered.

263.    Regulations which contradict and contravene statutory provisions are void as a matter of law.

264.    Regulations which seek to curb content specific speech, in this case Plaintiff's discussion of vaccine safety issues and of what the Plaintiff perceives to be unaccountability of the vaccine manufacturers for vaccine injuries, are struck down as facially unconstitutional when subjected to the strict scrutiny standard of review.

265.    As part of its protections, the First Amendment generally prevents government from proscribing speech because of disapproval of the ideals expressed.  Accordingly, content-based regulations of speech are presumptively invalid. For a state or municipality to enforce a content-based regulation, it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The regulations have to be content neutral.

266.     States and municipalities may enforce content-neutral regulations of the time, place, and manner of expression as long as they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. They cannot regulate the actual content of the speech.

267.    In determining whether a regulation is unconstitutionally content based, the principal inquiry is whether the agency has adopted a speech regulation because it disagrees with the message conveyed.

268.    In the present action, as set forth above, the defendants make no secret of the fact that they are taking aim at Plaintiff's public interview during which he conveyed the message

that vaccines are unsafe and cause injuries and the manufacturers are not held accountable for vaccine injuries.

269.   In this case the defendants state officials have no compelling interest to stifle Plaintiff's expression of ideas and his exercise of his First Amendment right to express his opinions and ideas freely, simply because the Minnesota legislature itself mandates that the known risks of vaccine injuries and adverse reactions must be disclosed to parents before the administration of vaccines along with the parents'  statutorily given right to opt out of their children's vaccination requirements  altogether. Minn. Stat. § 121A.15, subd. 3a(b)(4) and Minn. Stat. § 121A.15, subd. 3a(b)(2).

270.   Moreover, the allegations based upon which the present bad faith prosecution is maintained Ex 6 do not  state any existing legal or factual basis for the contention that the Plaintiff violated either one of the statutes which the defendants falsely accuse him to have violated to wit: (i) Minn. Stat. § 147.091, subd. 1(g); (ii) Minn. Stat. § 147.091, subd. 1(k) and/or (iii) Minn. Stat. § 147.091, subd. 1(v).

271.   As summarized above, the only coherent statements made in the allegations part of the accusatory statement Exhibit 6 are those that the defendants are seeking to punish and harass the Plaintiff through the use of the state license disciplinary process for publicly stating that vaccine injuries exist, for informing his patient's parents in accordance with the mandated of Minn. Stat. § 121A.15, subd. 3a(b)(4) that vaccines pose risks of injury death and adverse reactions,  and for being critical of the vaccine industry, the lack of accountability for vaccine injuries and of the CDC studies which the defendants contend that state the vaccines are safe.

272.   For all of the above referenced reasons the plaintiff requests that this court issue a declaratory judgment pursuant to 28 USC §2201, et.seq. declaring defendants'

actions set forth above in this complaint as illegal, unconstitutional, null and void as a matter of law and acts in excess of their powers and subject matter jurisdiction.

WHEREFORE the Plaintiff demands judgment against the defendants as follows: (a) in the First Count a preliminary injunction pursuant to Fed. Rule Civ. Proc. 65 in the form and substance set forth in this complaint; (2) in the Second Count, a permanent injunction pursuant to 42 USC § 1983 in the form and substance set forth in this complaint; (3) in the Third Count, a declaratory judgment pursuant to 28 USC § 2201, et.seq.  in the form and substance set forth in this complaint.

Dated: September 25, 2020

Attorneys for the Plaintiff
/s/ Bradley John Haddy
Bradley John Haddy, Esq.
MN Bar No.  0387503
3209 W. 76th Street
Edina, MN 55435
Email: Email: bjhaddy@mnesq.com
Phone Number: (952) 513-7991


Jacques G. Simon Esq.,
/s/ Jacques G. Simon
By: Jacques G. Simon
Subject to admission pro hac vice
200 Garden City Plaza
Suite 301
Garden City, NY 11530
Phone: 516-378-8400
Email: jgs@jacquessimon.com

## **VERIFICATION**

STATE OFMINNESOTA              )
                               ) ss.
COUNTY OF HENNEPIN             )

     Robert Zajac, being duly sworn, deposes and says:

     1.     I am the plaintiff in these proceedings and as such I am fully familiar with all the facts and circumstances pertaining to this application.

     2.     I have read the above verified complaint and the attached exhibits  and know all the facts and allegations therein to be true to the best of my knowledge except for those stated upon information and belief and as to those I believe them to be true.

     3.     Further your affiant sayeth not.

                              _____
                              ROBERT ZAJAC M.D.

     Sworn to before me by Robert Zajac this ___ day of September 2020.

                              _____
                              Notary Public

                              My Commission Expires _____

[SEAL]