IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

---

Robert Zajac, MD,
*Plaintiff,*

v.

Maria K. Statton, Kathryn D.
Lombardo, Hugh P. Renier,
Cheryl L. Bailey, Christopher
Burkle, Pamela Gigi Pamela Gigi,
Shaunequa B. James, Jennifer Y.
Kendall Thomas, Patricia J.
Lindholm, John M. (Jake)
Manahan, Allen G. Rasmussen,
Kimberly W. Spaulding, Stuart T.
Williams, in their respective
official capacity as members of
the Minnesota Board of Medical
Practice.
*Defendants.*

No. 0:20-cv-02148

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
A PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV.
PROC. 65.**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................ i

TABLE OF AUTHORITIES ................................................. iv

MEMORANDUM ...................................................................... 1

    PRELIMINARY STATEMENT ......................................... 1

    FACTUAL AND PROCEDURAL BACKGROUND ......................... 1

        i.   Procedural background ................................... 1

        ii.   Factual Background – summary. ..................... 2

        iii.   Federal Law does not deem vaccines
            "unequivocally safe". ..................................... 7

        iv.   Minnesota state law does not deem vaccines
            "unequivocally safe". ..................................... 10

        v.   The substance of the accusatory allegations
            of Ex. 6 mandate a finding of bad faith
            prosecution. ................................................... 14

    ARGUMENT ...................................................................... 15

    POINT I BAD FAITH PROSECUTION AMOUNTS TO
    BOTH AN EXCEPTION TO THE *YOUNGER*
    ABSTENTION AND TO IRREPARABLE HARM ......................... 15

        i.   In general – bad faith prosecution is the
            exception to *Younger* abstention. ................ 15

        ii.   Bad faith prosecution defined. ...................... 16

        iii.   There is a constitutional due process right to
            be free from bad faith prosecutions. ............. 20

        iv.   Bad faith prosecution applies to state
            administrative professional license
            disciplinary proceedings. ............................... 21

        v.   The administrative license disciplinary
            process is inadequate to address and enjoin
            bad faith prosecutions. .................................. 22

        vi.   Additional considerations – no immunity. ................ 23

POINT III ADDITIONAL CONSIDERATIONS
MILITATING IN FAVOR OF INJUNCTIVE RELIEF
AGAINST BAD FAITH PROSECUTION. ...................................... 26

I.   In general – the accusatory allegations do not take
     aim at any disciplinary conduct but are aimed at
     stifling First Amendment protected free speech. .................. 26

   A.   Powers of the Board............................................................. 27

   B.   Practice of Medicine defined: ................................................ 28

II.  The defendants' attempt at regulating content
     specific speech is unconstitutional per se. ............................ 30

III. Defendants' attempt at regulation through
     adjudication amounts to bad faith prosecution. ................... 35

POINT III THE PLAINTIFF SATISFIED ALL OF THE
REQUIREMENTS FOR THE GRANT OF AN
INJUNCTOON UNDER FED. R. CIV. PROC 65. ......................... 36

I.   The element of irreparable harm has been satisfied. .......... 37

II.  The element of likelihood of success has been
     satisfied. ............................................................................ 37

        a.   The Plaintiff is likely to succeed on his
             merits regarding the claims for injunctive
             relief for bad faith prosecution. ............................... 38

        b.   The plaintiff is likely to succeed on the
             merits of the underlying action for relief
             under 42 USC Sec. 1983. ......................................... 39

        c.   The plaintiff is likely to succeed on the
             merits of his claim for a declaratory
             judgment pursuant to 28 USC Sec. 2201. ............... 44

     1.   Prospective declaratory judgment .................................. 44

     2.   Actual controversy. .......................................................... 45

III. The Balance of Equities militates in favor of the
     grant of a preliminary injunction. ......................................... 47

IV.  The public interest element has been satisfied. .................... 49

CONCLUSION ............................................................................... 50

ii

CERTIFICATE OF WORD LIMITATION PURSUANT TO
LR 7.1(F). ............................................................................. 51
CERTIFICATE OF SERVICE ............................................................ 52

# TABLE OF AUTHORITIES

Page

**Cases:**

*281 Care Comm. v. Arneson*
  638 F.3d 621 (8th Cir. 2011)   ................................................... 24, 25

*281 Care Comm. v. Arneson*
  766 F.3d 774 (8th Cir. 2014)   ........................................................ 41

*Abbott-Northwestern Hosp., Inc. v. Schweiker*
  698 F.2d 336 (8th Cir. 1983)   ........................................................ 31

*Aetna Life Ins. Co. v. Haworth*
  300 U.S. 227 (1937)   ............................................................... 46, 47

*Alsbrook v. City of Maumelle*
  184 F.3d 999 (8th Cir. 1999)   ........................................................ 40

*Baker Elec. Co-op., Inc. v. Chaske*
  28 F.3d 1466 (8th Cir. 1994)   ........................................................ 37

*Bicking v. City of Minneapolis*
  891 N.W.2d 304 (Minn. 2017)   ........................................................ 35

*Bishop v. State Bar of Texas*
  736 F.2d 292 (5th Cir. Tex. 1984)   ......................................... *passim*

*Burson v. Freeman*
  504 U.S. 191 (1992)   ................................................................... 34

*Calzone v. Hawley*
  866 F.3d 866 (8th Cir. 2017)   ........................................................ 24

*Cameron v. Johnson*
  390 U.S. 611 (1968)   ................................................................... 18

*Carson v. Simon*
  978 F.3d 1051 (8th Cir. 2020)   ...................................................... 49

*Cent. Ark. Auction Sale, Inc. v. Bergland*
  570 F.2d 724 (8th Cir. 1978)   ........................................................ 31

*Cent. Ave. News, Inc. v. City of Minot*
  651 F.2d 565 (8th Cir. 1981)   ........................................................ 18

*Church v. Missouri*
  913 F.3d 736 (8th Cir. 2019)   ........................................................ 24

iv

*City Council v. Taxpayers for Vincent*
   466 U.S. 789 (1984)  ................................................  32

*City of Timber Lake v. Cheyenne River*
   10 F.3d 554 (8th Cir. 1993)  ................................  38

*Daniels v. Williams, 474 U.S. 327, 330–331 (1986));Flagg*
   *Bros., Inc. v. Brooks*
   436 U.S. 149 (1978)  ................................  42

*Dataphase Sys., Inc. v. CL Sys., Inc.*
   640 F.2d 109 (8th Cir. 1981)  ......................  36, 48

*Davis v. Campbell, No. 3:13-cv-0693 LEK/ATB, 2014 U.S.*
   *Dist. LEXIS 7540*
   2014 WL 234722 (N.D.N.Y. Jan. 22, 2014)  ..................  45

*Digital Recognition Network, Inc. v. Hutchinson*
   803 F.3d 952 (8th Cir. 2015)  ........................  24

*Doe v. LaDue*
   514 F.Supp.2d 1131 (D. Minn. 2007)  ..................  49

*Dombrowski v. Pfister*
   380 U.S. 479 (1965)  ............................  18, 25, 26

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*
   489 U.S. 214 (1989)  ................................  34

*EverBank, FSB*
   No. 13–2647 (DSD/JSM) 2014 U.S. Dist. LEXIS 96651  ..............  45

*Ex Parte Young. Richards v. Dayton, No. 13–3029 (JRT/*
   *JSM)*
   2015 U.S. Dist. LEXIS 40478 (D. Minn. Jan. 30, 2015)  ..............  39

*Ex Parte Young*
   209 U.S. 123 (1908)  ............................  24, 40

*Fairchild v. Hughes*
   258 U.S. 126 (1922)  ................................  46

*Fid. Nat. Bank v. Swope*
   274 U.S. 123 (1927)  ................................  47

*Fitzgerald v. Peek*
   636 F.2d 943 (5th Cir. 1981)  ....................  17, 37, 43

*Fmali Herb, Inc. v. Heckler*
   715 F.2d 1385 (9th Cir. 1983)  ....................  30, 35

*Gibson, v. Berryhill*
  411 U.S. 564 (1973) ........................................................ 21

*Gillette v. N.D. Disciplinary Bd. Counsel*
  610 F.3d 1045 (8th Cir. 2010) ........................................ 21

*Great N. Ry. Co. v. Pub. Serv. Comm'n, 284 Minn. 217, 220*
  169 N.W.2d 732 (1969) ................................................ 26

*Hand v. Gary*
  838 F.2d 1420 (5th Cir. 1988) ............................... *passim*

*Harris v. Hammon*
  914 F.Supp.2d 1026 (D. Minn. 2012) ............................ 41

*Heather K. v. City of Mallard*
  887 F.Supp. 1249 (N.D. Iowa 1995) ............................ 38

*Heimbach v. Vill. of Lyons*
  597 F.2d 344 (2d Cir. 1979) ........................................ 18

*Huffman v. Pursue, Ltd.*
  420 U.S. 592 (1975) .................................................... 17

*IBM v. Seagate Tech., Civ. No. 3–91–630, West Publ'g Co. v. Mead Data Cent., Inc.*
  799 F.2d 1219 (8th Cir. 1986) ............................... 36, 50

*ILQ Invs., Inc. v. City of Rochester*
  25 F.3d 1413 (8th Cir. 1994) ...................................... 37

*In re Bird*
  353 F.3d 636 (8th Cir. 2003) ...................................... 21

*In re Hubbard*
  778 N.W.2d 313 (Minn. 2010) ................................ 26, 27

*In re Qwest's Wholesale Serv. Quality Standards*
  702 N.W.2d 246 (Minn. 2005) .................................... 27

*Johns v. Stewart*
  57 F.3d 1544 (10th Cir. 1995) .................................... 45

*Justice Network Inc. v. Craighead Cty.*
  931 F.3d 753 (8th Cir. 2019) ...................................... 44

*Kloch v. Kohl*
  545 F.3d 603 (8th Cir. 2008) ...................................... 22

*Kugler v. Helfant*
  421 U.S. 117 (1975) .............................................. 16, 49

*Lawrence v. Kuenhold*
   271 F.App'x 763 (10th Cir. 2008)   ...................................   44

*Lewellen v. Raff*
   843 F.2d 1103 (8th Cir. 1988)   .....................................   16, 17, 18, 49

*Long v. Van de Kamp*
   961 F.2d 151 (9th Cir. 1992)   .......................................   41

*Marler v. Missouri State Bd. of Optometry*
   102 F.3d 1453 (8th Cir. 1996)   ......................................   22

*Massachusetts v. Mellon*
   262 U.S. 447 (1923)   ...................................................   46

*Matter of Keokuk Steel Castings*
   638 F.2d 42 (8th Cir. 1981)   ........................................   31

*Middlesex Ethics Comm. v. Garden State Bar Assn*
   457 U.S. 423 (1982)   ...................................................   16

*Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*
   871 F.2d 734 (8th Cir. 1989)   .......................................   36

*Monroe v. Pape*
   365 U.S. 167 (1961)   ...................................................   43

*Muskrat v. United States*
   219 U.S. 346 (1911)   ...................................................   46

*Musslewhite v. The State Bar*
   32 F.3d 942 (5th Cir. Tex. 1994)   ..................................   17

*Nat'l Audubon Soc'y, Inc. v. Stenehjem, No. 3:09-cv-112*
   2010 U.S. Dist. LEXIS 52279 (D.N.D. May 26, 2010)   .................   21

*New Jersey v. Sargent*
   269 U.S. 328 (1926)   ...................................................   46

*Nobby Lobby, Inc. v. City of Dallas*
   970 F.2d 82 (5th Cir. 1992)   .........................................   19

*Norwood v. Dickey*
   409 F.3d 901 (8th Cir. 2005)   .......................................   21

*O'Connor v. Peru State Coll.*
   728 F.2d 1001 (8th Cir. 1984)   ......................................   48

*O.N. Equity Sales Co. v. Prins*
   519 F.Supp.2d 1006 (D. Minn. 2007)   ............................   37

*Ohio Civil Rights Comm'n v.*
   477 U.S. 619 (1986)   ...................................................   21

*Osborn v. United States Bank*
9 Wheat 738 ........................................................ 46

*Papasan v. Allain*
478 U.S. 265 (1986) ....................................... 41

*Parratt v. Taylor*
451 U.S. 527 (1981) ....................................... 42

*Perry Ed. Assn. v. Perry Local Educators' Assn.*
460 U.S. 37 (1983) ......................................... 33

*Phelps-Roper v. Nixon*
545 F.3d 685 (8th Cir. 2008) ......................... 49

*Plouffe v. Ligon*
606 F.3d 890 (8th Cir. 2010) ......................... 16

*Police Dept. of Chicago v. Mosley*
408 U.S. 92 (1972) ............................... 32, 33, 35

*R.A.V. v. St. Paul*
505 U.S. 377 (1992) ....................................... 33

*R.S. v. State*
459 N.W.2d 680 (Minn. 1990) ....................... 27

*Randolph v. Rodgers*
253 F.3d 342 (8th Cir. 2001) ......................... 41

*Republican Party v. White*
416 F.3d 738 (8th Cir. 2005) ..................... 33, 34

*Rosenberger v. Rector & Visitors of the Univ. of Va.*
515 U.S. 819 (1995) ....................................... 32

*Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*
997 F.2d 484 (8th Cir. 1993) ......................... 38

*Serna v. Goodno*
567 F.3d 944 (8th Cir. 2009) ......................... 40

*Shaw v. Garrison*
467 F.2d 113 (5th Cir. 1972) ................... *passim*

*Sherbrooke Turf, Inc. v. Minn. Dept. of Transp.*
345 F.3d 964 (8th Cir. 2003) ......................... 40

*Smith v. Hightower*
693 F.2d 359 (5th Cir. 1982) ......................... 17

*South Spring Hill Gold Mining Co. v. Amador Medean Gold*
  *Mining Co.*
    145 U.S. 300 (1892)   ........................................................   46

*Swenson v. Emerson Elec. Co.*
    374 N.W.2d 690 (Minn. 1985)   ...............................   30, 35

*Telescope Media Grp. v. Lucero*
    936 F.3d 740 (8th Cir. 2019)   ..........................................   30

*Texas v. Interstate Com. Comm*
    258 U.S. 158 (1922)   ........................................................   46

*Trainor v. Hernandez*
    431 U.S. 434 (1977)   ........................................................   17

*Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*
    512 U.S. 622 (1994)   ........................................................   33

*Tutun v. United States*
    270 U.S. 568 (1926)   ........................................................   47

*United States v. Classic*
    313 U.S. 299 (1941)   ........................................................   43

*Va. Office for Prot. & Advocacy v. Stewart*
    563 U.S. 247 (2011)   ........................................................   24

*Verizon Md. Inc. v. PSC*
    535 U.S. 635 (2002)   ........................................................   24

*Weavewood, Inc. v. S & P Home Invs., LLC*
    821 N.W.2d 576 (Minn. 2012)
    [579]   ...............................................................................   45

*West v. Atkins*
    487 U.S. 42 (1988)   .....................................................   42, 43

*Wilson v. Thompson*
    593 F.2d 1375 (5th Cir. 1979)   ...............................   *passim*

*Younger v. Harris*
    401 U.S. 37 (1971)   .....................................................   16, 18, 25

**Statutes:**

28 U.S.C. § 2201   ....................................................................   39

42 U.S.C. § 300aa   ..........................................................   *passim*

42 U.S.C. § 1983   ..................................................   39, 42, 43, 44

Minn. Stat. § 121A.14   .........................................................   11

Minn. Stat. § 121A.15 .................................................................. *passim*

Minn. Stat. § 147.001 ...................................................................... 27

Minn. Stat. § 147.081 ................................................................... 3, 15

Minn. Stat. § 147.091 ................................................................ *passim*

Minn. Stat. § 148.081 ......................................................... 28, 29, 30

**Constitutions:**

U.S. Const., 1st Amend. ........................................................... *passim*

U.S. Const., 11th Amend. ........................................................ 40, 41

U.S. Const., 14th Amend. ........................................................ 42, 43

**Court Rules:**

Fed. R. Civ. P., rule 4 .................................................................... 1

Fed. R. Civ. P., rule 12 ............................................................ 19, 37

Fed. R. Civ. P., rule 65 ......................................................... 1, 2, 36

**Other:**

42 CFR § 100.3 ........................................................................ *passim*

**Memorandum**

---

## PRELIMINARY STATEMENT

This memorandum of law is submitted in support of Plaintiff's motion for a preliminary injunction made pursuant to Fer. R. Civ. Proc. 65. In support of the motion the Plaintiff submits the Verified Complaint and the exhibits annexed thereto as well as the accompanying motion for the relief sought.

## FACTUAL AND PROCEDURAL BACKGROUND

### i.  Procedural background

On October 12, 2020 the Plaintiff filed a verified complaint with exhibits (Docket No. 1and attachment #1). The complaint stated a cause of action for a preliminary injunction. See Verified Complaint Docket #1 at ¶¶ 216–238. The signed Verification was filed separately. Docket #7. On 11/19/2020 the Plaintiff filed an acknowledgement of service indicating that the defendants were served with process and the Minnesota Attorney General accepted service on behalf of the defendants.

Because jurisdiction over the defendant was not acquired by this court until service as complete in accordance with Fed. R. Civ. Proc. 4, this motion for a preliminary injunction was delayed until service was completed. In the meantime, on December 4, 2020, the defendants filed

1

a motion to dismiss and accompanying memorandum, Notice of Hearing and Certificate of Conference and Proposed order. Docked Nos. 12–16.

This motion for a preliminary injunction pursuant to Fed. R. Civ Proc. 65 now follows.

## ii.  __Factual Background – summary__.

All, of the facts pertaining to this motion are set forth with painstaking detail at ¶¶10 through 215 of the Verified Complaint and are incorporated by reference herein. For the sake of brevity, the Court is respectfully directed thereto for a true and full accounting thereof.

Succinctly stated, after receiving complaints from what appears to be pro vaccine individuals complaining that the Plaintiff part took in a you tube interview during which he openly spoke about vaccine risks and injuries and about his own preferences and opinions regarding the same, the defendants used their official capacities and the color of Minnesota Law to start a formal investigation into Plaintiff's practice of medicine.

Astoundingly, the initial complaints which prompted the starting of defendants' investigation did not involve patient advice nor any patient care. The complaints did not involve any disciplinary concerns regarding the "standard of care" in the practice of medicine as defined by the Minnesota Disciplinary statute, Min. Stat. §§147.091. Rather the complaints which were purportedly being investigated by the

defendants involved unregulated issues of pure opinions and pure speech. See Verified Complaint at ¶¶10–24 and Ex. 1–4 annexed thereto.

Nonetheless the defendants issued a Notice of Conference on or about July 20, 2019 – Ex. 5 requiring the Plaintiff to appear before a Complaint Review Committee to answer allegations in the Notice.

On their face the allegations of the Notice of Conference did not state either a violation of the Minnesota disciplinary statute Min. Stat. §§147.091 or any other allegations or facts that fell within defendants' or the Board's subject matter jurisdiction. Verified Complaint at ¶¶25 through 98.

In fact, the recitations of the Notice of Conference in its totality stated nothing than an attempt at regulating Plaintiff's pure free speech on *you tube* interview as well as the discharge of Plaintiff's mandatory duties under the Minnesota Vaccine Standard Statute codified in Minn. Stat. §121A-15 subdivision 3a(b)(4) to discuss and disclose vaccine risks to his patient's guardians and parents as well as to discuss the parent's exercise of their option under Minnesota Law to opt out of the vaccine schedule altogether Minn. Stat. § 121A–15 subdivisions 3a(b)(2). Verified Complaint at ¶¶25 through 98.

In fact, the statements made in the Notice of Conference did not amount to the practice of medicine at all as defined by Minn. Stat. Ann. 147.081 subdivision 3 Verified Complaint at ¶¶30, 36–37, 44–49; 52–61; 63–76; 80–90.

3

The conference itself as well as the preceding purported investigation were nothing more than a set-up and a staging precursor to the staged bad faith prosecution which is the subject matter of this action. Verified Complaint at ¶¶92 – 98.

Subsequent to the August 12, 2019 investigative conference, on or about June 10, 2020 the defendants served and filed with the Office of Administrative Hearings a Notice and Order of Prehearing Conference. Ex 6 to the Verified Complaint Docket Entry #1 Attachment 1. The OAH issued a First Prehearing order Ex 7. The Plaintiff propounded discovery upon the defendants. Verified Complaint at ¶99. The hearing of the underlying administrative proceeding is scheduled to take place on May 11, 2020 – exhibit 7 to Verified Complaint.

Even a cursory review of the "Allegations" proposed to be the subject matter to the prosecution – EX 6 - lead to the inescapable conclusion that the proposed prosecution was commenced and is maintained for no other reason than to silence the plaintiff from publicly talking about the risks and injuries of vaccines in general and from exercising his First Amendment right to freely express his personal opinions regarding the vaccine industry, vaccine risks and his understanding of the vaccine laws applicable to the same. In addition, the net intended effect of the present prosecution is to harass and intimidate and dissuading the Plaintiff from discharging his mandatory disclosure duties under Minn. Stat. § 121A.15subdivision 3a(b)(2) and Minn. Stat. 121A.15 subdivision 3a(b)(4) by disclosing the adverse reactions of vaccines and by further disclosing the statutory

options which the parents of unvaccinated children have to opt out of the vaccination programs as provided in Minn. Stat. 121A.15 subdivision 3(d). Verified Complaint at ¶¶100, 135–210.

Rather than alleging that violations of the Minnesota disciplinary statute Minn. Stat. Sec. 147.091 exist, the allegations of the accusatory instrument Ex. 6 focus on statements made by the Plaintiff during public interviews and public speeches while defendants spin off such statements and morph them into advice allegedly given to Plaintiff's patients despite admissions by the defendants that it is not the case. Verified Complaint at ¶¶102, 148–215.

In the allegations part of Ex. 6p. 3 paragraphs 2(a) through 2(k) and in particular paragraph 2(d) the defendants contend that unless the Plaintiff states to the public in internet interviews and publications and to his patients' parents **that vaccines are unequivocally safe**, they are availing themselves of the Minnesota disciplinary process to act against his license and to force him to adapt to defendants' subjective and unsubstantiated views. Verified Complaint at ¶103, 148–215,

Defendants' position is knowingly contrary to Minnesota Law. Minn. Stat. § 121A.15 subd. 3a(b)(4) which mandates that the Plaintiff disclosure the known deleterious effects of vaccine injuries and risks associated with the same to the parents of his pediatric patients. Minn. Stat 121A.15 subd. 3a(b)(2) mandates that the Plaintiff makes the parents aware of their option to opt out of mandatory vaccination under the provisions of Minn. Stat 121A.15 subd. 3(d).

5

In short, the defendants want to force the Plaintiff to violate the Minnesota Vaccine disclosure laws by maintaining the harassment license prosecution. Verified Complaint at ¶103, 135–147.

The defendants also maintain their bad faith harassment prosecution by contending in general that Plaintiff's statements made during an internet interview with the producers of the Vaxxed movie and posted on the internet in which he is expressing his personal opinions regarding vaccine safety, vaccine laws and in general the health risks presented by vaccines to children are subject to their disciplinary jurisdiction under Minn. Stat. Sec 147.091 subdivision 1(g); Minn. Stat. Sec 147.091 subdivision 1(k) and Minn. Stat. Sec 147.091 subdivision 1(v). Ex. 6 to Verified Complaint.

Defendants also propose to muzzle the Plaintiff from talking about the manufacturer's legal limiting of liability for vaccine injuries Ex. 6 at ¶¶2(j) and 2(k), by placing their own spin on the existing law and by flagrantly disregarding the provisions of 42 USC Sec. 300aa-22 which unequivocally does limit manufacturers' liability for vaccine injuries even in state tort actions.

All of the foregoing issues and the allegations of the accusatory instrument Ex. 6 are discussed in detail in the Verified Complaint.

Neither federal law nor Minnesota law regard vaccines as unequivocally safe. To the contrary, Congress and the secretary of US Health and Human Services dedicated a whole body of statutes and regulations dedicated to vaccine injuries.

The National Childhood Vaccine Injury Act (NCVIA) which is codified in 42 U.S.C. § 300aa–1 through 42 USC 300aa-34 recognizes that vaccines cause injuries, provides specific vaccine tables identifying the specific vaccines and injuries which the cause (42 USC Sec. 300aa-14) and charges the Secretary of the DHSS with the task of updating the vaccine table periodically with more information related to vaccines and the injuries which they cause (42 USC Sec. 300aa-14(c)).

The regulations of the Secretary of the DHSS codified in 42 CFR Part 100 and in particular 42 CFR Sec. 100.3 provide specific updated vaccine tables with respective specific known injuries, symptomatology and timing of the symptoms which table is used to determine eligibility for recovery of damages for injuries caused by vaccines under the Vaccine Injury Compensation Program (VICP).

### iii.   Federal Law does not deem vaccines "unequivocally safe".

Defendants' license disciplinary prosecution based upon the contention that the Plaintiff's failure to affirmatively represent to the guardians of his minor patients that vaccines are "unequivocally safe" and further based upon Plaintiff's open discussion of vaccine injuries and upon his mandatory disclosure of the risks presented by vaccinations amounts to bad faith harassment because such position is contrary to federal law. Verified Complaint at ¶¶115–134.

As it can be seen from paragraphs 115 through 134 of the Verified Complaint, the US Congress recognized that vaccines cause injuries on a large scale and has moved to establish a no fault system for the compensation of children who have been injured by vaccines. The National Childhood Vaccine Injury Act (NCVIA) is codified in 42 USC Secs. 300aa-1 through 300aa-34.

The Vaccine Injury Compensation Program established in 42 USC Sec. 300aa-10 is administered by the Secretary of the Department of Health and Human Services under which compensation may be paid for a vaccine-related injury or death. To obtain compensation for vaccine injuries, under the VICP a claimant must file a petition in the form and content mandated by 42 USC Sec. 300aa-11 in the US Court of federal Claims which shall have jurisdiction over such claims - 42 USC Sec. 300aa-12.

Congress went so far as to detail the specific vaccines, vaccine injuries and the time period in which the first symptom or manifestation of onset or of the significant aggravation of such injuries, disabilities, illnesses, conditions, and deaths is to occur after vaccine administration for purposes of receiving compensation under the Program. See 42 USC Sec. 300aa-14 (Ex. 8).

Congress tasked the Secretary of the DHHS to provide updated vaccine tables reflecting information pertaining to specific vaccines and injuries which it causes. See 42 USC Sec. 300aa-14(c). The Secretary's vaccine injuries updated table and regulation including vaccine injuries up to date is maintained and kept under 42 CFR Sec. 100.3.

8

The most recent version of that regulation and of the vaccine table is annexed to the Verified Complaint as Ex 8 to the Verified Complaint.

As it can be seen from Ex. 8, the vaccine injuries known to the Secretary have expanded rather than contracted since the initial tables contained in 42 USC 300aa-14 (Ex. 7). Moreover, in 42 USC 300aa-27 Congress tasked the secretary of the DHHS with the mandate to promote the development of childhood vaccines that result in fewer and less serious adverse reactions than those vaccines on the market and promote the refinement of such vaccines.

Notwithstanding the election created by 42 USC Sec. 300aa-21(1) to either accept the award made by the US Court of Claims under the VICP to bring a state court claims action in tort, Congress also enacted 42 USC Sec. 300aa-22, titled "standards of responsibility" in which Congress immunized and limited the liability of vaccine manufactures sued in state court tort actions as follows: (i) 42 USC Sec. 300aa-22(b)(1) – if the side effects are unavoidable, where the vaccine was properly prepared and was accompanied by proper directions and warnings in accordance with 42 USC Sec. 300aa-22(b)(2) and (ii) under 42 USC Sec. 300aa-22(c) – where "No vaccine manufacturer shall be liable in a civil action for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this part [effective Oct. 1, 1988] solely due to the manufacturer's failure to

provide direct warnings to the injured party (or the injured party's legal representative) of the potential dangers resulting from the administration of the vaccine manufactured by the manufacturer."

All government agencies in charge of commenting on the effect of the VICP procedures as well as the provisions of 42 USC Sec. 300aa-22 specifically state that the net intended effect of the existing federal vaccine compensation laws is to limit civil liability to vaccine manufacturers and ensure that an adequate supply of vaccines is manufactured without fears of civil liability. See verified Complaint at paragraphs 127–132.

In short, as a matter of law neither Congress nor the US DHSS deem vaccines "unequivocally safe". Rather they both codify, regulate and specifically list the names of the vaccines, the specific respective vaccine injuries which they cause, and the timing and symptoms related to the same. Congress and the DHHS codify specific injuries which are compensable under the VICP.

No federal or Minnesota state regulation or statutes make the CDC vaccination schedules mandatory.

### iv.   Minnesota state law does not deem <u>vaccines "unequivocally safe"</u>.

Minn. Stat. Sec. 121A.15 which sets forth any immunization standards in Minnesota does not state that vaccines are unequivocally safe. Moreover, Minn. Stat. Sec. 121A.15 does not state that the CDC recommended vaccine schedules have to be followed by Minnesota

10

physicians with respect to all or any pediatric patient. To the contrary, while Minn. Stat. Sec. 121A.15 does provide the type of vaccines that one must present before a child is matriculate in Minnesota schools, it does not provide that the CDC vaccination schedules have to be followed insofar as the grouping and the timing of each vaccination is concerned. Minn. Stat. Sec. 121A.15 Subdivisions 1 and 2. What the statute does provide is that school attending children must present an immunization card before they are allowed to attend school or provide exemptions under Minn. Stat. Sec. 121A.15 Subdivisions 3 before they are allowed to enter any school.

Minn. Stat. Sec. 121A.14 subd. 3 specifically provides in relevant part for exemptions form the immunization schedule as follows:

> (c) If a statement, signed by a physician, is submitted to the administrator or other person having general control and supervision of the school or childcare facility stating that an immunization is contraindicated for medical reasons or that laboratory confirmation of the presence of adequate immunity exists, the immunization specified in the statement need not be required.

> (d) If a notarized statement signed by the minor child's parent or guardian or by the emancipated person is submitted to the administrator or other person having general control and supervision of the school or child care facility stating that the person has not been immunized as prescribed in subdivision 1 because of the conscientiously held beliefs of the parent or guardian of the minor child or of the emancipated person, the immunizations specified in the statement shall not be required. This statement must also be forwarded to the commissioner of the Department of Health.

11

The accusatory allegations Ex. 6 do not allege that Dr. Zajac acted under Minn. Stat. Sec. 121A.15 sub. 3(c) by providing contraindication statements.

What the accusatory allegations as a whole take aim at is Dr. Zajac's discharge of his mandatory disclosure duties under Minn. Stat. Sec. 121A.15 sub. 3b(2) and subd. Minn. Stat. Sec. 121A.15 sub. 3b(4).

The most telling part of the statute that indicates that the Minnesota legislature does not believe that vaccines are unequivocally safe is the enactment of the disclosure part of the statute in Subdivision 3a(b) which state as follows:

> (b) Before immunizing a person, an immunization provider must provide the person, or the person's parent or guardian if the person is under 18 years of age and not emancipated, with the following information in writing:
>
> (1) a list of the immunizations required for enrollment in a school or child care facility;
>
> (2) a description of the exemptions from immunizations permitted under subdivision 3, paragraphs (c) and (d);
>
> (3) a list of additional immunizations currently recommended by the commissioner; and
>
> (4) in accordance with federal law, a copy of the vaccine information sheet from the federal Department of Health and Human Services that lists possible adverse reactions to the immunization to be provided.

Further telling of the legislature's understanding of the health risk provided by vaccines the Minnesota legislature tasked of the commissioner of the department of Health to supervise and control vaccine risks and to further disclose to the public the risks of the same. Minn. Stat. Sec. 121A.15 subd.3a(c) through subd. 3(a)(f).

In consulting the statutory materials mandated under the disclosure portion of Minn. Stat. Sec. 121A.15 Subdivision 3a(c), namely the vaccine information statements updated by the CDC – the (the CDC is a sub agency of the US DHSS mentioned in the foregoing statute), one can see that the baseline statutory recommended vaccines are far from "unequivocally safe" and present serious health and injury risks as published by the CDC itself in its own releases. See Ex.9.

The following is a list of the serious vaccine injuries disclosed by the CDC to be associated with vaccines as extrapolated from Ex 9 is set forth in paragraph 142 of the Verified Complaint.

There are no regulations of the Board of Medical Practice and no Minnesota statutes which state that vaccines are unequivocally safe or which impose a duty upon any physician to state to the public and to patients that vaccines are unequivocally safe and which mandate that a physician violate the mandatory disclosure requirements of Minn. Stat Sec. 121A.15 subdivisions 3a(b)(4).

Far from deeming the vaccines unequivocally safe, and far from mandating that a physician make such affirmative representations,

13

the Minnesota legislature enacted Minn. Stat. Sec. 121A.15 which gives parents the choice to opt out of the vaccine requirements of the statute (Minn. Stat. Sec. 121A.15 subdivision 3(d)).

In short, should a physician do anything less than what Minn. Stat. Sec. 121A.15 subdivision 3a(b) requires them to do and should they fail to disclose the health risks and injury risks posed by vaccines and the statutory unequivocal disclosure provisions, a physician such as the plaintiff would be in violation of the mandates of the disclosure requirements of Minn. Stat. Sec. 121A.15 subdivision 3a(b). Verified Complaint at paragraph 146.

In turn, such violation is an unequivocal violation of the Minnesota disciplinary statute Minn. Stat Sec. 147.091(f). That is what the defendants are seeking to achieve with the present bad faith prosecution.

### v. The substance of the accusatory allegations of Ex. 6 mandate a finding <u>of bad faith prosecution.</u>

For the sake of brevity the Plaintiff incorporates by reference herein all of the allegations in paragraphs 148 through 210 of the Verified Complaint and the Court is respectfully directed thereto for a full and true accounting of the same.

In short, the accusatory allegations militate in favor of a finding of bad faith prosecution because either: (i) on their face they do not state any violation of the disciplinary statute Minn. Stat. § 147.091; (b) on

their face the allegations do not state an acts or omissions amounting to the practice of law as defined by Minn. Stat. Ann. Sec. 147.081 subd. 3; (c) on their face the allegations grossly and knowingly make misrepresentations of fact and law; (d) on their face the allegations contend that the Plaintiff must violate the mandatory provisions of Minnesota Law of Minn. Stat. Sec. 121A.15 subdivision 3b; (e) on their face the allegations contradict the federal statutory limitations of liability on vaccine manufacturers Verified Complaint at; (f) on their face the allegations are nothing more than an unconstitutional attempt at content specific free speech and an unconstitutional attempt at the re writing of Minnesota Statutes without any authority or basis for the same and (g) on their face the allegations constitute an attempt at an illegal regulation by adjudication which contradicts the provisions of the Minnesota Vaccine Standard statute Minn. Stat. Sec. 121A.15. Verified Complaint at ¶¶150–210.

## **ARGUMENT**

### **POINT I**
### **BAD FAITH PROSECUTION AMOUNTS TO BOTH AN EXCEPTION TO THE *YOUNGER* ABSTENTION AND TO IRREPARABLE HARM**

#### **i.  In general – bad faith prosecution is the exception to *Younger* abstention.**

In general federal courts abstain from intervening in ongoing state administrative prosecutions under the *Younger* abstention doctrine.

The *Younger* abstention doctrine, as it has evolved, provides that
federal courts should abstain from exercising jurisdiction when (1)
there is an ongoing state proceeding, (2) which implicates important
state interests, and (3) there is an adequate opportunity to raise any
relevant federal questions in the state proceeding. *Plouffe v. Ligon*, 606
F.3d 890, 892–93 (8th Cir. 2010) *Middlesex Ethics Comm. v. Garden
State Bar Assn*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116
(1982) (applying *Younger* abstention to abstain from interfering in
attorney disciplinary proceedings).

Even if these three requirements are met, a federal court should not
abstain if there is a showing of "bad faith, harassment, or some other
extraordinary circumstance that would make abstention
inappropriate." *Plouffe v. Ligon*, 606 F.3d at 892–93, supra, citing
*Middlesex Ethics Comm. v. Garden State Bar Assn*, 457 U.S. 423, 435
(1982). Bad faith prosecution is the exception to the abstention
doctrine of *Younger v. Harris*, 401 U.S. 67 (1969).

## ii.   <u>**Bad faith prosecution defined.**</u>

In the context of determining whether the petitioner is facing a
"bad faith" state prosecution, "bad faith 'generally means that a
prosecution has been brought without a reasonable expectation of
obtaining a valid conviction.'" *Lewellen v. Raff*, 843 F.2d 1103, 1109
(8th Cir. 1988) (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6, 95 S.
Ct. 1524, 44 L. Ed. 2d 15 (1975)).

16

"Bad faith and harassing prosecutions also encompass those prosecutions that are initiated to retaliate for or discourage the exercise of constitutional rights." *Id.* If a showing is made that the prosecution was brought to retaliate for or to discourage the exercise of a constitutional right, an injunction will be warranted regardless of whether the state could obtain a valid conviction. *Lewellen v. Raff*, 843 F.2d at 1109.

A showing that a prosecution was brought in retaliation for or to discourage the exercise of constitutional rights "will justify an injunction *regardless* of whether valid convictions conceivably could be obtained." *Lewellen v. Raff*, 843 F.2d at 1109–10. Citing *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (emphasis added).

The state does not have any legitimate interest in pursuing such a prosecution; "perhaps the most important comity rationale of *Younger* deference -- that of respect for the State's legitimate pursuit of its substantive interests -- is therefore inapplicable." *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979)

In *Musslewhite v. The State Bar*, 32 F.3d 942, 947 (5th Cir. Tex. 1994) citing *Trainor v. Hernandez*, 431 U.S. 434, 446 (1977) and *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), the Fifth Circuit Court of appeals held that it recognizes two types of bad faith prosecutions: (1) a prosecution brought to deter the exercise of constitutionally protected rights citing *Smith v. Hightower*, 693 F.2d 359 (5th Cir. 1982) and (2) a prosecution brought to harass the Appellant citing *Shaw v. Garrison*, 467 F.2d 113, 119–21 (5th Cir. 1972).

The Eight Circuit Court of Appeals recognizes the same type of bad faith prosecutions. *Lewellen v. Raff*, 843 F.2d at 1109.

The injury threatened is both great and immediate, when "defense of the State's prosecution will not assure adequate vindication of constitutional rights." *Raff*, 843 F.2d 1103, 1109, supra citing *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965) or when the prosecution is initiated in bad faith or to harass the defendant. *Id. citing Cameron v. Johnson*, 390 U.S. 611, 617–18, 20 L. Ed. 2d 182, 88 S. Ct. 1335 (1968); *Cent. Ave. News, Inc. v. City of Minot*, 651 F.2d 565, 568–70 (8th Cir. 1981).

Bad faith and harassing prosecutions also encompass those prosecutions that are initiated to retaliate for or discourage the exercise of constitutional rights. *See, e.g., Younger v. Harris*, 401 U.S. at 48.; *Heimbach v. Vill. of Lyons*, 597 F.2d 344, 347 (2d Cir. 1979) (per curiam).

In this case the bad faith prosecution meets both definitions. In the first instance, the license disciplinary prosecution is based upon defendants' attempt at stifling Plaintiff's expression of free speech of his personal opinions regarding vaccinations and expressed to both his patients and on an interview on the internet (Verified Complaint at ¶¶10–210).

In the second instance the prosecution is brought without a real expectation that it will succeed. Specifically, the prosecution is maintained in bad faith with knowledge that it contravenes: (i) the mandatory disclosure provisions of Minn. Stat. § 121A.15 subd.

18

3a(b)(2) an 3a(b)(4); (ii) the express provisions of the National Childhood Vaccine Injury Act codified in 42 USC Secs. 300aa-1 through 300aa-34 which recognize that vaccines cause injuries; (iii) the specific disclosed vaccine injuries known to the US DHHS (Ex 8 and 9) and the specific vaccine injury tables published by the Secretary of the US DHHS as mandated by 42 USC Sec. 300aa-14(c) and 42 CFR 100.3; (iv) and the specific limitation of liability for vaccine manufacturers imposed by 42 USC Secs. 300aa-22(b) and 300aa-22(c). Verified Complaint at ¶¶10–210. If the state official prosecutes with knowledge that there is no lawful basis for the prosecution, then the prosecution is in bad faith. See *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 88 (5th Cir. 1992).

A showing of bad faith or harassment is equivalent to a showing of irreparable injury under *Younger*, and irreparable injury independent of the bad faith prosecution need not be established. *Peek,* 636 F.2d 943, 944, supra citing *Wilson v. Thompson*, 593 F.2d at 1381–82; *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1972). Allegations that a prosecution is brought in bad faith for improper motives accompanied substantiating facts relating to the same is sufficient to withstand a motion to dismiss under Fed. R. Civ. Proc. 12(b). *Bishop v. State Bar of Texas*, 736 F.2d 292, 294 (5th Cir. Tex. 1984).

When, the allegation upon which an injunction suit is based is that the state proceeding *itself* creates a chilling effect on speech because the state's legal machinery is being used in bad faith, it is precisely

this assumption that is challenged, and to rely upon comity is to beg the question. The justification for comity disappears if the allegation is proved true. *Wilson v. Thompson*, 593 F.2d at 1383.

In the present case it is alleged in the Verified Complaint that the prosecution was brought for the purposes of silencing Plaintiff's outspoken personal opinions regarding vaccine injuries and vaccines protected by the First Amendment of the US Constitution. Therefore the Court cannot abstain from issuing an injunction against the present prosecution. *Wilson v. Thompson*, 593 F.2d at 1383, supra.

In addition, the Plaintiff has also shown that the bad faith prosecution is brought by the defendants with knowledge that the accusatory allegations are in derogation of both state and federal law. This sustains a knowledge by the prosecutor that the prosecution is unlikely to succeed. Verified Complaint at paragraphs 15–210.

### iii.  There is a constitutional due process right <u>to be free from bad faith prosecutions.</u>

Federal law related to bad faith prosecution is unequivocal and states that there is a constitutional right to be free of "bad faith prosecution." *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1972), *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir. 1988).

A showing of bad faith or harassment is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in

*Younger*, because there is a federal right to be free from bad faith prosecutions. Irreparable injury need not be independently established. *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir. 1972)

### iv. Bad faith prosecution applies to state administrative professional license <u>disciplinary proceedings.</u>

While initially the bad faith exception addressed criminal prosecutions, the *Younger* abstention principles apply to both criminal and administrative prosecutions. *Ohio Civil Rights Comm'n v.*, 477 U.S. 619, 627 (1986) citing *Gibson, v. Berryhill*, 411 U.S. 564, 576–577 (1973); *Bishop v. State Bar of Texas*, 736 F.2d at 294.

In the Eighth Circuit, license disciplinary proceedings are quasi criminal in nature. "disciplinary proceedings are neither civil nor criminal but are quasi-judicial proceedings." *Gillette v. N.D. Disciplinary Bd. Counsel*, 610 F.3d 1045, 1047 (8th Cir. 2010). *In re Bird*, 353 F.3d 636, 639 (8th Cir. 2003). Paradigms of bad faith prosecution apply to quasi criminal proceedings in the eighth circuit. The Eighth Circuit has extended *Younger* and its exceptions outside the context of criminal prosecutions or quasi-criminal proceedings. *Nat'l Audubon Soc'y, Inc. v. Stenehjem, No. 3:09-cv-112*, 2010 U.S. Dist. LEXIS 52279, at *11–12 (D.N.D. May 26, 2010) citing *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005). Therefore, the bad faith prosecution exception to *Younger* abstention now applies to civil enforcement proceedings as well.

Moreover, professional license disciplinary proceedings are governed by procedural due process. *Kloch v. Kohl*, 545 F.3d 603, 607 (8th Cir. 2008) citing *Marler v. Missouri State Bd. of Optometry*, 102 F.3d 1453, 1456 (8th Cir. 1996). Because the Plaintiff has a constitutionally protected due process right to be free from bad faith prosecutions and to seek immediate court intervention in the form of injunctive relief rather than to endure the prosecution in the administrative forum, *Shaw* 467 F.2d 113, 120, *Hand*, 838 F.2d 1420, 1424, the paradigms of bad faith prosecution apply to the present proceedings pending at the Office of Administrative Hearings.

### v.  The administrative license disciplinary process is inadequate to address and <u>enjoin bad faith prosecutions.</u>

The administrative process in license disciplinary proceedings has been held to be inadequate as a matter of law to address bad faith prosecutions. In *Bishop v. State Bar of Texas*, 736 F.2d at 294, the Fifth Circuit Court of Appeals held that:

> Although ....disciplinary proceedings are capable of deciding constitutional challenges to specific procedures, recourse in those proceedings is not a sufficient avenue to remedy the constitutional injury done by bad faith proceedings themselves. **The right under *Shaw* is to be free of bad faith charges and proceedings, not to endure them until their speciousness is eventually recognized**. *Id*. Citing *Shaw*, supra 467 F.2d at 122 n. 11 and *Younger,* 401 U.S. at 46, 91 S. Ct. at 751; Wilson [v. Thompson], 593 F.2d at 1375, 1382–83 [(5th Cir., 1979)].

> Thus, *Younger* forbade the district court from interfering
> with Bishop's disciplinary proceedings on the ground of
> specific constitutional flaws in the procedure followed in
> the state system. **It did not foreclose injunctive relief
> based on Bishop's allegations of bad faith.** (Emphasis
> supplied).

Similarly, in this case, the Plaintiff is no required to endure the bad faith prosecution aimed at silencing his First Amendment right free expression of opinion regarding vaccine safety, vaccine injuries and vaccine manufacturer liability. Verified Complaint at Paragraphs 15–210 and Exhibits "6" and "7" thereto until the speciousness of the bad faith proceedings are recognized. *Bishop*, 736 F.2d at 294, supra.

In the present case, for all of the above reasons, the Plaintiff as a matter of law is not required to endure disciplinary proceedings which are aimed at stifling his First Amendment rights or which are brought and maintained for the purposes of harassment in in contravention of federal and state law. *Id*. See Verified Complaint at paragraphs 15–210.

### vi.   <u>Additional considerations – no immunity.</u>

The defendants have no immunity from injunctive relief once a bad faith prosecution is stated to take place. Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity

to enjoin a prospective action that would violate federal law." *Church v. Missouri*, 913 F.3d 736, 747–48 (8th Cir. 2019) citing *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).

The doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Church*, 913 F.3d 736, 747–48, supra citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) - State may not immunize officials from suit for violations of the Constitution."), *quoting Ex Parte Young*, 209 U.S. 123, 159 (1908).

"In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether [the] complaint alleges [1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective.'" *281 Care Comm. v. Arneson*, 638 F.3d at 632, *quoting Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (alterations added). On the first inquiry, the official must have "some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017), *citing Ex Parte Young*, 209 U.S. at 157. *See also 281 Care*, at 632, supra. "Without that connection, the officer would be sued merely 'as a representative of the state' in an impermissible attempt to 'make the state a party.'" *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015), *quoting Ex Parte Young*, at at 157. "[T]hat connection does not need to be primary authority to enforce the

challenged law." *281 Care Comm. v. Arneson,* at 632. "Nor does the [state officer] need to have the full power to redress a plaintiff's injury in order to have 'some connection' with the challenged law." *Id.* at 633.

In the present case, the defendants are members of the Minnesota Board of Medical Practice that are charged by statute with enforcing the medical practice act and tat authorized the present prosecution to take place.

Moreover, the relief sought is prospective inasmuch as the present prosecution is aimed and calculated at preventing the Plaintiff to talk in the future to the public as a whole about vaccine risks and injuries based upon statements that he made in the past and further based upon future postings on his web site and disclosures made to patients' parents based upon the mandatory disclosure provision of Minn. Stat. Sec. 121A.15–3a(b). Verified Complaint at ¶¶15–210.

Bad faith prosecution has, however, been held repeatedly to cause sufficient irreparable harm to support federal injunction of a state prosecution. *Hand v. Gary,* 838 F.2d at 1424 *supra*, citing *Dombrowski v. Pfister,* 380 U.S. at 490; *Shaw v. Garrison,* 467 F.2d 113, *and Cf. Younger v. Harris,* 401 U.S. 37 (1971) (suits to enjoin bad faith prosecutions are an exception to the general rule against federal injunction of state court proceedings).

Federal law does not immunize any state officials against federal injunctions regarding bad faith prosecutions. State officials cannot hide behind any type of immunity when bad faith prosecution is sought

to be enjoined. *Hand v. Gary*, 838 F.2d at 1424 *supra*, citing *Dombrowski v. Pfister*, 380 U.S. at 490, supra; *Shaw v. Garrison*, 467 F.2d 113.

For all of the foregoing reasons, the Plaintiff has shown that the bad faith prosecution itself is the immediate irreparable harm that mandates the issuance of injunctive relief.

## POINT III
## ADDITIONAL CONSIDERATIONS MILITATING IN FAVOR OF INJUNCTIVE RELIEF AGAINST <u>BAD FAITH PROSECUTION.</u>

Additional considerations militating in favor of the issuance of injunctive relief and a finding of bad faith prosecution are: (a) impermissible and unconstitutional attempt at regulating content specific speech where the defendants do not have any subject matter jurisdiction to do so; (b) an impermissible and legally void attempt at re-writing Minnesota and federal statutes through ad hoc regulations which contradict statutory provisions.

### I.   In general – the accusatory allegations do not take aim at any disciplinary conduct but are aimed at <u>stifling First Amendment protected free speech.</u>

Administrative agencies are creatures of statute and they have only those powers given to them by the legislature." *In re Hubbard*, 778 N.W.2d 313, 318 (Minn. 2010) (quoting *Great N. Ry. Co. v. Pub. Serv.*

*Comm'n, 284 Minn. 217, 220,* 169 N.W.2d 732, 735 (1969). An agency's statutory authority may be either express or implied. *Id.* "In determining whether an administrative agency has express statutory authority, we analyze whether the relevant statute unambiguously grants authority for an administrative agency to act in the manner at issue." *Id.* at 320. Whether an administrative agency has acted within its statutory authority is a question of law, *In re Qwest's Wholesale Serv. Quality Standards,* 702 N.W.2d 246, 259 (Minn. 2005).

An administrative agency may not finally decide the limits of its statutory power *R.S. v. State,* 459 N.W.2d 680, 694 (Minn. 1990).

The legislature created the Minnesota Board of Practice of medicine specifically to regulate the practice of medicine and not free speech. The following are statutes which define the Board's specific authority and powers invoked in this case.

## A.   <u>Powers of the Board.</u>

Minn. Stat. § 147.001 Subd 2 provides verbatim as follows:

The primary responsibility and obligation of the Board of Medical Practice is to protect the public. In the interest of public health, safety, and welfare, and to **protect the public from the unprofessional, improper, incompetent, and unlawful practice of medicine**, it is necessary to provide laws and regulations to govern the granting and subsequent use of the license to practice medicine. (Emphasis supplied)

27

### B. <u>Practice of Medicine defined:</u>

Minn. Stat Sec. 148.081 subd. 3 defines the practice of medicine as follows:

> Subd. 3. Practice of medicine defined. For purposes of this chapter, a person not exempted under section 147.09 is "practicing medicine" or engaged in the "practice of medicine" if the person does any of the following:
>
> (1) advertises, holds out to the public, or represents in any manner that the person is authorized to practice medicine in this state;
>
> (2) offers or undertakes to prescribe, give, or administer any drug or medicine for the use of another;
>
> (3) offers or undertakes to prevent or to diagnose, correct, or treat in any manner or by any means, methods, devices, or instrumentalities, any disease, illness, pain, wound, fracture, infirmity, deformity or defect of any person;
>
> (4) offers or undertakes to perform any surgical operation including any invasive or noninvasive procedures involving the use of a laser or laser assisted device, upon any person; or
>
> (5) offers to undertake to use hypnosis for the treatment or relief of any wound, fracture, or bodily injury, infirmity, or disease.

Significantly, none of the foregoing definitions of the practice of medicine include any of the allegations made in the formal accusatory statement. Verified Complaint at paragraphs 99–210 and Ex. 6.

Conspicuously missing from the definition of the practice of medicine of Minn. Stat Sec. 148.081 subd. 3 is a physician's expression of his own opinions in a public interview posted on the internet or to patients that ask for Plaintiff's personal opinions on vaccinations.

Also conspicuously missing from the practice of medicine definitions is a physician's discharge of his statutory disclosure duties under Minn. Stat. Sec. 121A.15 subd. 3a(b)(2) reveal to his patient's parents that: (i) they have a right to opt out of vaccination schedules in accordance with Minn. Stat. Sec. 121A.15 subd. 3(d) and (ii) pursuant to Minn. Stat. Sec. 121A.15 subd. 3a(b)(4) reveal to the parents' patients the US Government DHHS/CDC publications regarding vaccine information which indicate that specific vaccines cause injuries and death and discuss the same information with his patients. Ex. 9.

Among the specific powers of the Board the legislature included the board's discretionary powers to refuse to grant a license, may refuse to grant registration to perform interstate telemedicine services, or may impose disciplinary action as described in section 147.091.

The defendants invoked the color of Minn. Stat. Sec. 147.091 subd. 1(g); Minn. Stat. 147.091 subd. 1(k) and/or Minn. Stat. Sec. 147.091 subd. 1(v) to institute the current bad faith license prosecution. However, as it can see from the verified Complaint at paragraphs 99–210, on their face none of the accusatory allegations in Ex. 6 to the

29

Verified Complaint state any grounds for discipline under the foregoing statutes. Nor do most of the statements state any acts which amount to the practice of medicine as defined by Minn. Stat Sec. 148.081 subd. 3. See verified Complaint at paragraphs 99–210.

Rather the allegations focus on what the Plaintiff says in public forums and to his patients about vaccine injuries and his personal opinions regarding the same. Verified Complaint at paragraphs 99–210.

In assessing defendants' actions in the context of bad faith prosecution, two elementary ground rules exist: (1) regulation of content specific speech is unconstitutional per se unless the state passes the strict scrutiny test in showing a compelling interest for such regulations. *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 754 (8th Cir. 2019); (2) regulations which conflict with and contradict state statutory provisions are void. *Swenson v. Emerson Elec. Co.*, 374 N.W.2d 690, 702 (Minn. 1985) citing *Fmali Herb, Inc. v. Heckler*, 715 F.2d 1385, 1387 (9th Cir. 1983).

## II.  The defendants' attempt at regulating content <u>specific speech is unconstitutional per se.</u>

The defendants are making an improvident use of the provisions of the Minnesota license disciplinary statutes to stifle First Amendment free speech. See verified Complaint at paragraphs 15–210.

Specifically, the defendants state in the accusatory allegations that the Plaintiff cannot talk on public interviews or to his patients' parents

about the vaccine risks and his personal opinions on that issue because such statements violate Minn. Stat. Sec. 147.091 subd. 1(g); Minn. Stat. 147.091 subd. 1(k) and/or Minn. Stat. Sec. 147.091 subd. 1(v). See Verified Complaint at ¶¶15–210.

However, as discussed above and in paragraphs 99–210 of the Verified Complaint, on their face none of the accusatory allegations state any violations of Minn. Stat. Sec. 147.091 subd. 1(g); Minn. Stat. 147.091 subd. 1(k) and/or Minn. Stat. Sec. 147.091 subd. 1(v). Rather they all state an attempt at regulating First Amendment speech or make statements which contravene the substance of Minnesota and federal law discussed above.

Talking about vaccine risks and vaccine injuries and the parents' right to opt out of vaccination programs is not only protected by the First Amendment but it is a mandatory duty imposed upon the plaintiff by statute. Minn. Stat. Sec. 121A.15 subd. 3a(b).

Administrative agencies can regulate a specific issue through ad hoc adjudication in the absence of a formal regulation. *Abbott-Northwestern Hosp., Inc. v. Schweiker*, 698 F.2d 336, 342 (8th Cir. 1983) citing *Matter of Keokuk Steel Castings*, 638 F.2d 42, 44–45 (8th Cir. 1981); *Cent. Ark. Auction Sale, Inc. v. Bergland*, 570 F.2d 724, 727 (8th Cir. 1978)

That is what the defendants are seeking to do in the underlying disciplinary proceedings. The defendants are attempting to set a new standard and to regulate content specific speech through adjudication of the specific issue of what a Minnesota licensed physician can and

cannot discuss in open forums and with his patients with respect to vaccine safety, vaccine injuries and vaccine recommendations. Verified Complaint at paragraphs 99–210.

The question in this case is whether in the absence of specific regulation and in the presence of specific contrary statutory provisions of Minn. Stat. 121A.15 subd. 3 and subd 3a(b), 42 USC Secs. 300aa-1 through 300aa-34 and 4 CFR 100.3, the defendants can regulate content specific speech which according to their own version of the accusations comply with statutory provisions. Verified Complaint at paragraphs 99–210.

The defendants contend that the Plaintiff cannot speak prospectively about the law as it existed at the time when they were processing the public complaints and at the present time or in the future. Ex. 6 to the Verified Complaint.

It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828–29, 115 S. Ct. 2510, 2516 (1995) citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972).

Other principles follow from this precept. In the realm of private speech or expression, government regulation may not favor one speaker over another. *Mosley*, 408 U.S. 92, 96, *supra*, citing *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984), 80 L. Ed. 2d 772, 104 S. Ct. 2118 (1984). Discrimination against speech because of

its message is presumed to be unconstitutional. *Id.* citing *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 641–643 (1994), 129 L. Ed. 2d 497, 114 S. Ct. 2445 (1994).

When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Mosley, 408 U.S. 92, 96, *supra citing R.A.V. v. St. Paul*, 505 U.S. 377, 391 (1992), 120 L. Ed. 2d 305, 112 S. Ct. 2538.

Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction. *Mosley*, 408 U.S. 92, 96, *supra Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983).

In the present case the state government is seeking to muzzle Plaintiff's personal opinions and views regarding vaccine safety, vaccine injuries and limitation of vaccine manufacturer's liability for vaccine injuries. See verified Complaint at paragraphs 99–210. This attempt at silencing the Plaintiff prospectively is an impermissible and an unconstitutional content based regulation which cannot withstand the strict scrutiny standard. *Mosley*, 408 U.S. 92, 96 and related citations, supra.

The strict scrutiny test requires the state to show that the law that burdens the protected right advances a compelling state interest and is narrowly tailored to serve that interest. *Republican Party v. White*, 416

F.3d 738, 749 (8th Cir. 2005) citing *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 222, 103 L. Ed. 2d 271, 109 S. Ct. 1013 (1989). Strict scrutiny is an exacting inquiry, such that "it is the rare case in which . . . a law survives strict scrutiny." *White*, 416 F.3d 738, 749, supra citing *Burson v. Freeman*, 504 U.S. 191, 211, 119 L. Ed. 2d 5, 112 S. Ct. 1846 (1992).

In the present case it cannot be said that the state officials have a compelling state interest at censuring Plaintiff's expression of opinions regarding vaccine injuries, vaccine risks and options to vaccinations including the Minnesota opt out laws where the Minnesota legislature itself imposed a mandatory duty upon the Plaintiff to disclose and discuss both. Minn. Stat 121A.15 subd. 3a(b)(2) and subd. 3a(b)(4).

It can also not be said that the Minnesota government has a compelling interest in curbing Plaintiff's statements regarding the limitation of liability of vaccine manufacturers through disciplinary adjudication where federal statutes 42 USC Sec. 300aa-22. Finally it cannot be said that the state has a compelling interest to force the Plaintiff to discuss the merits of the NIH vaccine safety studies and to affirmatively state that vaccines are unequivocally safe where both federal and state law as well as Vaccine Information statements and US Vaccine tables state that they are not. (Exhibits 8–9 Verified Complaint); Minn. Stat. Sec. 121A.15 subd. 3a(b), Min Stat. Sec. 121A subd. 3(d); 42 USC Sec 300aa-1 through 300aa-32; 42 CFR 100.3.

In short, the content specific speech regulations sought to be promulgated through the bad faith prosecution is not prompted by a

legitimate compelling state interest but is an unconstitutional attempt at muzzling pure free speech under the First Amendment of the constitution as well as speech and dissemination of information which is mandated by Minn. Stat. Sec. 121A.15 subd. 3a(b). Mosley, 408 U.S. 92, 96 and related citations, supra.

### III.   Defendants' attempt at regulation through adjudication amounts to bad faith prosecution.

Defendants' attempt at regulating through adjudication the dissemination of information regarding specific vaccine risks and parents' rights to opt out of vaccination programs ipso facto amount to bad faith prosecution.

Regulations which contravene state statutes, in this case the mandatory disclosure provisions of the Vaccine Standard Statute Minn. Stat. § 121A.15 subd. 3a

   *Swenson v. Emerson Elec. Co.*, 374 N.W.2d at 702 citing *Fmali Herb, Inc. v. Heckler*, 715 F.2d at 1387; *Bicking v. City of Minneapolis*, 891 N.W.2d 304, 313 (Minn. 2017) are void.

Thus to the extent that the defendants are seeking to prevent the Plaintiff from discussing and sharing the specific information regarding the risks of vaccine injuries as well as the parents' given statutory right to opt out of the vaccine schedules as provided by Minn. Stat. Sec. 121A.15 subd.3a(b)(2) and subd.3a(b)(4) such regulation contravenes Minnesota law and is void as a matter of law. *Id.*

For all of the foregoing reasons the pending license prosecution is brought in bad faith to stifle Plaintiff's exercise of First Amendment rights to express his opinions regarding vaccine injuries and vaccine risks. The License prosecution is further brought in bad faith because the proposed regulation of the content of Plaintiff's speech and dissemination of vaccine risks and injury information is contrary to the provisions of Minn. Stat. Sec. 121A.15 subd. 3a(b).

**POINT III**
**THE PLAINTIFF SATISFIED ALL OF THE**
**REQUIREMENTS FOR THE GRANT OF AN**
**INJUNCTOON UNDER FED. R. CIV. PROC 65.**

Courts review four elements when evaluating whether to grant a preliminary injunction. These include: (1) the probability of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest. *IBM v. Seagate Tech., Civ. No. 3–91–630, West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied* 479 U.S. 1070 (1987); *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 112–14 (8th Cir. 1981); *see also* Fed. R. Civ. P. 65(a). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 (8th Cir. 1989).

## I.   The element of irreparable harm has been <u>satisfied.</u>

The element of irreparable harm has been satisfied through the showing of the existence of a bad faith prosecution as articulated above and in the Verified Complaint at paragraphs 15–210.

A showing of bad faith or harassment is equivalent to a showing of irreparable injury under *Younger*, and irreparable injury independent of the bad faith prosecution need not be established. *Fitzgerald v. Peek*, 636 F.2d at 944 citing *Wilson v. Thompson*, 593 F.2d at 1381–82, supra; *Shaw v. Garrison*, 467 F.2d at 120, supra. Allegations that a prosecution is brought in bad faith for improper motives accompanied substantiating facts relating to the same is sufficient to withstand a motion to dismiss under Fed. R. Civ. Proc. 12(b). *Bishop v. State Bar of Texas*, 736 F.2d at 294, supra.

For all of the foregoing reasons the Plaintiff has shown that the element of irreparable harm exists.

## II.   The element of likelihood of success has been <u>satisfied.</u>

Likelihood of success on the merits requires that the movant find support for its position in governing law. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473–74 (8th Cir. 1994); *O.N. Equity Sales Co. v. Prins*, 519 F.Supp.2d 1006, 1013 (D. Minn. 2007); *ILQ Invs., Inc. v.*

37

*City of Rochester*, 25 F.3d 1413, 1416 (8th Cir. 1994) (first amendment and prior restraint of expression); *City of Timber Lake v. Cheyenne River*, 10 F.3d 554, 556–58 (8th Cir. 1993);

In order to weigh in the movant's favor, the movant's success on the merits must be "at least . . . sufficiently likely to support the kind of relief it requests." *Heather K. v. City of Mallard*, 887 F.Supp. 1249, 1258–59 (N.D. Iowa 1995) citing *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 488 (8th Cir. 1993).

### a. The Plaintiff is likely to succeed on his merits regarding the claims for injunctive relief for <u>bad faith prosecution.</u>

In the present case the Plaintiff is likely to succeed on the merits on the underlying action because he is able to demonstrate that his claim for injunctive relief for bad faith prosecution is supported by existing facts and law as set forth above and in the Verified Complaint.

The Plaintiff has demonstrated that for all of the reasons articulated hereinabove and in the Verified Complaint the license prosecution (Ex. 6) is brought in bad faith for the purposes of: (a) stifling Plaintiff's First Amendment rights to freely express his personal opinions in public internet forums and at conferences regarding the safety and risks of vaccine; (b) harassing the Plaintiff for actually disseminating the particular information to his patients' parents mandated by the Vaccine Standard Statute Minn. Stat.

121A.15 subd. 3a(b)(2) and subd. 3a(b)(4) and forcing him to make statements which are contrary to state and federal law. Verified Complaint at paragraphs 99–210.

For all of the foregoing reasons the plaintiff is likely to succeed on the merits of the underlying action for preliminary and permanent injunctive relief regarding g bad faith prosecution.

### b. The plaintiff is likely to succeed on the merits of the underlying action for relief under 42 USC Sec. 1983.

In the underlying complaint the plaintiff is seeking injunctive relief under 42 USC Sec. 1983 and 28 U.S.C. § 2201.

The Plaintiff is seeking prospective injunctive relief against the defendants for continuously maintaining and continuing to maintain a bad faith prosecution for the purposes of disciplining the Plaintiff in the future and disciplining his license in the future for exercising his First Amendment rights and for harassing him with regard to his discharge of his disclosure duties under Min.. Stat. 121A.15. subd. 3a(b) and for further harassing him for all of the reasons articulated above. See verified Complaint paragraphs 99–210, 239–247.

42 U.S.C. § 1983 claims for prospective injunctive relief can be brought against state employees in their official capacities so long as the claims meet the requirements set forth in *Ex Parte Young*.

*Richards v. Dayton*, No. 13–3029 (JRT/JSM) 2015 U.S. Dist. LEXIS 40478, at *40–43 (D. Minn. Jan. 30, 2015) citing *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009).

("[I]n accordance with *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Eleventh Amendment bars damages claims against the states, but generally does not bar claims for prospective injunctive relief against public officials in their official capacities."); *Sherbrooke Turf, Inc. v. Minn. Dept. of Transp.*, 345 F.3d 964, 967 n. 1 (8th Cir. 2003) ("Eleventh Amendment immunity may bar the claims against state agencies, but the state officials may be sued for injunctive relief."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 n. 19 (8th Cir. 1999) (en banc), cert. granted, 528 U.S. 1146, 120 S. Ct. 1003, 145 L. Ed. 2d 947, cert. dismissed, 529 U.S. 1001, 120 S. Ct. 1265, 146 L. Ed. 2d 215 (2000) ("[A] state official may be sued in his or her official capacity for injunctive relief.") (citation omitted)).

In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, (in this case a bad faith prosecution - *Shaw*, 467 F.2d 113, 120, *Hand*, 838 F.2d 1420, 1424 and supra), it is plain that such officer must have some connection with the enforcement of that act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party. *Ex Parte Young*, 209 U.S. at 157.

In the present case, as discussed above, the individual defendants named in this suit in their official capacities are members of the Minnesota Board of medical Practice who authorized and are in fact

maintaining the bad faith prosecution and wo are seeking to discipline Plaintiff's license by using the bad faith prosecution to attain those goals. Verified Complaint at paragraph 10–210.

Accordingly, "[t]he *Ex parte Young* exception only applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014) (citation omitted); *Harris v. Hammon*, 914 F.Supp.2d 1026, 1035 (D. Minn. 2012) (same); see also *Id.* ("Absent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction.") (citing *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992).

In the present case, each one of the named officials have supervisory powers which they are exercising against Plaintiff's interests as state in the verified Complaint.

*Ex Parte Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. *Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); see also *Randolph v. Rodgers*, 253 F.3d

342, 348 (8th Cir. 2001) ("*Ex parte Young* simply permits an injunction against a state official in his official capacity to stop an ongoing violation of federal law.") (citation omitted).

In the present case, the injunctive relief sought under 42 USC Sec. 1983 is prospective. As of the present date the administrative bad faith prosecution is in progress but the hearings regarding the underling proceeding have been scheduled to take place in May 2021 (Ex. 7) and the defendants have not had yet a chance to fully act against Plain tiff's license through the use of the color of Minnesota law. Ex. 6 and 7 to the Verified Complaint and Verified Complaint at paragraphs 15–210.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48–49, 108 S. Ct. 2250, 2254–55 (1988)

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams, 474 U.S. 327, 330–331 (1986));Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

In this case the Plaintiff stated that his First Amendment rights to free speech as well as his constitutional right under the Fourteenth Amendment to be free from bad faith prosecution are continuously being violated and about to be violated in the future. Verified Complaint at paragraphs 99–210.

42

The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. at 48–49, supra citing *United States v. Classic*, 313 U.S. 299, 326 (1941).Accord, *Monroe v. Pape*, 365 U.S. 167, 187 (1961).

In this case the defendants are acting under the color of Minnesota Law, namely under the color of the provisions of the Minnesota disciplinary statute Minn. Stat. Sec. 147.091 subd. 1(k), subd.1(g) and subd. 1(v) to deprive the Plaintiff of his Frist Amendment rights and to further subject him to the present bad faith prosecution. Verified Complaint paragraphs 15–210.

An order has not yet been issued deciding the outcome of the bad faith prosecution by the Board, but the continuation of the bad faith prosecution aimed a violating Plaintiff's First Amendment free speech rights and Plaintiff's Fourteenth Amendment right to be free from bad faith prosecutions continues unabated. The continuation of the bad faith prosecution per se amounts to irreparable harm which the Plaintiff need not endure. *Bishop v. State Bar of Texas*, 736 F.2d at 294.

Consequently, the injunctive relief sought under 42 U.S.C. § 1983 is prospective. Because bad faith prosecutions are enjoined as a matter of law, *Raff*, 843 F.2d 1103, 1109–10 citing *Fitzgerald v. Peek*, 636 F.2d at 945 and see *Shaw v. Garrison*, 467 F.2d at 120,supra and *Bishop v. State Bar of Texas*, 736 F.2d at 294 and because the injunctive relief

sought is prospective, Verified Complaint paragraphs 239–247, the Plaintiff is likely to be successful on the merits of how 42 U.S.C. § 1983 claim.

For all of the foregoing reasons and for all of the reasons set forth in the Verified Complaint, the Plaintiff is likely to succeed in his underlying claims under 42 U.S.C. § 1983.

### c.   The plaintiff is likely to succeed on the merits of his claim for a declaratory judgment pursuant to 28 USC Sec. 2201.

In Count III the Plaintiff is seeking a declaratory Judgment declaring the bad faith prosecution and the goals it seeks to attain, namely the silencing of Plaintiff's exercise of his First amendment right to talk about vaccine injuries as an act which is unconstitutional illegal and beyond the powers and subject matter jurisdiction of the defendants.

### 1.   Prospective declaratory judgment

Declaratory judgment against state officials must be prospective. A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability for a past act." *Justice Network Inc. v. Craighead Cty.*, 931 F.3d 753, 764 (8th Cir. 2019) citing *Lawrence v. Kuenhold*, 271 F.App'x 763 (10th Cir. 2008)

44

A complaint "seeking . . . a declaration of past liability" instead of "future rights" does not satisfy the definition of "declaratory judgment" and renders declaratory relief unavailable. *Id.*

"Furthermore," retrospective declaratory relief cannot "be granted as '[t]he Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past.' Craighead Cty., 931 F.3d 753, 764 citing *Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995)). Thus, declaratory relief is limited to *prospective* declaratory relief. *Id.* citing *See, e.g., Davis v. Campbell, No. 3:13-cv-0693 LEK/ATB, 2014 U.S. Dist. LEXIS 7540*, 2014 WL 234722, at *9 (N.D.N.Y. Jan. 22, 2014).

In the Verified complaint the declaratory judgment claim seeks prospective declaratory judgment declaring the bad faith prosecution seeking to stifle Plaintiff's First Amendment Rights as illegal and unconstitutional for all of the reasons articulated in paragraphs 248 through 272 of the Verified Complaint.

## 2. <u>Actual controversy.</u>

"A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists." *EverBank, FSB*, No. 13–2647 (DSD/JSM) 2014 U.S. Dist. LEXIS 96651, at *34–36, supra citing *Weavewood, Inc. v. S & P Home Invs., LLC*, 821 N.W.2d 576 [579] (Minn. 2012). A "controversy" in this sense must be one that is appropriate for judicial

determination. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41 (1937), 57 S. Ct. 461, 464 citing *Osborn v. United States Bank*, 9 Wheat 738, 819.

A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. *Haworth*, 300 U.S. 227, 240–41, supra citing *United States* v. *Alaska S. S. Co.*, 253 U.S. 113, 116.

The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *Haworth*, 300 U.S. 227, 240–41 citing *South Spring Gold Co. v. Amador Gold Co.*, 145 U.S. 300, 301; *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922); *Massachusetts v. Mellon*, 262 U.S. 447, 487, 488 (1923).

It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *Haworth*, 300 U.S. 227, 240–41 citing *Muskrat* v. *United States, supra; Texas v. Interstate Com. Comm*, 258 U.S. 158, 162 (1922); *New Jersey v. Sargent*, 269 U.S. 328, 339, 340 (1926) and other citations.

Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of

damages. *Haworth*, 300 U.S. at 240–41, supra citing; *Tutun v. United States*, 270 U.S. 568, 576, 577 (1926); *Fid. Nat. Bank v. Swope*, 274 U.S. 123, 132 (1927) and other citations.

A justiciable controversy exists in the present case because the defendants are presently availing themselves of the Minnesota disciplinary process to prospectively violate Plaintiff's First Amendment rights and to maintain a bad faith harassment prosecution against the plaintiff because he made and will prospectively make statements and disclosures to his patients regarding vaccine injuries which he is otherwise mandated by Minnesota law to make and because such statements were already codified in federal law. See Complaint at paragraphs 99–210.

For all of the foregoing reasons the declaratory judgment in the form and substance stated in the verified should be granted in its entirety.

### III.   The Balance of Equities militates in favor of the <u>grant of a preliminary injunction.</u>

The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability test. At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. The equitable nature of the proceeding mandates that the court's approach be flexible enough to

47

encompass the particular circumstances of each case. Thus, an effort to apply the probability language to all cases with mathematical precision is misplaced.

In balancing the equities no single factor is determinative. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less. *O'Connor v. Peru State Coll.*, 728 F.2d 1001, 1003 (8th Cir. 1984) citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d at 113.

It follows that the court ordinarily is not required at an early stage to draw the fine line between a mathematical probability and a substantial possibility of success. This endeavor may, of course, be necessary in some circumstances when the balance of equities may come to require a more careful evaluation of the merits. But where the balance of other factors tips decidedly toward movant a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation. *Id.*

In the present case the balance of equities militates in favor of the issuance of a preliminary injunction simply because the state has no

48

legitimate interest in maintaining a bad faith prosecution *Wilson v. Thompson*, 593 F.2d at 1383, supra and simply because prosecutions aimed at stifling Plaintiff's First Amendment rights or at harassing the Plaintiff are enjoined. *Raff*, 843 F.2d at 1109, supra citing *Kugler v. Helfant*, 421 U.S. at 126 n. 6, supra.

For all of the foregoing reasons the balance of equities favors the issuance of a preliminary injunction.

## IV.   <u>The public interest element has been satisfied.</u>

Issuance of an injunction is in the interest of the public because preserving constitutional rights is in the public interest. " *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) citing *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) also see *Doe v. LaDue*, 514 F.Supp.2d 1131, 1138 (D. Minn. 2007).

## **<u>CONCLUSION</u>**

For all of the above articulated reasons Plaintiff's motion for a preliminary injunction pursuant to Fed. Rule Civ. Proc. 65 enjoining the bad faith prosecution now in progress should be granted in its entirety.


Dated: December 14, 2020          By: _____


                                      Attorneys for the Plaintiff <u>/s/</u>
                                      <u>Brad Haddy</u>
                                      Brad Haddy, Esq.
                                      MN Bar No. 0387503
                                      3209 W. 76th Street Edina,
                                      MN 55435
                                      Email: Email:
                                      bjhaddy@mnesq.com
                                      Phone Number: (952) 513-7991

                                      Jacques G. Simon Esq.,
                                      <u>/s/ Jacques G. Simon</u>
                                      By: Jacques G. Simon
                                      Admitted pro hac vice
                                      200 Garden City Plaza
                                      Suite 301 Garden City, NY
                                      11530
                                      Phone: 516-378-8400 Email:
                                      jgs@jacquessimon.com

50

## Certificate of Word Limitation Pursuant to Lr 7.1(f).

Pursuant to L.R. 7.1(f) I hereby certify that the word count in this memorandum of law excluding the signature block is **11,345** under the word count of TypeLaw.com.

Jacques Simon Attorney At Law

Respectfully submitted,

Dated: December 14, 2020      By: /s/ Jacques Simon

Jacques G. Simon Esq.,

Admitted pro hac vice
200 Garden City Plaza
Suite 301 Garden City, NY 11530
Phone: 516-378-8400 Email: jgs@jacquessimon.com

**Certificate of Service**

I hereby certify that on this 15th day of December 2020, I served the within memorandum of law upon the following attorneys of record for the defendants through the filing of the same with the ECF system of the US District Court. District of Minnesota and via electronic mail.

> Kathleen M. Ghreichi
> Assistant Attorney General
> Minnesota Attorney General's Office
> 445 Minnesota Street, Suite 1400
> St. Paul, MN 55101–2128
> kathleen.ghreichi@ag.state.mn.us

Dated: December 15, 2020          By: /s/ Jacques Simon