## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Robert Zajac, MD,                           Case No: 20-cv-02148 (JRT-DTS)
                    Plaintiff

v.

Maria K. Statton, Kathryn D. Lombardo,
Hugh P. Renier, Cheryl L. Bailey,
Christopher Burkle, Pamela Gigi,
Pamela Gigi,  Shaunequa B. James,
Jennifer Y. Kendall  Thomas, Patricia J.
Lindholm, John M. (Jake) Manahan,
Allen G. Rasmussen, Kimberly W.
Spaulding, Stuart T. Williams, in their respective
official capacity as members of the Minnesota
Board of Medical Practice.

Defendants

---

**[REDACTED]**
**Defendants' Joint Memorandum in Opposition to**
**Plaintiff's Motion for Preliminary Injunction**

---

## INTRODUCTION

Defendants submit this memorandum in opposition to Plaintiff's motion for a preliminary injunction to stay the state administrative action commenced by the Minnesota Board of Medical Practice's Complaint Review Committee more than six months ago. As a threshold matter, the Court should decline to exercise jurisdiction over Plaintiff's lawsuit under the *Younger* abstention doctrine. Contrary to Plaintiff's assertion, the bad faith prosecution exception to *Younger* abstention does not apply. Plaintiff makes unfounded allegations that the members of the Minnesota Board of

Medical Practice, named in their respective official capacities ("Defendants"),[1] are engaged in a bad faith retaliatory prosecution aimed at "stifling" Plaintiff's First Amendment rights. Plaintiff even goes so far as to allege that the Board's Complaint Review Committee has knowingly misrepresented the facts and the law in commencing the underlying administrative action "without a real expectation that it will succeed." (Doc. No. 19 at 26, 29.) A review of the record, outlined below, will demonstrate the unsubstantiated and meritless nature of Plaintiff's assertions.

Even if the Court were to exercise jurisdiction, Plaintiff is unable to establish the *Dataphase* factors needed for obtaining the extraordinary remedy of a preliminary injunction. Plaintiff is not likely to, and cannot as a matter of law, succeed on the merits. Defendants are not seeking to "muzzle" Plaintiff's First Amendment rights on the public stage. Rather, the Board's Complaint Review Committee is seeking a finding from an administrative law judge that Plaintiff's manner of counseling minor patients' parents about vaccines during clinic visits violates multiple provisions of the Minnesota Medical Practice Act. In short, regulation of Plaintiff's professional conduct during clinic visits is at issue in the underlying administrative action – not Plaintiff's speech in a public forum.

In an effort to avoid any regulatory correction of his professional conduct, Plaintiff distorts the substance of the underlying state administrative action. The Complaint Review Committee is not alleging that childhood immunizations

---

[1] The Board of Medical Practice is comprised of residents of the State of Minnesota who have been appointed by the Governor pursuant to Minn. Stat. § 147.01, subd. 1. The Board consists mainly of individuals licensed to practice medicine but also includes public members. *Id.* "The primary responsibility and obligation of the Board of Medical Practice is to protect the public." Minn. Stat. § 147.001, subd. 2.

"unequivocally" pose no risk.  Rather, the Complaint Review Committee is alleging that Plaintiff's conduct falls below the minimum standard of care when counseling patients' parents during clinic visits about vaccine safety and whether they should consent to vaccinating according to the Centers for Disease Control and Prevention ("CDC")'s recommended schedule.

If the Complaint Review Committee meets its burden of proving that Plaintiff has violated the Minnesota Medical Practice Act, then the administrative law judge will issue a report with findings of fact, conclusions of law, and a recommendation to the Board that discipline be imposed against Plaintiff's license.  The full Board will then decide whether any disciplinary action is warranted, and if so, the appropriate form of disciplinary action authorized under Minn. Stat. § 147.141 to impose.  In doing so, the full Board will consider the report and recommendation of the administrative law judge, review the record, and provide an opportunity for written and oral argument from Plaintiff and the Complaint Review Committee.  Going through the administrative proceeding, pursuant to the process set forth in the Minnesota Administrative Procedure Act (Minnesota Statutes chapter 14), does not result in any irreparable harm to Plaintiff.

Moreover, the balance of harms weighs heavily against granting Plaintiff's motion for a preliminary injunction. Staying the ongoing administrative proceeding against Plaintiff's medical license would prevent the Board from performing its vital public safety role of regulating the professional conduct of licensed physicians in the State of Minnesota.

## SUPPORTING DOCUMENTS

1.      Verified Complaint (Doc. Nos. 1, 7), including attached exhibits (Doc. No. 1-1).

2.      Declaration of Kathleen M. Ghreichi, dated January 4, 2021 ("Ghreichi Decl."), including the following exhibits thereto:

Exhibit A:    Complaint concerning Plaintiff's practice received by the Board on December 26, 2017 (filed under seal).

Exhibit B:    Complaint concerning Plaintiff's practice received by the Board on October 15, 2018 (filed under seal).

Exhibit C:    The Committee's Expert Report, submitted in the state administrative action on December 4, 2020 (filed under seal).

## FACTUAL BACKGROUND

Defendants' Memorandum in Support of Their Joint Motion to Dismiss, filed December 4, 2020 (Doc. No. 14 at 3-5), sets forth the pertinent background on how complaints received by the Board relating to Plaintiff's medical practice resulted in an ongoing contested case before an administrative law judge at the Office of Administrative Hearings. Defendants now supplement the factual record to correct multiple inaccuracies in Plaintiff's Memorandum in Support of Motion for a Preliminary Injunction (Doc. No. 19). First Plaintiff erroneously states, "Astoundingly, the initial complaints which prompted the starting of defendants' investigation did not involve patient advice nor any patient care." (Doc. No. 19 at 13.) But, in fact, the initial complaint that the Board received on December 26, 2017 explicitly alleged that Plaintiff was " ███████████████████████
█████████████████████████████ " and has █████████████████████████
████████████████████████████████████████████. ████████████

4

████████████████████████████████████████████████████.”
(Ghreichi Decl, Ex. A; Doc. No. 1-1 at 4, 34.)  The second complaint, received by the
Board on October 15, 2018, similarly alleges: "█████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████.”  (*Id.*, Ex. B; Doc. No. 1-1 at 35.)

Next, Plaintiff erroneously contends that the Complaint Review Committee's
Notice of Hearing, the charging document in the state administrative action, shows that
the Committee initiated the contested case "for no other reason than to silence the
plaintiff from publicly talking about the risks and injuries of vaccines" and to prevent him
from exercising his First Amendment rights.  (*See* Doc. 19 at 15.)  Rather, the Notice of
Hearing is focused on Plaintiff's interactions with patients' parents during clinic visits.
Indeed, paragraphs 2.b., 2.d., 2.e., 2.f., 2.i., 2.j. of the Notice of Hearing all explicitly
reference pediatric patients, patients' parents, or the community standard of care during
the informed consent process.  (Doc. 1-1 at 53-54.)

The following excerpts from the transcription of Plaintiff's August 12, 2019
conference with the Complaint Review Committee also show that the investigatory
proceeding, like the contested case proceeding, clearly focused on Plaintiff's conduct
toward patients during clinic visits, not on Plaintiff's First Amendment rights in the
public forum:

5



- "████████████████████████████████████████████
  ████████████████████████████████████████." (Doc.
  No. 26-1 at 5.)

- "████████████████████████████████████████████
  ██████████████████████?" (*Id.* at 8.)

- "██ █████████████████████████████████████████
  ████████████████████████████████████████████
  ██████████████████████?" (*Id.*)

- "████████████████████████████████████████████
  ███████ ████████████████████████████████████
  ██████████████?" (*Id.* at 9.)

- "████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████" (*Id.* at 10.)

- "████████████████████████████████████?" (*Id.* at 11.)

- "████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████ (*Id.*)

- "███████████████████████████████████████████████

   ████████████████████████████████?" (*Id.* at 12.)[2]

Finally, Plaintiff inaccurately maintains that the underlying state administrative action is premised on Defendants trying to force Plaintiff to state that vaccines are "unequivocally safe" in contravention of state law (Minnesota Statues section 121A.15, subdivision 3a(b)) relating to certain notifications about vaccinations. This "unequivocally safe" language comes from Plaintiff, not from Defendants. During the conference with the Complaint Review Committee, when asked whether he describes vaccines as safe to his patients' parents, Plaintiff stated:

████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████

(Doc. No. 26-1 at 11) (emphasis added). When responding to parents' questions about vaccine safety, it is inappropriate for a physician to counsel that we lack the "right study" to say that vaccines are "unequivocally safe." Rather, the acceptable and prevailing

---

[2] In responding to this question, Plaintiff told the Committee during the August 12, 2019 conference, "████████████████████████████████████████████████
████████████████████████████████████████████████
██████████." (Doc. No. 26-1 at 12) (emphasis added). Thus, Plaintiff, himself, tied statements he made during the August 25, 2017 Vaxxed YouTube interview with Polly Tommey to how he counsels patients' parents during clinic visits.

During the August 12, 2019 conference, Plaintiff's counsel also told the Complaint Review Committee: "██████████████████████████████████████████████
████████████████████████████████████." (Doc. No. 26-1 at 4.)

standard of care is to inform patients' parents that the science shows vaccines are safe and to strongly recommend vaccinating under the CDC schedule in the absence of contraindications. Furthermore, under state and federal law, a provider must give patients' parents a written Vaccine Injury Statement, which discloses the risks/benefits of any recommended vaccine. 42 U.S.C. § 300aa-26; Minn. Stat. § 121A.15, subd. 3a(b)(4). All Vaccine Injury Statements provide notice that there is a "very remote chance" of a severe adverse event, just as "with any medicine." (Doc. No. 1-1 at 85-109.)

Plaintiff did inform the Complaint Review Committee at one point during the conference that he tells patients' parents that "█████████████████████████ ███████." (DOC. No. 26-1 at 8.) Nevertheless, Plaintiff's following statements to the Committee during the conference indicate that his conduct falls below the community standard of care when responding to parents' questions about vaccine safety:

- "████████████████████████████████████████████████ ████████████████████████████████." (*Id.* at 11.)

- "████████████████████████████████████████████████████████." (*Id.* at 12.)

- "████████████████████████████████████████████████ ████████████████████████████████. . . . (*Id.* at 13.)

- ████████████████████████████████████████████████ ████████████████████████████████

████████████████████████████████████████████████████

████████████████. (*Id.* at 12-13).

On December 4, 2020, the Complaint Review Committee submitted its expert report in the underlying administrative action pursuant to the administrative law judge's Prehearing Order. (Ghreichi Decl., Ex. C.)  In that report, the Committee's expert opines that ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████. (*Id.* at 9.)  According to the Committee's expert, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██ ██████████████████████████████████████████████  ██

████████████████████████████████████████████████████

████████████████████████████.[3] (*Id.* at 3, 5-6, 12-14, 17, 20-22.)

According to the Committee's expert, ████████████████████████████

████████████████████████████████████████████████████

---

[3] As noted in the Notice of Hearing, Plaintiff's clinic website supports alternative vaccine schedules by stating: "We are here to help the patients make an informed decision regarding choices for their family – including options (without judgment and with support) for alternative vaccine schedules. . . ." (Doc. No. 1-1 at 54.) The Complaint Review Committee's expert was critical of Plaintiff's acknowledgment that ████████

████████████████████████ (Doc. No. 26-1 at 7.)  The expert further noted that Plaintiff's representation in his written response to the Committee's Notice of Conference that ████████████████████████████████████████████████

████████████████████████. (Ghreichi Decl., Ex. C at 4.)

 . (Ghreichi Decl., Ex. C at 14-17.)  In sum, ███

███ . (*Id.* at 22.)

Contrary to Plaintiff's unsubstantiated assertions, the Complaint Review Committee does not allege that there have been no vaccine injuries or that Plaintiff should ignore the notice requirements of Minnesota Statutes section 121A.15, subdivision 3a(b) (requiring vaccine providers to give patients a copy of the U.S. Department of Health and Human Services' Vaccine Information Sheet, which lists possible adverse reactions).  In fact, the Complaint Review Committee's expert opines as follows:



- ███ . (Ghreichi Decl., Ex. C at 8-9.)

- ███ .[4] (*Id.* at 10-13.)

Plaintiff has not yet submitted a rebuttal expert witness report in the state administrative law proceeding.  To avoid addressing the merits in the underlying action,

---

[4] Plaintiff further displays his misunderstanding of the VAERS reporting system by admitting to the Committee that he tells patients ███ (Doc. No. 26-1 at 8.)  In fact, ███ . (Ghreichi Decl., Ex. C. at 11.)

Plaintiff now seeks an order from this Court staying that proceeding pursuant to an expedited preliminary injunction.

## ARGUMENT

### I. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION UNDER THE *YOUNGER* ABSTENTION DOCTRINE.

The *Younger* abstention doctrine directs federal courts to abstain from adjudicating claims that seek to enjoin an ongoing state criminal proceeding. *Younger v. Harris*, 401 U.S. 37, 43-56 (1971). The doctrine stems from "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (the principle of "comity" includes "a proper respect for state functions"). *Younger* abstention has been extended to state civil proceedings. *See Middlesex,* 457 U.S. at 432 (applying *Younger* abstention doctrine to state attorney license disciplinary proceedings); *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1165 (10th Cir. 1999) (applying *Younger* abstention doctrine to § 1983 action seeking to enjoin state medical board from continuing ongoing disciplinary proceedings).

Specifically, federal courts should abstain from exercising jurisdiction when:

(1)     there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding.

*Middlesex,* 457 U.S. at 432; *Plouffe v. Ligon*, 606 F.3d 890, 892-93 (8th Cir. 2010) (applying *Younger* abstention and dismissing § 1983 action seeking to enjoin ongoing attorney licensing disciplinary proceedings).

When these factors are met, federal courts should follow the *Younger* abstention doctrine except where there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex*, 457 U.S. at 435.   Courts have declined to abstain in cases where the movant has demonstrated:  (1) irreparable injury that is "both great and immediate"; (2) the state law at issue "flagrantly and patently" violates constitutional rights; or (3) a showing of bad faith prosecution, harassment, or other extraordinary circumstances justifying equitable relief. *Mitchum v. Foster,* 407 U.S. 225, 230 (1972) (internal citations omitted).  Courts have found "bad faith" prosecution where state officials have proceeded "without hope of obtaining a valid conviction."   *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *see also Lewellen v. Raff*, 843F.2d 1103, 1109-1110 (8th Cir. 1988) (rejecting applicability of *Younger* abstention where racially motivated criminal bribery charges would not have been filed "absent the desire to retaliate" against black attorney); *cf. Postscript Enterprises, Inc. v. Peach*, 878 F.2d 1114, 1116 (8th Cir. 1989) (city attorney's public vow to run adult bookstore out of business was insufficient to trigger bad faith prosecution exception).

Notably, while the U.S. Supreme Court has applied the *Younger* abstention doctrine to state administrative actions, and has not "ruled out use of the bad faith exception in civil cases, it has never directly applied the exception in such a case and we have only recognized it in the criminal context." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1254 (8th Cir. 2012) (quoting *Aaron v. Target Corp*., 357 F.3d 768, 778 (8th Cir. 2004)).

12

In this case, the *Younger* abstention doctrine unquestionably applies.  First, there is an ongoing state proceeding.  On June 5, 2020, pursuant to Minnesota Statutes chapters 14 and 214, the Board's Complaint Review Committee initiated a contested case proceeding (Doc. No. 1-1 at 51-56) at the Office of Administrative Hearings concerning Plaintiff's license to practice medicine.

Second, important state interests are at stake.  The State of Minnesota has a vitally important interest in regulating the professional conduct of the physicians it licenses.  *See Middlesex*, 457 U.S. at 434 ("The State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses."); *Amanatullah*, 187 F.3d at 1164-65 ("there is no question that the licensing and discipline of physicians involves important state interests, matters which traditionally look to state law for their resolution . . . . [I]t is difficult to imagine a state interest more important than the protection of its citizens against the harms of . . . improper practice of medicine.").  Here, the Complaint Review Committee alleges that Plaintiff has deviated from the accepted minimum standard of care in how he advises minor patients' parents regarding the safety of following the CDC's recommended vaccination schedule.  (Doc. No.1-1 at 53-55; Ghreichi Decl., Ex. C.)  In addition, the Complaint Review Committee alleges that Plaintiff has unethically and knowingly provided patients' parents with false information regarding the sufficiency of vaccine safety testing and accountability for vaccine injuries. (*Id.*)  Requiring a licensed physician to follow the community standard of care and to comply with the Minnesota Medical Practice Act is vital to the Board's statutory duty to protect the public.

Third, Plaintiff may, in fact, raise constitutional claims in the state action. *See Plouffe*, 606 F.3d at 89 (plaintiff bears burden of showing lack of opportunity to raise constitutional claims) (citing *Neal v. Wilson*, 112 F.3d 351, 357 (8th Cir. 1997)). Under the Minnesota Administrative Procedure Act ("MAPA"), Plaintiff has an opportunity to raise constitutional issues on review of the administrative proceeding in the state appellate courts. Minn. Stat. § 14.64, .69; *see also Padilla v. Minn. State Bd. of Med. Exam'rs,* 382 N.W.2d 876, 882 (Minn. Ct. App. 1986) (court of appeals "may consider a constitutional issue raised for the first time on appeal from an administrative tribunal when the appellant is raising the issue at the first opportunity in a forum possessing subject matter jurisdiction"), *review denied* (Minn. Apr. 24, 1986). Thus, Plaintiff has a well-established opportunity to raise any relevant federal constitutional issues in the state proceeding and may subsequently request federal review in the U.S. Supreme Court by writ of certiorari under 28 U.S.C. § 1257. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986) ("it is sufficient under *Middlesex* . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding"); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607-11 (1975) (*Younger* abstention prevents federal court intervention in an ongoing state judicial proceeding where state appellate remedies have not been exhausted); *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1144 (8th Cir. 1990) ("[A] party cannot avoid *Younger* by choosing not to pursue available state appellate remedies.").

Plaintiff erroneously argues that the "bad faith" prosecution exception bars applicability of the *Younger* abstention doctrine based on his contentions that: (1) the

14

Complaint Review Committee's administrative proceeding was retaliatory and initiated to discourage (i.e., "stifle") Plaintiff's exercise of his First Amendment rights; and (2) the Complaint Review Committee's contested case "is brought without a real expectation" of succeeding because it contravenes Minnesota Statutes section 121A.15, subdivision 3a(b) and the National Childhood Vaccine Injury Act. (*See* Doc. No. 19 at 29.)  But Plaintiff's conclusory allegations of bad faith prosecution are insufficient to bar abstention.  *See Crenshaw v. Supreme Court of Ind.,* 170 F.3d 725, 729 (7th Cir. 1999) (when *Younger* abstention factors are met, courts must abstain from exercising jurisdiction in the absence of specific facts supporting bad faith prosecution exception); *see also see also Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp.3d 1037, 1055 (D. Minn. 2019) (denying preliminary injunctive relief where movant framed risk of irreparable harm in "conclusory terms and without citation to evidence") (citation omitted).

### A.    The State Administrative Law Proceeding Is Neither Retaliatory Nor Violative of Plaintiff's First Amendment Rights.

Plaintiff cannot substantiate his claim that the Board's Complaint Review Committee would not have commenced the state administrative action against his medical license absent a purported desire to retaliate against him for exercising his federal constitutional rights and to "stifle" his exercise of First Amendment rights.  The record undisputedly shows that the Committee has a legitimate interest in seeking discipline against Plaintiff based on his multiple violations of the Minnesota Medical Practice Act.  Plaintiff's violations include: (1) ███████████████████████████
████████████████████████████████████████████████████████



███████████; (2) ████████████████████████████

██████  ████  ████;  (3)██████████████████████

██████████████████; and (4) ██████████████████████.

(Ghreichi Decl., Ex. C at 21.)   The complaints received by the Board were tied to

Plaintiff's professional conduct with patients (*id.*, Exs. A-B), and the Complaint Review

Committee's questions during the August 12, 2019 investigatory conference were

focused on Plaintiff's counseling of patients during clinic appointments (Doc. No. 26-1).

Thus, there is no factual basis for Plaintiff to maintain that the Complaint Review

Committee lacked a legitimate interest in initiating a state administrative action

concerning whether Plaintiff has violated the Minnesota Medical Practice Act.   Here,

Defendants have a vital public safety interest in regulating Plaintiff's license to practice

medicine.[5]  This case is, therefore, distinguishable from *Lewellen*, where the state would

not have pursued a criminal prosecution in the absence of racially motivated bad faith.

*See Lewellen,* 843 F.2d at 1109-10 (*Younger* abstention is inapplicable in cases where the

state "does not have any legitimate interest in pursuing such a prosecution").

Accordingly, Plaintiff's reliance on *Lewellen* is misplaced. Moreover, nearly a decade

after *Lewellen,* in *Neal v. Wilson*, the Eighth Circuit declined to exercise jurisdiction in a

§1983 action involving an underlying civil administrative law case, despite claims of a

bad faith prosecution. That suit was brought against state authorities for their

---

[5] Plaintiff's assertion that the administrative action does not involve the practice of
medicine (Doc. No. 19 at 13, 39, 40) is wholly without merit.  A physician's conduct
during a pediatric wellness visit unquestionably constitutes the practice of medicine as
defined in Minnesota Statutes section 147.081, subdivision 3(3).

involvement in an administrative disbarment proceeding. *Neal v. Wilson*, 112 F.3d 351, 356–57 (8th Cir. 1997) (noting the court's refusal to engage in any presumption "that the state courts will not safeguard federal constitutional rights") (quoting *Middlesex*, 457 U.S. at 431); *see also Williams v. Red Bank Bd. of Educ.*, 662 F.2d 1008 (3d Cir. 1981) (declining to recognize bad faith exception to *Younger* where teacher challenged pending dismissal proceeding after making public statements critical of school board), *overruled on other grounds by Schall v. Joyce*, 885 F.2d 101, 108 (3d Cir. 1989).

As noted above, neither the U.S. Supreme Court nor Eighth Circuit Court of Appeals have directed applied the bad faith exception to *Younger* abstention outside of the criminal context. The instant case does not present a basis for being the first such case.

Nor can Plaintiff establish a "great and immediate" irreparable injury. In fact, Plaintiff cannot show any injury. The Complaint Review Committee duly conducted an investigation upon the Board's receipt of complaints relating to Plaintiff's professional conduct when advising patients' parents about vaccines. Subsequently, the Committee initiated an administrative action in which it bears the burden of proving by a preponderance of the evidence that Plaintiff has violated the Minnesota Medical Practice Act. If the Complaint Review Committee meets its burden of proof, the Board may then take appropriate disciplinary action against Plaintiff's license. Plaintiff would have the right to appeal a Final Order of the Board imposing discipline to the Minnesota Court of Appeals and raise any constitutional challenges in that appeal. Thus, Defendants have not injured Plaintiff in any respect. Nor is any great and irreparable injury imminent.

**B.      The Complaint Review Committee Expects to Prevail in the State Administrative Law Proceeding.**

Plaintiff erroneously contends that the Complaint Review Committee has no "real expectation" of succeeding in its administrative law proceeding.   A review of the Committee's expert report shows otherwise.  (*See* Ghreichi Decl., Ex. C.)  As set forth above, that expert report enumerates at least four ways in which Plaintiff has violated the Minnesota Medical Practice Act.   The Complaint Review Committee has every expectation of meeting its burden of proof through Plaintiff's own statements and the opinions of the Committee's expert.

Plaintiff has peppered his Memorandum with the assertion that the Complaint Review Committee is engaged in a bad faith prosecution, claiming that the Committee's allegations  contravene the mandatory disclosure provisions of Minnesota Statutes section 121A.15, subdivision 3a(b), and "the express provisions of the National Childhood Vaccine Injury Act."  Plaintiff's argument is without merit. Section 121A.15, subdivision 3a(b), unquestionably directs vaccine providers to give patients a copy of the U.S. Department of Health and Human Services' Vaccine Injury Statement before administering a vaccine. Accordingly, the Complaint Review Committee's expert

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ . (*See* Ghreichi Decl., Ex. C at 8-13.)

In short, Plaintiff has misconstrued the Complaint Review Committee's position. The Committee does not allege that Plaintiff must tell patients' parents that there are no vaccine injuries and that vaccinations present "zero" risk.  Indeed, during the August 12, 2019 conference, a Committee member pointedly asked Plaintiff ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████?'' (Doc. No. 26-1 at 11.) State and federal statutes requiring the disclosure of the risk of vaccine injuries do not somehow nullify a physician's duty to follow the accepted minimum standard of care and to provide accurate information about vaccine testing.[6]  The required disclosures do not change the fact that the community standard of care is to counsel that vaccines are safe and to strongly recommend inoculating pursuant to the CDC-recommended schedule (unless contraindicated).

Instead of relying on expert witness evidence addressing whether Plaintiff's conduct violates the Minnesota Medical Practice Act, Plaintiff claims *with no factual support* that the administrative action was brought to harass him and to prevent him from exercising his constitutional right to free speech.  *See Crenshaw,* 170 F.3d at 729 (requiring allegations of specific facts to trigger applicability of bad faith exception to *Younger* abstention); *Amanatullah,* 187 F.3d at 1165 (recognizing the plaintiff's heavy

---

[6] The Complaint Review Committee's expert report explains that ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████.  (*See* Ghreichi Decl., Ex. C at 13.)

burden of overcoming *Younger* abstention "by setting forth more than mere allegations of bad faith or harassment") (citations omitted).

The Court should refrain from exercising jurisdiction. There is no basis for contravening established federal policy of not interfering in pending state judicial or administrative proceedings – particularly, one which involves the quintessential state function of public protection through regulation of a state medical license.

## II.   PLAINTIFF CANNOT MEET HIS BURDEN OF ESTABLISHING THE *DATAPHASE* FACTORS.

A preliminary injunction constitutes "an extraordinary remedy." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citation omitted). In determining whether to grant a preliminary injunction, courts consider the following factors: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Id.* (citing *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981)). The movant bears the burden of proving the *Dataphase* factors. *Watkins*, 346 F.3d at 844 (citing *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987)). "[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." *CDI Energy Srvs., Inc. v. West River Pumps, Inc.,* 567 F.3d 398, 402 (8th Cir. 2009). In addition, failure to show irreparable harm also independently constitutes a sufficient basis for denying a preliminary injunction. *Watkins*, 346 F.3d at 844. A preliminary injunction

is not appropriate where there is "an adequate remedy at law." *Id.* (citing *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir.1989)).

A.     **Plaintiff Cannot Establish His Likelihood of Success on the Merits.**

As set forth in Defendants' Memorandum in Support of Their Joint Motion to Dismiss (Doc. No. 14 at 11-14), Plaintiff cannot as a matter of law establish that Defendants have violated Plaintiff's First Amendment rights by virtue of the Board's Complaint Review Committee initiating a state administrative action against Plaintiff's medical license. As noted above, the Committee's questions during the investigatory conference, its Notice of Hearing, and its expert report all resoundingly demonstrate that the Committee is litigating whether Plaintiff has violated the Minnesota Medical Practice Act during the informed consent process with clinic patients. Defendants absolutely have the right to regulate Plaintiff's conduct while counseling patients' parents during clinic appointments to ensure that he is following the community standard of care.

Plaintiff erroneously points to strict scrutiny of content-specific speech as the appropriate standard. (Doc. No. 19 at 41.) But the Complaint Review Committee did not commence its administrative action to regulate Plaintiff's public speech; rather, Plaintiff's professional conduct is at issue in that underlying action. The Committee is not applying a statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *See Younger*, 401 U.S. at 53-54. Minnesota Statutes sections 147.091, subdivision 1, and 147.141 of the Minnesota Medical Practice Act do not violate the federal constitution. Rather, those statutes give

Defendants the authority to regulate a physician's professional conduct in treating minor patients during wellness visits and counseling their parents about the appropriateness of consenting to CDC-recommended inoculations.   Instead of recognizing that the Complaint Review Committee is seeking to regulate Plaintiff's professional conduct – not to eviscerate his right to free speech in public venues – Plaintiff takes the untenable position that counseling patients' parents on vaccine safety during clinic visits does not constitute the practice of medicine.  (Doc. No. 19 at 40-41.)

In short, there are no constitutional issues at stake.  Plaintiff's only relevant public statements are specifically referenced in paragraph 2.i. of the Notice of Hearing.  (Doc. No. 1-1 at 54.)  During the August 12, 2019 conference, Plaintiff told the Complaint Review Committee that ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████.  (Doc. No. 26-1 at 12.)  At the conference, Plaintiff's own counsel acknowledged ████████████████████████████████████████████ ██████████████████████████.  (Doc. No. 26-1 at 4.)

In well-established precedent, the Supreme Court has recognized that "[s]tates may regulate professional conduct, even though that conduct incidentally involves speech."  *Nat'l Inst. Of Fam. & Life Advs. v. Becerra,* 138 S. Ct. 2361, 2372 (2018) ("NIFLA") (citing *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 884 (1992)).  In *Casey*, the U.S. Supreme Court upheld a Pennsylvania statute requiring that "a doctor give a woman certain information as part of obtaining her consent to an abortion," which the court viewed as "no different from a requirement that a doctor give

certain specific information about any medical procedure." *Casey*, 505 U.S. at 884 (explicitly recognizing that state regulation of the medical profession may require the provision of certain informed consent information). The *Casey* court reasoned that the statute at issue there only regulated speech "as part of the practice of medicine, subject to reasonable licensing and regulation by the State." *Id.; see also NAACP v Button,* 371 U.S. 415, 438 (1963) (tortious conduct constituting professional misconduct "fall[s] within the traditional purview of state regulation of professional conduct"), *cited in NIFLA,* 138 S. Ct. at 2373. Therefore, strict scrutiny is simply inapplicable in the present context.

Plaintiff further contends that the Complaint Review Committee's allegations of practice act violations contravene the disclosure requirements of Minnesota Statutes section 121A.15, subdivision 3a(b). But, as discussed above, the Committee's expert fully acknowledges that ██████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████. (Ghreichi Decl., Ex. C at 8-13.) Section 121A.15, subdivision 3a(b), further requires that a vaccine provider give patients' parents the following information in writing: a list of immunizations required for school; a description of exemptions; and a list of additional immunizations recommended by the Commissioner. These statutory requirements do not, however, conflict with the community standard of care to counsel that vaccines are safe and to strongly recommend vaccinating pursuant to the CDC-recommended schedule in the absence of contraindications. Nor does section 121A.15, subdivision 3a(b), have any bearing on the

Minnesota Medical Practice Act's prohibition against a physician giving false or misleading information to a patient.

Furthermore, it is unclear how, on this record, Defendants could possibly be both "continuously" violating and "about to" violate Plaintiff's First Amendment rights. (*See* Doc. No. 19 at 53.)  Defendants have not taken any disciplinary action against Plaintiff. Even if the Board does decide to impose disciplinary action following the contested case hearing before the administrative law judge, that remedy will be directed at Plaintiff's professional conduct, not at his right to free speech in a public forum.  In sum, Plaintiff's § 1983 claim is conclusory and devoid of facts showing a constitutional violation. Injunctive relief cannot issue if there is no chance of prevailing on the merits.  *Mid-Am. Real Estate Co. v. Iowa Realty Co*., 406 F.3d 969, 972 (8th Cir. 2005); *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

### B.    Plaintiff Cannot Establish Great and Immediate Irreparable Harm.

In seeking a preliminary injunction, the movant bears the burden of making a clear showing of immediate irreparable injury. *Carlson v. City of Duluth*, 958 F. Supp.2d 1040, 1058 (D. Minn. 2013).   Courts should not issue injunctive relief "unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Goff v. Harper*, 60 F.3d 518, 521 (8th Cir. 1995) (quoting *Rogers v. Scurr,* 676 F.2d 1211, 1214 (8th Cir.1982)).   "Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate."

24

*Perez*, 401 U.S. at 85.  Irreparable injury means harm that is "certain and great and of such imminence that there is a clear and present need for equitable relief."  *Roudachebski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (citation omitted).  A preliminary injunction cannot be issued based on speculative harm to the movant.  *S.J.W. ex rel Wilson v Lee's Summit R-7 Sch. Distr.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction."); *see also Midwest,* 386 F. Supp.3d at 1055 (D. Minn. 2019) (denying preliminary injunction where "conclusory terms" and lack of citation to evidence failed to establish irreparable injury).

The loss of First Amendment freedoms constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (noting "First Amendment interests were either threatened or in fact being impaired at the time relief was sought").  However, as discussed above, Plaintiff has failed to show he is likely to succeed on his First Amendment claim.  The Complaint Review Committee is seeking to regulate Plaintiff's professional conduct that incidentally involves speech, not Plaintiff's free speech rights in the public forum.   Plaintiff's First Amendment rights are neither being threatened nor impaired.

Plaintiff erroneously contends that his purported "showing" of a bad faith prosecution is sufficient to establish irreparable harm.  (Doc. No. 19 at 48.)  But Defendants are not proceeding in bad faith.  The Complaint Review Committee investigated complaints the Board received about Plaintiff and has initiated a contested case before an administrative law judge to seek findings and a recommendation that discipline is warranted because Plaintiff has violated the Minnesota Medical Practice Act.

Board members who do not serve on the Complaint Review Committee will not review the matter and deliberate on whether to impose discipline until after the administrative law judge issues a report following the contested case evidentiary hearing.   Defendants have not engaged in any nefarious or "lawless" conduct. *Shaw v. Garrison*, 467 F.2d 113, 121 (5th Cir. 1972) (a threat of great and immediate irreparable injury "might be shown . . . if there has been bad faith and harassment – official lawlessness – in a statute's enforcement") (citing *Younger*, 401 U.S. at 56).  Here, Plaintiff is unable to point to any such conduct in Defendants' enforcement of the Minnesota Medical Practice Act pursuant to the contested case process set forth in MAPA.

In short, there is no irreparable injury to Plaintiff merely because he must undergo a "good faith" prosecution in the underlying administrative action. *See Douglas v. City of Jeannette,* 319 U.S. 157, 165-66 (1943) ("No person is immune from prosecution in good faith for his alleged criminal acts."); *Sixth Angel Shepherd Rescue, Inc. v. Schiliro*, 596 F. App'x 175, 179 (3d Cir. 2015) ("waiting for the state to hear one's case is not a cognizable irreparable injury under *Younger*")*.*

Moreover, Plaintiff is unable to establish a great and irreparable injury, which Plaintiff alleges to be both "ongoing" and "about to" begin, more than six months after commencement of the state administrative action and just after the Complaint Review Committee submitted its expert report.

Plaintiff cannot as a matter of law show any threat of irreparable harm.  Plaintiff's allegation of the "stifling" of his First Amendment rights is speculative at best.  In any event, if the Board ultimately imposes disciplinary action, Plaintiff can raise any

26

constitutional challenges to the Minnesota Court of Appeals if he chooses to appeal a Final Order of the Board. *Dayton*, 477 U.S. at 629 (citing *Middlesex*, 457 U.S. at 436); *Padilla*, 382 N.W.2d at 882; Minn. Stat. §§ 14.63, .69. Preliminary injunctive relief is inappropriate where there is "an adequate remedy at law." *Watkins*, 346 F.3d at 84 (citing *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir.1989)).

Plaintiff's failure to establish irreparable harm is an independently sufficient basis for denying his motion for preliminary injunctive relief. *See Watkins*, 346 F.3d at 84.

### C.     The Balance of Relative Harms Militates against Equitable Relief.

The balance of the parties' relative harms does not weigh in Plaintiff's favor. Here, the denial of injunctive relief will not result in harm to Plaintiff. As set forth above, the Compliant Review Committee had a good faith basis for initiating the state administrative action – namely, to regulate Plaintiff's professional conduct. That action is ongoing, and the Board has not issued a Final Order imposing any type of discipline against Plaintiff's license. The Committee is not seeking to impose any restrictions on Plaintiff's First Amendment rights in the public forum, but rather, to regulate his conduct when advising patients' parents during clinic visits. Moreover, Plaintiff may make any constitutional challenges upon appealing a Final Order that imposes discipline. Thus, Plaintiff cannot establish that he would endure any hardship in the absence of prospective injunctive relief.

On the other hand, were this Court to enjoin Defendants from continuing with the administrative law proceeding, the Complaint Review Committee would be denied an

opportunity to prove by a preponderance of the evidence that Plaintiff has violated the Minnesota Medical Practice Act.  Enjoining the pending contested case – just after the Committee submitted its expert report – would nullify Defendants' role.  Board members are "appointed because of their special expertise regarding the standards of their own professions."  *See Padilla*, 382 N.W.2d at 886-87 ("When a professional person must be disciplined for breaching these standards, the nature and duration of the discipline is best determined by his or her fellow professionals, who are in a superior position to evaluate the breaches of trust and unprofessional conduct."); *see also Douglas*, 319 U.S. at 163-64 ("Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted.").

In sum, if preliminary injunctive relief is granted, Defendants will be precluded from exercising their vital public protection role, one that is mandated by state statute. This factor weighs strongly in favor of denying Plaintiff's motion for preliminary injunctive relief.

### D.    An Injunction Would be Contrary to the Public Interest.

It would be antithetical to the public interest to allow a physician to use a misplaced First Amendment challenge as a shield to avoid responding to claims in a state administrative proceeding that the physician's conduct violated the Minnesota Medical Practice Act.  An injunction would prevent the Board of Medical Practice from fulfilling its statutory duty to protect the public from improper medical practice through regulation of a license to practice medicine in the State of Minnesota.

## CONCLUSION

Defendants respectfully request that the Court decline to exercise jurisdiction pursuant to the *Younger* abstention doctrine. Plaintiff's allegations of a bad faith prosecution lack merit. Alternatively, Defendants request that the Court deny Plaintiff's motion for a preliminary injunction. Plaintiff cannot establish the *Dataphase* factors needed to justify the extraordinary remedy of preliminary injunctive relief.

Dated: January 4, 2021

Respectfully submitted,
KEITH ELLISON

Attorney General
State of Minnesota

s/Kathleen M. Ghreichi
KATHLEEN M. GHREICHI
Assistant Attorney General
Atty. Reg. No. 023834X

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2128
(651) 757-1490 (Voice)
(651) 297-2576 (Fax)
kathleen.ghreichi@ag.state.mn.us

Attorney for Defendants
Maria K. Statton, Kathryn D. Lombardo,
Hugh P. Renier, Cheryl L. Bailey,
Christopher Burkle, Pamela Gigi Chawla,
Shaunequa B. James, Jennifer Y. Kendall
Thomas, Patricia J. Lindholm, John M.
(Jake) Manahan, Allen G. Rasmussen,
Kimberly W. Spaulding, Stuart T. Williams,
in their respective official capacity as
members of the Minnesota Board of Medical
Practice