UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ROBERT ZAJAC,<br><br>Plaintiff,<br><br>v.<br><br>MARIA K. STATTON et al., *in their official capacities as members of the Minnesota Board of Medical Practice*,<br><br>Defendants. | Civil No. 20-2148 (JRT/DTS)<br><br>**SEALED MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

---

Jacques G. Simon, 200 Garden City Plaza, Suite 301, Garden City, NJ 11530; and Bradley John Haddy, **MINNESOTA ESQUIRE LLC**, 1850 Eagle Ridge Drive, Suite E-102, Mendota Heights, MN 55118, for plaintiff.

Kathleen M. Ghreichi, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1400, Saint Paul, MN 551001, for defendants.

Defendants, members of the Minnesota Board of Medical Practice, began an investigation after receiving four complaints alleging that Plaintiff had violated the Minnesota Medical Practice Act when counseling patients' parents about vaccine safety and vaccine injury accountability. After a discussion with Plaintiff about his practice of medicine with respect to vaccinations, Defendants initiated a contested case proceeding, which will be heard in front of an administrative law judge who will determine if disciplinary sanctions are warranted.

Plaintiff then filed this action, alleging that the contested case proceeding is a bad faith attempt to silence him from expressing personal opinions in public forums and to patients, thus infringing his First Amendment right to free speech and his Fourteenth Amendment right to due process. He has also filed a Motion for Preliminary Injunction, seeking to enjoin Defendants from continuing the contested case proceeding.

Defendants filed a Motion to Dismiss, arguing that the Court should abstain from adjudicating Plaintiff's claims, or, in the alternative, that Plaintiff does not state a plausible claim for relief. Because *Younger* abstention applies, the Court will abstain from adjudicating this action, grant Defendants' Motion to Dismiss, dismiss the action without prejudice, and deny Plaintiff's Motion for Preliminary Injunction.

## BACKGROUND

**I. FACTUAL BACKGROUND**

On January 5, 2018, Defendants mailed a letter to Plaintiff, informing him that they had received a complaint alleging that he was practicing medicine beneath the acceptable standard of care with respect to vaccinations. (*See* Compl. ¶ 10, Ex. 1 at 4, Oct. 12, 2020, Docket No. 1-1.) On October 24, 2018, Defendants mailed another letter to Plaintiff, informing him of another complaint that alleged he was not practicing evidence-based medicine when discussing vaccines. (*See* Compl. ¶ 17, Ex. 3 at 13, Oct. 12, 2020, Docket No. 1-1.)

After an initial investigation into the complaints, now four in total, Defendants served Plaintiff with a Notice of Conference on July 12, 2019, requiring him to appear at a meeting with the Complaint Review Committee of the Minnesota Board of Medical Practice (the "Committee") to discuss the allegations made against him. (Compl. ¶ 22, Ex. 5 ("Notice of Conference") at 30, 34–36, Oct. 12, 2020, Docket No. 1-1.) The Notice also indicated that Defendants' investigation had revealed (1) that Plaintiff stated in an online video that vaccines are unsafe and that he notifies patients of this during the informed consent process, (2) that he asserts in the same video that there is no accountability for vaccine injuries and no studies comparing vaccinated and unvaccinated children, (3) that he encourages patients to delay or avoid routine vaccinations, and (4) that his practice's website states that he supports alternative vaccination schedules. (Notice of Conference at 36–37.) Finally, the Notice stated that the issues to be considered at the meeting concerned whether Plaintiff had engaged in unethical or improper conduct or conduct that failed to conform with the minimal standards of acceptable and prevailing medical practice, or had knowingly provided false or misleading information during the care of a patient. (*Id.* at 37–38.)

On August 12, 2019, the Conference was held. (Sealed Decl. of Jacques Simon ¶ 5, Dec. 26, 2020, Docket No. 26.) The Committee began by asking Plaintiff to describe his current practice of medicine, especially in relation to the recommended vaccination schedule for two-month-old children and how many of his patients follow this schedule.

(Sealed Decl. of Jacques Simon ¶ 5, Sealed Ex. 1 ("Tr.") at 6:1–11:10, Dec. 26, 2020, Docket No. 26-1.)  Then they discussed how Plaintiff monitors his vaccination rates and if he works to increase the number of patients receiving vaccinations.  (*See* Tr. at 11:12–19:5.)

The discussion later turned to how Plaintiff counsels patients with regards to vaccine safety and accountability for vaccine-related injuries.  (*See generally id.* at 19:16–35:20.)  At one point, Plaintiff stated that he tells patients that he does not have the right data to say that vaccines are unequivocally safe or without risk, which is also true of other things that patients do, like driving to the clinic or buying raw milk instead of pasteurized milk, and one has to ask if the risk is worth the benefit, which is unclear with respect to certain vaccines.  (*See id.* at 31:11–24.)

The Committee also asked about a YouTube video, in which Plaintiff discusses a possible link between a vaccine and autism, and how his interactions with patients differed from his description of vaccines on the video.  (*Id.* at 35:12–37:23.)  Plaintiff responded that his patients' awareness of the video serves as the starting point for discussions concerning whether to vaccinate.  (*Id.* at 36:24–37:23.)  He also stated that he might support vaccinations more if double-blind placebo trials were conducted, more robust vaccine manufacturer liability was instituted, and studies comparing vaccinated and unvaccinated children were undertaken.  (*See id.* at 39:24–40:17.)  Plaintiff also added that he is neither blindly for, nor blindly against, vaccines.  (*Id.* at 47:13–14.)

The discussion then concluded, and after deliberating, the Committee proposed a settlement offer based on their determination that Plaintiff had violated Minnesota Statute § 147.091. (*Id.* at 52:25–53:11.) The terms and conditions of the offer included a reprimand and a requirement that Plaintiff complete preapproved coursework related to vaccinations, then submit a paper to the Board outlining what he learned, after which he could petition for an unconditioned license. (*Id.* at 53:11–54:23.)

The offer was seemingly rejected, as Defendants later sent Plaintiff a Notice of Hearing, informing him that they had initiated a contested case proceeding against him. (Compl. ¶ 99, Ex. 6 ("Notice of Hearing") at 46, Oct. 12, 2020, Docket No. 1-1.) The Notice outlined Defendants' findings following their investigation and the Conference meeting, which included several instances in which Plaintiff was alleged to have failed to meet the community standard of acceptable and prevailing medical practice with respect to vaccine safety. (Notice of Hearing at 53–55.) Finally, the Notice presented the following issues to be determined at the contested case proceeding: whether Plaintiff had violated the Minnesota Medical Practice Act by engaging in (1) unethical or improper conduction in contravention of Minnesota Statutes § 147.091, subd. 1(g); (2) conduct departing from or failing to conform with acceptable and prevailing medical practice in contravention of § 147.091, subd. 1(k); and (3) knowingly providing false and misleading information directly related to the care of a patient in contravention of § 147.091, subd. 1(v). (*Id.* at

55.)  The contested case proceeding is scheduled to begin on May 25, 2021.  (Compl. ¶ 100, Ex. 7 at 63, Oct. 12, 2020, Docket No. 1-1.)

## II.  PROCEDURAL BACKGROUND

On October 12, 2020, Plaintiff filed this action, alleging that the contested case proceeding is a bad faith prosecution, which violates his constitutional rights to free speech and due process, and asking for preliminary injunctive relief, permanent injunctive relief, and a declaratory judgment.  (Compl. ¶¶ 216–72, Oct. 12, 2020, Docket No. 1.)  Defendants filed a Motion to Dismiss, arguing that the *Younger* abstention doctrine applies, or, alternatively, that the Complaint fails to state a claim upon which relief can be granted.  (Mot. Dismiss, Dec. 4, 2020, Docket No. 12.)  Plaintiff then filed a Motion for Preliminary Injunction, seeking to enjoin further disciplinary action by Defendants.  (Mot. Prelim. Inj., Dec. 14, 2020, Docket No. 18.)

## DISCUSSION

### I.  MOTION TO DISMISS

#### A.  *Younger* Abstention

"The *Younger* abstention doctrine, as it has evolved, provides that federal courts should abstain from exercising jurisdiction when (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding."  *Plouffe v. Ligon*, 606 F.3d

890, 892 (8th Cir. 2010) (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)); *see also Younger v. Harris*, 401 U.S. 37, 43–45 (1971).

However, federal intervention may still be warranted if a federal plaintiff can demonstrate that a state proceeding involves bad faith. *See Younger*, 401 U.S. at 54. Bad faith may exist when state officials initiate proceedings without hope of obtaining a valid disposition, *see Perez v. Ledesma*, 401 U.S. 82, 85 (1971), or when proceedings are initiated to discourage or retaliate for a plaintiff's exercise of constitutional rights, irrespective of whether a valid conviction could be obtained, as this would not constitute a legitimate state interest, *see Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988); *accord Bishop v. State Bar of Tex.*, 736 F.2d 292, 294 (5th Cir. 1984) (noting that retaliation must be a major motivating factor and have played a prominent role in the decision to prosecute).

**B. Analysis**

**1. Ongoing State Proceeding**

With respect to the first factor, *Younger* abstention has been extended beyond the criminal context to certain civil proceedings, including, as relevant here, a civil enforcement proceeding that is akin to a criminal prosecution. *Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 552 (8th Cir. 2018). To qualify as such, the civil enforcement proceeding must have been initiated by the state in its sovereign capacity; involve sanctions against the federal plaintiff for some wrongful act; and include an investigation,

often culminating in formal charges. *Id.* at 552–53 (finding that a contested case proceeding before an administrative law judge at the Minnesota Office of Administrative Hearings qualified); *see also Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163–65 (10th Cir. 1999) (finding that a medical board disciplinary proceeding qualified).

Here, the contested case proceeding was initiated by the state medical board pursuant to its authority under Minnesota Statutes §§ 14.57, 214.10, subd. 2, and will be adjudicated by an administrative law judge ("ALJ") at the Minnesota Office of Administrative Hearings. Further, it is a proceeding that may result in sanctions against Plaintiff, if the ALJ finds that he engaged in conduct that violates the Minnesota Medical Practice Act and Defendants then elect to impose sanctions. Finally, the contested case proceeding was initiated after an investigation by Defendants into Plaintiff's practice of medicine, which then resulted in formal charges. As such, the Court finds that the contested case proceeding here is a civil enforcement proceeding akin to a criminal prosecution.

### 2. Important State Interest

With respect to the second factor, courts consider, as relevant here, whether the state has an important interest in maintaining and assuring the conduct of the professionals that it licenses. *See, e.g.*, *Plouffe*, 606 F.3d at 893 (attorney licensure). In determining this question, courts do not weigh the competing interests of federal and

state courts in adjudicating federal claims—it is enough that important state interests are implicated for *Younger* to apply.  *Id.*

The state certainly has a significant interest in ensuring that the doctors whom it licenses perform ethically, do not provide false or misleading information to patients, and conform with the acceptable and prevailing medical practice, for the state must protect its citizenry from harms that could arise otherwise.  *Accord Amanatullah*, 187 F.3d at 1164–65 ("[T]here is no question that the licensing and discipline of physicians involves important state interests . . . [I]t is difficult to imagine a state interest more important."). Thus, the Court finds that an important state interest is implicated here.

### 3. Adequate Opportunity

With respect to the third factor, "it is sufficient . . . that constitutional claims may be raised in state-court judicial review of an administrative proceeding."  *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986); *see also Amanatullah*, 187 F.3d at 1164 (finding that an ALJ could consider federal constitutional claims during a state medical board disciplinary proceeding).

Here, nothing in the applicable state statute outlining the scope of an ALJ's authority in contested case proceedings seems to preclude federal constitutional claims from being heard.  *See* Minn. Stat. § 14.50; *see also Plouffe*, 606 F.3d at 894 ("We can find nothing in the rules governing the attorney disciplinary proceedings that would prevent [plaintiff] from raising his constitutional claims.").

Furthermore, even if the ALJ is not capable of adjudicating constitutional claims during Plaintiff's contested case proceeding, Plaintiff can raise any such claims when petitioning for review of the administrative proceeding in state appellate court. *See* Minn. Stat. § 14.69; *see also Padilla v. Minn. State Bd. of Med. Exam'rs*, 382 N.W.2d 876, 882 (Minn. Ct. App. 1986) ("[T]his court may consider a constitutional issue raised for the first time on appeal from an administrative tribunal[.]").

As such, the Court finds that the last factor has been met as well. Accordingly, the Court finds that *Younger* abstention applies and the Court must therefore abstain from adjudicating Plaintiff's claims unless the bad faith exception applies.

### 4. Bad Faith Exception[1]

Here, Plaintiff argues that the state has no real expectation of prevailing in the contested case proceeding, as the standard of care that Defendants maintain is required by the Minnesota Medical Practice Act would force him to violate another state law, Minnesota Statutes § 121A.15, subd. 3a(b). Plaintiff also contends that the contested case proceeding was brought to stifle his right to communicate personal opinions about

---

[1] The Eighth Circuit has stated that, "[w]hile the Supreme Court has not ruled out use of the bad faith exception in civil cases, it has never directly applied the exception in such a case and we have only recognized it in the criminal context." *Aaron v. Target Corp.*, 357 F.3d 768, 778 (8th Cir. 2004). That said, the Court will assume that the bad faith exception extends to civil cases, although it will find the exception to be unavailable in this case.

vaccine safety, both to patients and in public forums, thus infringing his First Amendment right to free speech.[2] The Court disagrees on both accounts.

First, as demonstrated by the medical expert retained by Defendants in preparation for the contested case proceeding[3] and at least two of the complaints made against Plaintiffs, which were from doctors, the Court finds that there is a good-faith belief in the medical community that the minimal standard of acceptable and prevailing medical practice requires assuring parents that vaccines are quite safe when not contraindicated, and telling parents that vaccine safety has been adequately studied and that there is adequate accountability for vaccine injuries. Additionally, based upon the findings outlined in the Notice of Hearing, the Court finds that Defendants reasonably believe that they will succeed in proving that Plaintiff has demonstrated conduct that departs from the minimal standard of care in violation of Minnesota Statutes § 147.091. As such, the Court finds that the record demonstrates a real expectation by Defendants of succeeding.

---

[2] Plaintiff also suggests that Defendants' alleged bad faith prosecution violates the Due Process Clause of the Fourteenth Amendment. (*See, e.g.*, Compl. ¶¶ 228, 241, 249). However, he does not present any argument to assert either a procedural or substantive due process claim. Furthermore, assuming he had, he has already received notice of the contested case proceeding and will have an opportunity to respond to the state's allegations at the May hearing, which thus fails to demonstrate an omission of procedural safeguards. *See Mitchell v. Dakota Cty. Soc. Servs.*, 959 F.3d 887, 897 (8th Cir. 2020). Additionally, no facts indicate that a fundamental right was violated or that conscience-shocking behavior has occurred, which thus fails to demonstrate a violation of substantive due process. *See id.* at 898. As such, the Court will only consider the bad faith exception in relation to his First Amendment claim.

[3] (*See* Decl. of Kathleen M. Ghreichi ¶ 6, Sealed Ex. C at 4, Jan. 4, 2021, Docket No. 34.)

Further, adhering to Defendants' construction of what constitutes the appropriate standard of care would not force Plaintiff to violate state law. Section 121A.15 subd. 3a(b) requires that an immunization provider give a minor's parent or guardian (1) a list of immunizations required for enrollment in school or child care; (2) a description of the permitted exemptions, including the ability of a parent to submit a notarized statement saying that a child has not been immunized because of the parent's conscientiously held beliefs; (3) a list of additional recommended vaccinations; and (4) a copy of the federal vaccine information sheet that lists possible adverse reactions. *See* Minn. Stat. § 121A.15, subd. 3(c)–(d), subd. 3a(b). Plaintiff argues that his discussions with parents concerning the uncertainty of vaccine safety and the limited liability of vaccine manufactures are mandated by the second and fourth requirements.

However, Defendants assert that actively encouraging parents to avoid or delay vaccines and warning them that safety data listed on the information sheet is incomplete or flawed is not what the statute intends. Instead, they argue that the statute, in conjunction with the community standard of care, provides that doctors should describe exemptions in support of parents' choices, not encourage them to make a particular choice, and should apprise parents of known risks associated with vaccines, not advise them that the actual risks may be far greater than those listed.

The Court does not decide whose construction of the statute is most likely correct; it is enough to acknowledge that Defendants' construction is a permissible one, which

means that Plaintiff would not be forced to violate state law if he provided information in the manner that Defendants seek to enforce. Thus, the Court finds Plaintiff's first argument concerning the applicability of the bad faith exception to be unavailing.

Second, with respect to Plaintiff's contention that Defendants initiated their investigation and the contested case proceeding to stifle him from speaking out about vaccine safety and accountability, there is simply a dearth of facts in the record, beyond a cornucopia of conclusory allegations by Plaintiff, to support this claim. To be sure, one of the complaints mentions the YouTube video, which was public speech, but the complaint mostly focuses on reports from Plaintiff's patients concerning how he allegedly encourages families not to vaccinate. Additionally, another complaint focuses on comments made publicly by Plaintiff too, but it also directed attention to how similar comments were reported from his patients.

Most important, however, the transcript from the Conference meeting, which followed from Defendants investigation into the complaints, demonstrates that Defendants focused on Plaintiff's practice of medicine and, even when discussing the video or his public comments, they centered the discussion on how such statements related to his practice of medicine. For example, when discussing statements made in the video, Defendants asked how discussions with patients differed from or were similar to them. Furthermore, the allegations and issues laid out in the Notice of Hearing, which

will comprise the substance of the contested case proceeding, relate only to Plaintiff's discussions with patients in the clinical setting or statements made on the clinic's website.

As such, the Court finds that Defendants initiated the contested case proceeding to regulate Plaintiff's professional interactions with patients—namely, to bring such interactions in line with what Defendants allege is mandated by § 147.091—and not to police his public speech.[4]  This distinction is important, for "[s]tates may regulate professional conduct even though that conduct incidentally involves speech."  *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 884 (1992) ("To be sure, the physician's First Amendment rights [] are implicated, but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State.") (citations omitted).  Here, Defendants only question whether Plaintiff's practice of medicine, which incidentally involves speech, runs afoul of Minnesota law, not whether he should be allowed to make similar or the same comments in public.  As such, the Court finds Plaintiff's second argument to be unavailing as well.

In sum, the Court finds that the contested case proceeding was initiated in good faith and, thus, federal intervention is not warranted.  Accordingly, the Court finds that it must abstain from adjudicating Plaintiff's claims pursuant to the *Younger* doctrine and

---

[4] In fact, at the hearing, Defendants acknowledged that they do not have any authority to discipline doctors for public speech.

will therefore grant Defendants' Motion to Dismiss on this ground and dismiss this action without prejudice. As such, the Court need not consider whether Plaintiff fails to state a plausible claim for relief and cannot consider Plaintiff's Motion for Preliminary Injunction, which it will deny.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Court **ABSTAINS** from adjudicating this action.

2. Defendants' Motion to Dismiss [Docket No. 12] is **GRANTED.**

3. This action is **DISMISSED without prejudice.**

4. Plaintiff's Motion for Preliminary Injunction [Docket No. 18] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 24, 2021
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court